UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---------------------------------------------------------------------
```
ALEXANDER WILLIAMS JR

PLAINTIFF(S)

-AGAINST-

CITY OF NEW YORK, LOUIS MOLINA, ERIC ADAMS, ERICA GAINOUS, KEVIN YOUNG, PRESTON RITTER, ANDREW HICKSON,KEVIN WHITE, WARDEN JEAN RENEE, WARDEN COURT, CAPTAIN FERNANDEZ, CAPT WIGFALL DW EBONEE FLEMMING, DW ███████JONELLE SHIVRAJ, DW TIFFANY MORALES, DW LISA BARNBEY, DW JOANNE MATOS, ANTONIO GRAVES, ESU OFFICER RICHARDSON SHILED NO. 254, CO RAHMAN SHEILD 11383, SRT OFFICER VEST NUMBER 57 ( THIS IS OFFICER VEST NUMBER FROM AUGUST 31, 2022 INCIDENT) SRT OFICERS VEST NUMBERS* 74,75,78,79,80,88,82,111,113,112,117,135 SHEILD NO 8957,139,102, 120,108,182, SRT CAPTAIN VEST NUMBERS' #1, 3,& 4,ASSISTANT COMMISSIONER MILLER, ASSIATNT COMMISSIONER THOMAS GRIFFIN, CIB ADW GWINNIE, CIB CAPT FLUKA, WARDEN COLLINS, DW MILLER, CAPT BERNARD MATHIS, CAPT LOPEZ SHEILD 462, CO PHILLUPS SHEILD NO 12252, CO ANDERSON, RECREATIOI CAPT FROM JAN 7, 2023, ESU CAPT RIVERA, ESU CAPT VEST NUMBER 28, ESU SECRATY OFFICER SHEILD 4190 (NAME UNKNWON), CIB OFFICER (NAME UNKNWON FEMALE WHITE DIRTY BLONDE HAIR HEIGHT 5'5) , CO ORELLANA (HQ) K-9 OFFICER PERPIGNAN (SHEILD UNKNWON) CAPT RIVERA SHILED 1230(GRVC), CAPT GUAN SHEILD 367 (GRVC), CAPT PALMERO SHEILD 1888, CO BAWA SHEILD 1812, CO MARDEN SHEILD 13770, CO HO SHEILD 17626, CO RODRIGUEZ SHEILD 9067, CO WOLOSKI SHEILD 5460 , CAPT JOSEPH (GRVC),SRT 139, 203,CAPT WIGFALL,

SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

DEFENDANT(S)
```
---------------------------------------------------------------------
```
CIVIL ACTION NO. 22-CV-10637 (JHR)

TRIAL REQUESTED

-SECOND AMENDED COMPLAINT-

PURSUANT TO: 42 U.S.C. § 1983, 42 U.S.C. 1985, 42 U.S.C. § 1986, 42 U.S.C. § 2000cc, 42 U.S.C. § 2000aa et. Seq, 42 U.S.C. 2000dd, AMERICAN DISABILITY ACT, NEW YORK CITY ADMIN CODE § 9-108(c), CORRECTION LAW  § 500-C(4), RULE OF NEW YORK 40 §§ 3-02

PRELIMINARY STATEMENT:

Plaintiff commences this action seeking punitive, compensatory, declatory preliminary releif and damages against the defendants named herein, to be sued in thier individual and official capacities for violation of his state and federal rights while acting under color of law pursunatt 42 U.S.C 198:

Plaintiff asserts supplemental state law claims against the defendnatsas well, for violations of their statutory and common law duities, as well as claims of retalaition, negligence, negligent hiring , training, supervision and rention, inentional emotional distress

At all times herein, plaintiff was and remains a pretrial detainee confined to the custody, control and care of the **CITY** of New York as its Department of Corrections ' various jails, who has been sexually assaulted and abused and forcibly touched without his consent.

New York State has long recognized the coercive power of correctional officers over incarcerated individuals and the related risk of abuse.

## JURISDICTION AND VENUE:

Jurisdiction of the Court is invoked pursuant to 28 U.S.C.1331 and 1343(a) (3) and (4) and the aforesaid statutory and constitutional provisions.

Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdictions over claims, which arise under relevant provisions of New York State Law.

Venue is appropriate in this Court pursuant to U.S.C. 1391(b) (2) as a substantial part of the events or omissions giving rise to this claim that occurred within Bronx County New York, which is within this Court's jurisdiction.

## PARTIES:

At all times mentioned herein, the Plaintiff was and remains a resident of the State of New York.

At all times mentioned herein, the plaintiff was and remains a pretrial detainee confined to the custody, control and care of defendant **CITY OF NEW YORK** and its department of correction.

Upon information and belief, and at all times mentioned herein, the defendant, **CITY OF NEW YORK (hereinafter referred to as "CITY")**, was and remains the body of corporate and

public, constituting a Municipal corporation duly organized and existing under and virtue of the laws of the State of New York.

Upon information and beliefs, and at all times mentioned herein, the **CITY** maintains the **CITY** of New York Department of Correction **(hereinafter referred to as "DOC")**, pursuant to law.

Upon information and beliefs, and at all times mentioned herein, defendant **CAPTAIN GANIES** was a correction official employed by the defendant **CITY** holding the position of security captain.

Upon information and beliefs, and at all times mentioned herein, defendant **CAPTAIN WIGFALL** was a correction official employed by the defendant **CITY** holding the position of security captain.

Upon information and beliefs, and at all times mentioned herein, defendant **SSRT CAPTAIN FERNANDEZ** was a correction official employed by the defendant **CITY** holding the position of security captain.

Upon information and beliefs, and at all times mentioned herein, defendant **CO ANDRE HICKSON** was a correction official employed by the defendant **CITY**.

Upon information and beliefs, and at all times mentioned herein, defendant **CO KEVIN YOUNG** was a correction official employed by the defendant **CITY**.

Upon information and beliefs, and at all times mentioned herein, defendant **CO KEVIN WHITE** was a correction official employed by the defendant **CITY**.

Upon information and beliefs, and at all times mentioned herein, defendant **DEPUTY WARDEN FLEMMING** was a correction official employed by the defendant **CITY**.

Upon ifnormation and beliefs and att all times mentioned herein the defendnat SRT vest number 57, was employed by the defendnat CITY holding the position of correction officer(THIS IS THE DEFENDNAT FROM AUGUST 31, 2022 INCIDENT MENTIONED HEREIN THIS COMPLAINT)( PLAINTIFF WAS ABLE TO OBTAIN THIS INFORMATION AFTER SEEING THIS DEFENDNAT AGAIN AT A LATER DATE.

Upon information and belifs at 11 times mentioned herein defendnat MILLER was employed by defendant CITy holding the position of ASSISTANT COMMISSIONER.

Upon information and beliefs and at all times mentioned herein defendant THOMAS GRIFFIN was employed by defendant CITY holding the position of ASSISTANT COMMISSIONER.

Upon information and belifs and at all times mentioned herein defendnat MILLER was employed by defendant CITY holding the position of DEPUTY WARDEN of NIC and WEST FACILITY.

Upon information and belifs and at all times mentioned hereindefendant JEAN RENEE was employed by defendant CITY holding the position of WARDEN

.

Upon information and belifes and at all times mentioned herein defendant COLLINS was employed by defendant CITY holding the position of WARDEN.

Upon information and beliefs and at all times mentioned herein defendant COURT was employed by defendant CITY holding the position of WARDEN.

Upon infomation and beliefs and at al ltimesd mentioned herein defendant LISA BARNBEY was employed by defendant CITY holding the poistion as DEPUTY WARDEN.

Upon information and beliefs and at all times mentioned herein defendant JOAANE MATOS was employed by defendant CITY holding the position as DEPUTY WARDEN.

Upon information and beliefs and at all times mentioned herein defendant JONELLE SHIVRAJ was employed by defendant CITY holding the psoition as DEPUTY WARDEN.

Upon information and beliefs and at all times mentioned herin defendant TIFFANY MORALES was employed by defendnat CITY holding the position as DEPUTY WARDEN.

Upon information and beliefs and at all times mentioned herein defendant LUOIS MOLINA was empolyed by defendant CITY holding the position of COMMISSIONER

Upon information ad beliefs and at all times mentioned herein defendant DOCTOR DUVERN , was employed by defendant CITY maintaining the position as a DOCTOR under New York City Health and Hospital.

Upon information and beliefs and at all times mentioned herein defendant ERIC ADAMS was employed by defendant CITY holding the RANKING as MAYOR. In control of all city jails including Rikers Island facility were violations occured.

Upon ifnormation and beliefs and at all times mentioned herein defendant RAHMAN sheild 11383 was employed by defendant CITY holding the position as correction officer.

Upon  information and beliefs and at all times mentioned herein defendant RICHARDSON sheild 254 was employed by defendant CITY as an ESU correction officer on October 26, 2022 when incidnet occured mentioned herein.

Upon information and beliefs and at all times mentioned herein defendant RIVERA sheild 1230 was employed by defendant CITY holding the position as CAPTAIN at GRVC facility.

Upon ifformation and beliefs and at all times mentioned herein defendant GAUN sheild 367 was employed by defendant CITY holding the position of CAPATIN at GRVC facility.

Upon information and beliefs and aat all times mentioned herein defendant PALMERO sheild 1888 was employed by defendant CITY holding the position as CAPTAIN at GRVC facility.

Upon information and beleifs and at all times mentioned herein defendant RODRIGUEZ was employed by defendant CITY with sheild number 9067 holding the position as correction officer.

Upon information and beleifs and at all times mentioned herein defendant WOLOSIKI sheild 5460 was employed by defendant CITY holding the position of corecction officer.

Upon ifformation and beliefs and at all times mentioned herein defendant BAWA sheild 1812 was employed by defendant CITY holding the position of correction officer.

Upon information and beliefs and at all times mentioned herein defendant HO sheild number 17626 was employed by defendant CITY maintaining the position of correction officer.

Upon information and belifes and at all times mentioned herein defendant MARDEN sheild number 13770 was employed by defendnat CITY holding the rank as correction officer.

Upon information and beliefs and at all tyimes mentioned herein defendant ANDERSON sheild unknown was employed by defendant CITY holding the position as correction officer (THIS DEFENDANT CONDUCTED RECREATION AT WEST FACILITY SPRUNG SIX ON JAN 7, 2023).

Upon information and beliefs and at all times mentioned herin defendant Name unknown sheild unknowwas employed by defendant CITY holding the RANK as C CAPTAIN AND DID RUN RECREATION ON THE MORINING OF JAN 7, 2023 WITH DEFENDANT ANDERSON.

Upon information and beliefs and at all times mentioned herein defendan JOSPEH was employed by defendant CITY holding the position of CAPATIN at the GRVC facility.

Upon information and beliefs and at all times mentioned herein defendant RIVERA was employed by the defendant  CITY holding the position of CAPATIN with the Emergency Service Unit was the Department Of Correction.

Upoin information and beliefs and at all times mentioned herein defendant PHILLIUPS sheild 12252 was employed by defendant CITY holding the position as correction officer.

Upon information and beliefs and at all times mentioned herein defendant BERNARD MATHIS was employed by defendant CITY holding the position as SRT CAPTAIN.(shield no. 82 )

Upon information and beliefs and at all times mentioned herein defendant LOPEZ sheild 462 was employed by defendant CITY holding the position as SRT CAPTAIN.

Upon information and beliefs and at all times mentioned herein defendant PERPIGNAN was employed by defendant CITY holding the position as K-9 correction officer.

Upon information and beliefs and at all times mentioned herein defendant name unknown was employed by defendant CITY as a ESU CAPTAIN with number 28 on vest at the New York City department of Correction.

Upon information and beliefs and at all times mentioned herein defendant FLUKA was employed by defendant CITY holding the rank of CAPTAIN with the CIB divison of the New York City Department of Correction.

Upon Information and beleifs and at all times mentioned herein defendant GWINNIE was employed by defendant CITY holding the RANK as Assistant Deputy Warden with the CIB divison of the New York City Department of Correction.

Upon information and beleifs and at all times mentioned herein defendant NAME UNKNOWN sheild number 4190- was empoloyed by defendant CITY holding the position of correction officer withe Emergency service Unit divison of the New York City Department of Correction.

THE BELOW LISTED DEFENDANT ARE NAMED BY THE NUMBER THAT ARE ON THE BACK OF THE DEPARTMENTAL VEST WORN BY THESE DEFENDANT OF THE STRATEGIC RESPONSE TEAM:

Upon information and beliefs and at all times mentioned herein defendant SRT 1 was employed by defendant CITY as a SRT officer holding the rank of CAPTAIN .

Upon information and beliefs and at all timesd mentioned herein defendant SRT 3 was employed by defendant CITY holding the rank of a SRT CAPTAIN.

Upon information and beliefs and at all times mnetioned herein defendant SRT 4 was employed by defendant CITY holding the position as CAPTAIN with the Strategic Response Team.

Upon information and beliefs and at all times mebntioned herein defendant SRT 139 was employed by defendant CITY holding the position as correction officer in the Strategic Response Team.

Upon information and belifes and at all times mentioned herein defendant SRT 135 sheild 8957 was employed by defendant CITY holding the position as correction officer with the Stratgic Response Team

Upon information and beliefs and at all times mentioned herein defendant SRT 102 was employed by defendant CITY holding position of correction officer with the strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 120 was  employed by defendant CITY holding the poistion of correction officer with the Strategic Response Team.

Upon information and belifs and at all times mentioned herin defendant SRT 182 was employed by defendant CITY as correction officer with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 78, was employed by defendant CITY holding the position as correction officer with the Strategic Resoponse Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 79, was employed by defendant CITY holding the position as correction officer with the Strategic Response Team.

Upon information and belifes and at all times mentioned herein defendant SRT 74, was employed by defendant CITY holding the position of correction officer with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 75, was employed by defendnat CITY holding the position of correction oficer with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendnat SRT 77, was employed by defendant CITY holding the position of correction officer with the Startegic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 65, was employed by defendnaat CITY holding the position of correction officer with the Straategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 80 was employed by defendant CITY holding the position of correction officer with the Strategic Response Team .

Upon information and beliefs and at all times mentioned herein defendant SRT 82 was employed by defendant CITY holding the position as correction officer with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 88 was employed by defendant CITY holding the position of correction office Teamx with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 203 was employed by defendant CITY holding the position of correction officer with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendnat SRT 111 was employed by defendant CITY hoklding the position of correction offic with the Strategic Response Team.

Upon information and beliefs and at all times mentioned herein defendant SRT 113, was employed by defendant CITY holding the position of correctyion officer with the Strategic Response Team.

Upon information and belifes and at  all times mentioned herein defendant SRT 117, was employed by defendant CITYY holding the position of correction officer with the Strategic Response Team.

Upon ifnormation and beliefs and at all times mentioned herein defendant SRT 112, was employed by defendnat CITY holding the position of correction offic with the Strategic Response Team.

# **STATEMENT OF FACTS:**

On Monday August 29, 2022 the plaintiff, informed housing unit staff that his toilet was stopped up and that fececes was floating in the toilet and that he need the plumber to be called.

The plaintiff was allowed to use the bathroom in another cell but he was never allowed to clean his cell toilet or be moved to another cell, which he was told could only be done by defendant **CAPTAIN GANIES** because of her ranking of security captain at the facility.

These leads to the plaintiff having to sleep eat and remain in a cell 23 hours a day with these fecees.

On Monday August 29, 2022, the plaintiff received a letter from his wife Crystal Williams informing him that she had been diagnosed with breast Cancer. The plaintiff broke down and informed mental health personnel on how he was feeling, see housing unit log book 8/29/2022 page 91 entry 8:00pm.

On Tuesday August 30th, 2022 at approx 7:10pm co Serrano shield Number 12439 notified Captain Gaun and mental health staff that the plaintiff was acting erratic and seemed to be depressed and need assistance from medical personnel, see housing unit log book at * page 94.

On August 30, 2022 the plaintiff, informed housing unit staff that his toilet was stopped up and that feceies was floating in the toilet and that he need the plumber to be called.

6

The plaintiff was allowed to use the bathroom in another cell but he was never allowed to clean his cell toilet or be moved to another cell, which he was told could only be done by defendant **CAPTAIN GANIES** because of her ranking of security captain at the facility.

This lead to the plaintiff having to sleep eats and remain in a cell 23 hours a day with these fecees.

On Wednesday August 31, 2022 at approximately 10:30am, Captain Mitchell was escorting the plaintiff to the clinic area because Mental Health Personnel called him down after they were informed that he was having some mental health episode.

While walking out of the housing unit and towards building 2 inner gate an SRT team appeared being lead by defendant **CAPATIN FERNANDEZ** who stopped the captain Mitchell and asked where the plaintiff was going.

Captin Micthell explained that he was escorting the plaintiff to the facility clinic area for a medical callout which the SRT officer that was in the front (description is 6"3, slender built, long hair of dreads, light skinned) stated that the plaintiff is not allowed in the facility clinic area due to NYC DOC policy and him being a court ordered locked down inmate and that he did not care if the plaintiff was going crazy. The policy can be seen in Ex-A (page _4_ - _6_ )

Ignoring the information that they were given from Captain Mitchell he explained that the plaintiff needed IPC and CIT (both ackroms unknown to the plaintiff), he SRT team and captain ordered that the gate be open and started advancing towards the plaintiff in a threatening manner while screaming under their mask that **"I KNOW YOU", " YOU ARE THE GUY WITH THE LAW SUITS AM GOING TO FUCK YOU UP TODAY"**.

It is important to note that the SRT team member who made this statement was standing with defendant **CAPTAIN FERNANDEZ.**

The plaintiff was threatened by these SRT team and defendant **CAPTAIN FERNANDEZ,** and was only saved from a physical attack by this team by the actions of CO Serrano shield 12439, who was working the housing unit who forced the plaintiff back towards him and away from the advancing SRT team, who had taken notice that the SRT team member with the dreads was within inches of the plaintiff and had his hands out in an attack formation and was also able to hear this SRT Defendant **(WITH DREADS)** was still talking under his mask about having an issue with the plaintiff s' law suit and needing to be taught a lesson.

**(PLEASE PRESEVE THE CAMERA FOOTAGE FROM HALLWAY AREA OUTSIDE OF HOUSING UNIT 2A ON THE DATE OF AUGUST 31, 2022)**

The retreated to his cell and contacted his attorney ERIC ABRAMS Esq. from Paul, Weiss, Rikfind, Wharton & Garrison LLP and informed them of what had just occurred because of the fact that he had an civil manner that was close to trial that involved an SRT Captain by the name of Bernard Mathis in the matter of ***ALEXANDER WILLIAMS V. CITY OF NEW YORK ET AL. 19-CV-3347 (LJL).***

The plaintiff also sent a letter for preservation to **CITY** Attorney's and to Magistrate Judge Katherine H. Parker from the Southern District in the matter of ***ALEXANDER WILLIAMS V. CITY OF NEW YORK ET AL. 22-CV-3819 (PGG) (KHP).*** This letter can be seen herein as EX-C. **(supporting an ongoing campaign of retaliation due to the plaintiff filing of law suits and publishing of a book titled "THE TRUE UNTOLD STORY OF NEW**

**YORK CITY'S NOTORIOUS RIKERS ISLAND", both which are acts protected by the First Amendment of the Const.)**

On August 31st, 2022 the plaintiff informed housing unit staff that his toilet was stopped up and that feceies was floating in the toilet and that he need the plumber to be called.

The plaintiff was allowed to use the bathroom in another cell but he was never allowed to clean his cell toilet or be moved to another cell, which he was told could only be done by defendant **CAPTAIN GANIES** because of her ranking of security captain at the facility.

This lead to the plaintiff having to sleep eat and remain in a cell 23 hours a day with these fecees.

On September 20, 2022 at 8:10am the plaintiff awoke to a gall bladder attack where he was having issues breathing, was vomiting and passing his bowels without being able to control them.

CO Pierce immediately called a medical emergency and informed the plaintiff that someone from outside of the facility had called the bubble station approximately 5:00am that morning inquiring if he was on the production list for Bellevue hospital.

At that time deputy warden Phillips called CO Pierce and instructed him not to bring the plaintiff to the facility Clinic because she did not care if he was dying, that she had to enforce the facility command level order for Court Ordered Lockdown Housing Unit that states that Court Ordered Inmate are not allowed in the facility clinic area. See Ex-A

CO Pierce informed Deputy Warden Phillips that the plaintiff seemed to be in bad shape and he defied Deputy Warden Phillips orders and called over the facility wide walike talkie for a medical emergency.

Roughly, an hour and a half later the plaintiff was being escorted to the facility clinic with chronic abdomen pain and vomiting.

While a CO Gomez stopped, being escorted to the facility clinic the plaintiff who is the Warden's executive sectary and informed that he and the warden had received an email at 5:45am in regards to the plaintiff missing numerous hospital appointments for surgery in his gallbladder.

CO Gomez escorted the plaintiff to the facility clinic where he was seen by Dr. Asari and informed that his Gallbladder matter was dire and he needed to go to the hospital as soon as possible. During the medical examination another Dr. Informed both Dr. Asari and the plaintiff that was wanted in a separate booth in the clinic area for tele-health where the surgery doctor from Bellevue hospital wanted to know why the plaintiff was not produced in the hospital for his scheduled surgery.

This was an ongoing matter where as Ex-B where the plaintiff was supposed to be produced to Elmhurst Hospital on September 15th 2022 for removal of his Gallbladder after doctor found that it needed to be removed before causing the plaintiff a life threatening medical issue.

At 10:30am, CO Gomez and Captain Wilmer escorted the plaintiff to the facility intake area while Deputy Phillips who was the facility tour commander that morning. When the plaintiff was taken into the intake area and Defendant **CAPTAIN WIGFALL** ran over to the

plaintiff and began cursing at him and becoming physical with him stating that he wanted him out of his intake and that he would "BREAK HIS NECK & DIDN'T CARE ABOUT THE PLAINTIFF BOOK OR LAWSUIT".

The plaintiff asked him what was the issue that he had never done anything to him and that he was in dire pain and was escorted by the warden sectary and captain Wilmer here why was not he addressing them.

Defendant **CAPTAIN WIGFALL** response was fuck you and the warden this is my intake area I do not care about your medical emergency or if you die, what I care about is your lawsuits. At that point, another officer who is unknown to the plaintiff stated to defendant **CAPTAIN WIGFALL** that he did not want to be part of what he was seeing after the incident leading to the arrest of correction staff.

On September 20th 2022 Deputy Warden Tindale, Captain Wilmer and defendant **CAPTAIN GANIES,** stated that *"YES" "I am weapons certified and I could take you to the hospital but right now I do give a fuck if you die because you placed by business in your book, hope you live to put this in Part II",* at 11:45am when the three of them were summoned to the housing unit due to a level B being active when the plaintiffs' pains became unbearable and housing unit officers did not know what else too.

As promised by defendant CAPTAIN GANIES the plaintiff was not taken out of the facility until 4:00pm after enduring over 8 hours of unbearable pain from a Gallbladder infection.

On September 30, 2022 at approximately 11:45 am defendants **CO ANDRE HICKSON, CO KEVIN WHITE AND CAPTAIN GANINES** entered the housing unit of 2a at the GRVC facility and ordered the plaintiff to lock into his cell while he was conducting the feeding.

*l*

While the plaintiff was preparing to lock into his cell defendant **CAPTIAN GANIES** stated to him that she was tired of his shit and that she was well informed that he had sued the department of correction and the **CITY** but that she didn't give a fuck about a law suit because it wasn't her money that will be given out. **See EX-K and EX-L.**

Defendant **CAPATIAN GAINES** then went on to state that she was going to stop the plaintiff from contacting his attorneys who are representing him because if she stops that then she will stop the suits and that as the security captain she was going to ensure that his (1) hour mandatory daily recreation was cut as well, which the plaintiff filed a grievance memorizing see EX-D. As mental health referral was also generated from this, enter action which lead to the plaintiff being placed on Suicide watch. **See EX-M.**

On October 2nd 2022 the plaintiff was not afforded (1) hour recreation as stated by defendant **CAPTAIN GANIES.**

On October 3rd 2022 from 7:00am – 10:30am the plaintiff suicide watch was not present which he took as a way of following through on the threat from defendant **CAPTIAN GANIES.**

On October 3rd 2022 at 5:15pm the facility clinic contacted housing unit 2a and order that the plaintiff be produced and as soon as the officer requested Clarence over the facility wide walkie talkie to escort the plaintiff to the clinic defendant **DEPUTY WARDEN FLEMMING** called the housing unit and ordered the production to be stopped without reason.

At approximately 6"00pm the plaintiff was being escorted by officers and as soon as the plaintiff and officer walked outside of the housing unit deputy wardens Phillips and defendant **DEPUTY WARDEN FLEMMING,** stopped the plaintiff and officer and stated **DEPUTY WARDEN FLEMMING** stated *"I DON'T CARE WHAT HIS MEDICAL SITUATION IS YOU*

12

*DO NOT MOVE A BODY AFTER I GAVE AN ORDER NOT TO".* It was clear to the plaintiff at that time that for whatever reason **DEPUTY WARDEN FLEMMING** order was adverse to his medical needs.

On October 4th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 4th 2022 defendant **PRESTON RITTER** walked into the housing unit 2a while the plaintiff was in cell (7) which is housing unit cell dedicated to legal studies, and stated to the plaintiff *"YOY ARE GOING TO DIE IN MY JAIL UNLESS YOU DROP YOU LAWSUIT"*.**(PLEASE PERSEVE THE HOUSING UNIT VIDEO APPROXAMATELY 11:00AM WHEN ADW HENRY SIGNED HOUSING UNIT LOGBOOK, IN CASE FOOTAGE IS ERASED BY TIME DISCOVERY PROCESS COMMENCE IN THIS ACTION).**

On October 4th 2022 at approximately 2:00pm defendant **PRESTON RITTER** gain was present in the housing unit while defendant was being afforded a shower. The facility Warden was present as well and when defendant **PRESTON RITTER** over heard the plaintiff voicing his grievances to the warden defendant **PRESTON RITTER** became aggressive and upset and began threatening the plaintiff and ordering him to shut up and go to the shower. **(PLEASE PRESEVRE THE VIDEO FOOTAGE FROM HOUSING UNIT 2A ON THIS DATE AND TIME SO THAT THE FOOTAGE WILL NOT BE ERASED OR MISSING BEFORE COMMENCEMENT OF DISCOVERY IN THIS ACTION)**

From August 29th 2022 – October 8th 2022 until on October 8th 2022 he was allowed to clean his cell, the plaintiff informed housing unit staff that his toilet was stopped up and that feceies was floating in the toilet and that he need the plumber to be called.

The plaintiff was allowed to use the bathroom in another cell but he was never allowed to clean his cell toilet or be moved to another cell, which he was told could only be done by defendant **CAPTAIN GANIES** because of her ranking of security captain at the facility.

These leads to the plaintiff having to sleep eat and remain in a cell 23 hours a day with these fecees.

On October 5th 2022 there was a mental health referral was generating by DOC Staff informing mental health personnel that the plaintiff conduct and behavior was being affected by the fact that he was unable to clean his cell and had to live with the feces inside of it, and that he seemed to be becoming suicidal.

On October 5th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 5th 2022 defendant **CAPTAIN GANIES** was present on housing unit 2b but made it her business to stop at housing unit 2a and informed housing unit staff that the plaintiff was not to be moved out of his shitty cell unless he agreed to unpublished his book, speaking in regards to the book titled "THE TRUE UNTOLD STORY OF THE NOTORIOUS RIKERS ISLAND".

On October 5th 2022 at approximately 6:30pm defendant security **CO GRAVES** came to afford legal phone calls to court ordered inmates attorney and informed the plaintiff that he would not be able to call his attorney unless he agreed to drop his lawsuit against him. Defendant **CO GRAVES** was speaking in reference to the matter of ***ALEXANDER WILLIAMS JR V.*** ***CITY OF NEW YORK ET AL.*** **21-CV-01083**, where defendant **CO GRAVES** is named as a defendant in regards to the plaintiff medical needs.

The plaintiff was deprived from calling his attorney for from September 30th 2022 -
_____, _____, 2022 and was only being afforded when CO Willie McNeil or CO Harris conducted the legal calls for court ordered lock down inmates.

On October 6th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from $1 - 10$.

On October 6th 2022, the plaintiff was scheduled for a medical trip to Bellevue Hospital for a checkup due to his surgery after complaining of stomach pain daily which was abnormal. The defendants **CITY** failed to produce the plaintiff to medical appointment which denied the plaintiff adequate medical care after a surgery and also seems to be a custom, practice, usage, procedure or rule not to produce inmate to medical appointments inside and outside of the facility. The plaintiff cannot inform the Court on exactly how many date the plaintiff was not produced to hospital by defendant **CITY** by way of DOC Officials so the plaintiff ask that the Court review the plaintiff DOC Medical records to include any all medical appointments that he was not produce to, to add to this claim.

15

On October 6th 2002 at approximately 2:30pm Defendant **CO GRAVES,** conducted legal calls and once dialed the number to Julie A. Clark Esq., 917-309-9862, stood in front of the plaintiff door and listened to the plaintiff calls with his attorney until he was done. This violated the plaintiff Sixth Amendment Right to communicate with his attorney in private. **(PLAINTIFF ASK THAT THE FOOTAGE FROM THIS DATE AND TIME BE PRESERVED SO THAT IT WILL NOT BE ERASED DESTROYED OR UNAVIABLE ONCE DISCPVERY IN THIS MATTER IS COMMENCED)**

On October 7th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 7th 2022 at\* 12:15pm defendant Andre Hickson conducted legal phone calls for the Court Ordered Lock Down inmate of housing unit 2a. Defendant Andre Hickson walked to the plaintiff cell with the phone in his hand and once he was in front of plaintiff cell checked to make sure that his boy worn camera was off and stated *" I DYOU WRITE ON A GRIEVANCE BEON'T CARE WHAT YOU WRITE ON YOUR GRIEVANCES BECAUSE GANIES IS BACKING ME (SPEAKING IN REFERRENCE OF DEFENDANT CAPTAIN GANIES) YOU ARE NOT TO CALL YOU LAWYERS UNTIL YOU DROP YOU LAWSUIT AGAINST ME AND UNPUBLSH YOUR BOOK, SPEAKING IN REGARDS TO THE BOOK TITLED **"THE TRUE UNTOLD STORY OF NEW YORK CITYS' NOTORIOUS RIKERS ISLAND".***

Due to this the plaintiff was unable to contact s to his attorney's in regards legal matters which caused him to be depressed, stressed out and have an anxiety attack.

*16*

It is also important to note that the facility maintains a policy that is seen herein EX- **E** , that clearly states that GRVC staff is to record on their body worn cameras *"ANY/ALL"* services that are provided to the plaintiff and log such on a separate excel grind sheet along with storing footage, stating the plaintiff by name and book and case number.

On October 8th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 9th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 10th 2022 the plaintiff requested medical and sick call due to stomach pain explaining that he didn't feel well in the area where he just had surgery at sick-call and medical was not provided and the plaintiff suffered with a constant pain at the level of being a on the scale from 1 – 10.

On October 08,2022 the plaintiff requested a medical emergency from Captain Jones who contacted the facility clinic area explaining that the plaintiff was in need of medical care from serve pain in his stomach and had just had surggy . This took place at approx 1:15pm the plaintiff was forced to sit and wait while in pain until 5:00pm that night.

This is a matter that has already been addressed in the matter of AGNEW V. N.Y.C. DEPARTMENT OF CORRECTION 2021 N.Y.Misc. LEXIS 6134. Where Judge Elizabeth A. Taylor ordered DOC and defendnat City to get in compliance with its mandatory duties under New York City Aministrative Code § 9-108(c), Correction Law § 500-c(4), and the Rules Of The City Of Ne York 40 §§ 3-02(b)(4),(c)(1), (c)(2)(i) and (c)(4).

On October 9th 2022 at approxamately 2:00pm Inmate Kwaine Thompson was sprayed in the housing unit area with MK-9 which lead to the entire unit whihc is only 16 cells being filled with the chemical agent. The plaintiff began to suffer from a asmatha attack due to beuing allergiuc t peppers which is listed in his medical records..

The plaintiff was never afforded the medical care that he requested and as a result was forced to use sink water and a wash clothes as a make shift filteration system.

On October 9th 2022 the plaintiff was not allowed the opportunity to call his attorney as the Court Order Polcicy states and is under the believth taht he was not allowed to do so because he was told this by Defendnat KEVIN YOUNG on October 8th 2022 that he would not be allowed to call his attorney as long as he had an issue with security satff standing in front of his dorr whenever he spoke with his attorney.

On October 10,2022 at approxmately 9:25AM Defendnat Capatin Ganies toured the plaintiff housing unit of 2a. When she passed the plaintiff door she hesitated as if the plaintiff and her was speaking and stated that "I SEE SECUIRTY HASNT BEEN HERE TO AFFORD YOUI LEGAL CALLS", "THAT IS MY TEAM AND THOSE ARE MY

ORDERS". "YOU WILL BE AFFORDED LEGAL CALLS WHEN YOU DECIDE TO UNPUBLISH YOUR BOOK" (SPEAKING IN REGARDS TO THE PLAINTIFF BOOK TITLED: THE TRUE UNTOLD STORY OF NEW YORK CITY NOTORIOUS RIKERS ISLAND)

The plaintiff explained that he would not be using the phone because he had ni plans of unpublishing his book. Defendnat CAPTAIN GANIES response was that "NIGGA I WILL GET YOU KILLED RIHGHT HERE IN THE JAIL" "I will have people pull up to your cell and trust me i havew done this before".

From the researched the plaintiff did before he published his book he discovered that the defendant CAPATAIN GAINES did assult another female captain by the name of Captain West while being employed as a Captain at the GRVC facility which allowed the plaintiff to belive that their was credance to the defendant CAPATIN GABNIES threat as she had already shown that she has a perpensity for commiting acts of violence.

The plaintiff then oper heard the defendnat CAPTAIN GANIES turn to Coorections officer Kenol and Correction Officer Graham amd state that she wanted to to write a report stating that they had heard the plaintiff threaten her because she knew how to get him to drop his book out of circulation with her name in it and that she planned to attempt to press charges against the plaintiff for something or some sort of matter. (PLEASE PERSEVE THE GENTIC CAMERA FOOTAGE AND BODY CAMERA FOOTAGE FROM CAPATIN GANIES AND BOTH CO KENOL AND GRAHAM TO ENSURE THAT THE EVIDENCE IS NOT ERASED OR UNAVAILBE BEFORE DISCOVERY STAGES COMMENCE IN THIS MATTER)

EX- I is A statment from an inamte by the name of Kwaine Thompson who was a witness to this ordel.

During this ordel the defendnat CAPATIN GANIES stated that she wish that the plaintiff would just die and that she had already attempted to help him die by taking her time getting him out of the facility on the day that he was schedlued for surgey.

Defendnat CAPATIN GANIES is directly reffering to September 20, 2022 when the plaintiff was in a medicla emergency due to GallBladder and not being produced to Bellvue hosipital for the 5th or 6th time form medical. EX-J is the plaintiff's CMC information shett that clearly states that the plaintiff is to be transported by tranportation department only, but on the date and question defendnat CAPATIN GANIES and other ROIC DOC Officials purposely failed to implemant their own transportation policy as it relates to the plaintiff as an act of retalaition which as a result resulted his constitutional rights.

Also during this same ordel defendant CAPTAIN GANIES STATED to the plaintiff that he was not going to be allowed a shower, was not going to be allowed to contact his attorney nor was he going to be allowed his (1) recreation by her orders as security captain at the facility. See EX-23.

As a result of this on October 10, 2022 the plaintiff was not afforded a shower when he requested as an act of retaliation from defendnat CAPATAIN GAINES, as a result the plaintiff was not allowed to call his attorneys as am act of retailiation from defendnat CAPATIN GAINES and as a result the plaintiff was ubject to 24 hour locked in a cell without recreation when he requested as an act of retalaition from defendnat CAPATIN GAINES.

2o

On October 10, 2022 at approxmately 11:30am defendnat **CAPATIN GAINES** toured again and as she passed the plaintiff cell stated I want to see how those new charges fit your ass, because I know what you case is and I know that you have been locked up 5 years (**INFORMING THE PLAINTIUFF THAT SHE HAD TO HAVER WENT AND RESEARCHED HIM AND CONTEMPLATED AN ATTACK OR ACT THAT WOULD ADVERSE TO HIS CRIMINAL CASE**) and I know that once I file a polcie reprot stating that you tyhreaten me as a Peace Officer that it will fuck your entre case up.

On October 11, 2022 the plaintiff was not afforded recation as bn act of retalaition from defendnat **CAPATIN GANIES**, WHEN HE REQUESTED IT.

On October 11th 2022 at approxametly 10:15am - 11:15am Defendnat **KEVIN WHITE** was affording the plaintiff his legal call as per court order lock donw policy when as he was dialing the plaintiff's lawyer Julie A. Clark Esq, the phone line wnet dead and defendnat **CAPTAIN GANIES** came over the air via the walkie talkie and stated that "THAT INMATE IS NOT ALLOWED TO CALL HIS ATTRONEY". Kevin White was lost and noit in aggreance with the action of defendnat **CAPATIN GANIES** but could not afford the call because of the line was cut from DOC adminstartion office, whihc was outside of the housing uynit and out of his power.

On Saturday October 8th 2022 the defendnat **Kevin Young** conductred legal calls on housing unit 2a ands stated to the plaintiff that he would not be allowed to call his attorney because he was changging his pin number whihc was 718-718 to an unknown pin.

2/

As a result on the plaintiff  was not able to call his lawyer
on ~~Sundayxxx~~ Sunday October 9th 2022.

On October 12, 2022 when legal calls was being afforded
by defendnat Andre Hickson He was unable to service the plaintiff
call because the pin that defendant KEVIN YOUNG  changed it to
from 718-718 to 884-884, was no longer the same and there was
no update.

There was also no documentation as to why the plaintiff
pin had been changed 3x's in (1) week. This in itslef is clear
and supportive evidence that DOC Officlas are and engagging in
a campaingn related to retlaiting against the plaintiff for whatever
reason.

On October 12, 2022 at approxamately 11:30am a ESU Unit
rushed the pplaintiff housing unit whoile he was in Cell 7 whihc
is dedicated to Law Library studies. The plaintiff was legally
in possesion of a DOC issued Tablet and an USB with his discovery
that was sent to the New York Citry legal Division by his attorney
and had already been examined and apporved for his possession.

~~Rhis XXESU UNI~~ conducted a search of the plaintiff and his
cell whihc is cell 11, and ended up taking from the plaintiff
two pair of Puma sneakers whihc were approved by DOC official
and a sweater whihc was DOC issued and a pair of grey sweat pants
whihc also was never given a reason why these items where taken
nor given a reciept for entire items or USB with Discovery on
it.  See EX-22

The plaintiff  understood this as being from defendnat captain
ganies  who made this types of threats on a prior date stating
that she would have nigga pull up to the plaintiff cell.

27

This is also support of the defendant's **CITY** failing to train ESU members in infomring them that Court Order Classified Inmate are allowed USB via disoovery by way of the facility law library. This si Crucual because it seems as in **ALEXANDER WILLIAMS JRV CITY OF NEW YORK ET AL,** 21-CV-1083 (PGG) (KHP) AND **ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL.,** 22-CV-3819 (PGG) (KHP) that the defendnat **CITYY** by way of DOC Officials have applied a retsriction of limiting the plaintiff law library access which is a restriction noit listed on the Supreme Court Lockdown Order and ADA Ernest Chin has explained that such limitations and restriction are not in accordance with the lockdown order to DOC officials.

It is also support that defendnat **CITY** by way of the defendnat listed and named herein this complaint failed to train and sypewrvise these defendnat and ensuring that that posess the mental capacity of not being emotional and / or not using DOC polcies, customs, usgaes to retaliate againt the plaintiff or any other inmate detaninedd with city facilities.

The failure in this training is the exact reason and cause of the rise and uptick in death amaonsgt detainee on rikers Island that the World has been seeing and witnessing firts hand.

On October 12, 2022 the plaintiff wa snot allowede to call his attorney as an act of retlaition nor was he afforded his (1) hour of recreation whihc as a result lead to him being confined in a cell for 24 hours a day for the fourth day in a Row.

This is not what the plaintiff Supreme court Order satted and the defendndt s inclduing **CITY,** has failed to give the plaintiff and notification as to why these are factors that are accurcing whenever he grieves and demand as written response.

ON October 12, 2022 when ESU team member escorted the plaintiff from cell 7 to cell 11 to conduct a search they did so even though the plaintiff informed the officers that he was not supposed to be rear cuffed and had medical reocrds stating such.

The department of corrections as well as Bellevue Hospital gave medical permiots informing that the plaintiff is to be front cuff only due to surgey and rear cuff crerating complications. See EX-2

Later that day on October 12, 2022 the plaintiff began feeling a sharp pain in his adomend area and notice blood coming out of his rectum area when he used the bathroom. He informed housing unit staff of this who informed him that medical stated that they were busy and would call him down later. See EX-24.

On October 12, 2022 at approxamately 6:40pm defendant **ANDRE HICKSON** , stated to the pl;aintiff that he was told by defendnat **CAPTIN GANIES**  not top allow the plaintiff to call hisx attorney but that he woulkd order the plaintiff comissary that must be ordered by phone.

On October 13, 2022 the plaintiff asked for a shower and was denied the righ tto do so stating that the defendant **CAPATIN GAINES** gave an order tha the was not allowed to take a shower until he unpbubvlished a book.

Also on that same date of October 13, 2022 the plaintiff wasxnot afforded his (1) Hour recreation in pursuant to his Supreme Court Lockdown Order  or sick-call stating that the defendnat **CAPTAIN gANIES**  left word that he was not akllowed either of these services.

The plaintiff infomred housing unit staff that he was in serve pain and was vomiting and bleeding out of his rectum and needed medical services bad. he was notx afforded these services

and belived that the denial of these services was tied to the
order from defendant **CAPTAIN GANIES** , like every other services
was denied by her order.

On October 13, 2022 the plaintiff was again sbceduled to
be taken to Bellevue Hospital for Post-opt srugey check up by
the plaintif was not produced by "**DOC OFFICIALS**" with a reason
unknown butr belived that again the defendantx **CAPATIN GAINES** had
interuypted his medical tróp as he had seen so in the past.

Also onOctober 13, 2022 the plaintiff became aware that
both sets of his sneakers were no longer in his cell after the
ESU search the day before and rember seeing these officers walk
out of his cell with a bag.

"The plaintiff ask thet the footage and body camera footage
from this seach be perserved so that it is avaiable by the time
the discovery process for this matter commence."

Again on October 14, 2022 the plaintiff alerted medical
staff and housing unit staff that he was bleeding from his rectum
and vomiting twice or three times a day and needed to be examine
because of sharp apin in his area where he had recently had surgey
at.

                                    4

AGain the plaintiff medical emergency matter s was ignored
under the pretense that he would be allowed medical attention
if he discontinued selling a book where the defendant **CAPATIN
GANIES** was named inside of it from a negative point of view.

The plaintiff wanted to contact his attorneys' and ask them
for help from the outside and again on October 14, 2022 the plaintiff
was not afforded sick-call, (1) hour recration of legal calls
to prevent him from informing his attorney's of the conduct that
the defendant's were engaging in.

                    25

On October 14, 2022 at  approxamately 5:50 pm defendant
**PRESTON RITTER AND ANDRE HICKSON,** was present on housing unit
that the plaintiff was detained in and explained that they would
aldow the plaintiff to order commissary via phone but was ordered
by their capatyin defeddant **CAPTAIN GAINES** not allow the plaintiff
to contact anyuone that was on his allowed call list until he
played ball with them. On that date and time defendant **ANDRE
HICKSON** Specifically asked the plaintiff " **WHAT DO YOU WANT TO
TALK TO YOUR LAWYERS ABOUT SO BAD".**

On October 15, 2022 at approxamately 7:15 am the plaintiff
spoke directly to the doctor who was present durring sick-call
rounds and explained that he was bleeding , vomiting and had
serve pain in hgis stomach to whihc the doctore stated that I
wouyld see what I can do for you and left the housing unit. as
a result the plaintif fwas never seen by medical staff that day
nor was he given a reason why. **◊THE PLAINTIFF ASK THAT THE GENTIC
FOOTAGE FROM THE HOUSING UNIT ON THIS DAT E AND TIME BE PERSERVED
SO THA TIT WAS NOT BE EREASED  BY THE TIME THAT DISCOVERY STAGE
COMMENCE IN THIS MATTER).**

On October 15, 2022 at approxamately 2:15pm defendant **ANDRE
HICKSON** was present on the housing ubit conducting lefgal calls.
This defendnat came to the plaintiff who was in cell 7 an this
time and stated that you **"YOU ALREADY KNOW YOU ARE NOT GETTING
ANY CALLS UNTIL YOU CHILL WITH THAT BOOK RIGHT"** and walked off.
(THE PLAINTIFF ASK THA TTHE GENTICE FOOTAGE FROM THIS DAT E AND
TIME BE PERSVED FOR DISCOVERY PURPOSES ).

On October 15, 2022 for the 6th times that week of the month the plaintif fwas not afforded his (1) recreation pursuant to his Suprme Court Lockdonw order. This as a result was the paaintiff being subjected to 144 hours straighht locked in a cell without access to sun, fresh air or ability to excercise and was done in a punitive fashion or in regards to retaliation for his lawsuits and publishing of a book that expsosed certain correctional officers and some of which are defendnat hereln this complaint. **DEFENDNAT ANDRE HICKSON, DEFENDNAT PRESTON RITTER AND DEFENDANT CAPATIN GAINES.**

These type of condiction are inhumane and are in violation of the plaintiff Constitutional rights.

It is clear that the defendants as well as defendnat **CITY** by way ofd Department of Correction officials are deliberate and indiffrent to the objective condictions surreounding the mandated (1) hour reareation the the plaintiff is suppose to have whihc is in accordance with the supreme court lockdown order.

On October 15th 2022 at approaxmately 6:00pm the defendant **ANDRE HIOCKSON** was present on the plaintiff hosuing unit conducting legal calls.

When defendant **ANDRE HICKSON,** appraoched the plaintiff he asked the plaintiff was willing to play ball yet and that is so he would allow the plaintiff to call his attorney as long as the plaintiff diodnt complain about him listening to the call.

The plaintiff was kneel over and begged the defendnat **ANDRE HICKSON,** to please alert the clinic that he was having a medical emergency , by bleeding from his rectum area and vomiting attched to cold and hot flashed.

27

The defendnat ANDRE HICKSON, informed the plaintif ftah the didnt give a flying fuck about his health and would not alert a soul about how he was feeling and that the plaintiff should of thought about such before he sued him. The defendnat ANDRE HICKSON was speaking in regards to the ongoing matter in this Circut of ALEXANDER WILLIAMS JR VS . CITY OF NEW YORK ET AL, 21■CV-1083 ◊PGG) (KHP).

The sdame defendnat was also found to be liable for simular tactic in retalaition against the plaintiff and another court order lockdown inmate in the matter of ■JOHMANNI ANDUZE V. CITY OOF NEW YORK ET AL., 21-CV-0519 AUGUST 08, 2022 (REPOPRTER) 2022 U.S. Dist 140929.

It is improatant to note that the defendants CITY by way of New york City Department of Correction maintain a polciy that states: 3-02(B)(4) "CORRECTIONAL PERSONNEL SHALL NEVER PROHIBIT, DELAY, OR CUASE TO PROHIBIT OR DELAY AN INMATES ACCESS TO CARE OR APPROPRIATE TREATMENT. ALL DECISIONS REGARDING NEEDS FOR MEDICAL ATTENTION SHALL BE MADE BY HEALTH CARE PERSONNEL".

Befendants' ANDRE HICKSON denail to the plaintiff for medical care was violation of his rights and was tied directly to retāliation against the plaintif ffor Fistt Amendment in filing a lawsuit and petitioning the governement.

Defendnat CITY is also liable for this denail in that defendnat CITY is and was properly informed of the retalaition tactics and methods that the plaintif waa recieving from the defendnat as they were already hight lighted in not one but two prior suits before the filing of thei comapint in matters of ALEXANDER WILLIAMS

*3f*

VS. CITY OF NEW YORK ET AL,  21-CV-1083 (PGG)(KHP) & <u>JOHMANNI</u>
<u>ANDUZE VS . CITY OF NEW YORK ET AL.,</u>  21-CV-0519 )AUGUST 08,
2022 (REPORTER 2022 U.S. Dist 140929) and that defendnat CITY
 failed to prevent further retalaition against the plaintiff.

        Defendant ANDRE HICKSON  was aware that the plaintif had
recently had a stomach surgey and removal of an organ so being
informed of the pain and condiction that the plaintiff explained
and denying such medical care in negligent and malice in a deliberate
and indiffreecne fashion.

        On October 16, 2022 at approaxmately 5:00pm defendant CO
GRAVES  was present on the plaintiff housing unit to conduct
legal calls and when the plaintiff was attempting to call his
attorneyu to report what he was going through the defendnat CO
GRAVES stood directly in front of the plaintiff door as to listen
to the plaintiff conversation with his ~~akkpax~~ attorney which
is protected under the Sixth Amendment of teh Const and a matter
that the defendnat CITY  was given notyce violated the plaintiff
rights before hand in the matter of <u>ALEXANDER WILLIAMS JR V.</u>
<u>CITY OF NEW YORK ET AL.,</u>  21-CV-10873 (PGG) (KHP) REPORT AND
RECCOMENDATION DATED AUGUST 05, 2022.  ( THE PLAINTIFF ASK THE
THE GENTIC VIDEO FOOTAGE FROM HOUSING UNIT 2A BE PERSERVED FROM
THIS DATE AND TIME SHOWING THAT DEFENDNAT GRAVES WHILE CONDUCTING THE
PLAINTIFF LEGAL CALLL TO ~~XXXXXX~~516-316-2841 DID STAND IN FRONT
OF CELL 7 WHILE PLAINTRIFF ENEGAGED IN PROTECTED CONVERSATION).

        On October 17, 2022 the plaintiff was not afforded to opprotunity
to call hisx defense attorney's even though he was shceduled
for an improtnat hearing the next day on October 18, 2022 that
could determine the course of his criminal case.

                            29

This denial was duriing the 7-3 tour whihc are normal business hours where a lawyer could be contacted.

During the 3-11 tour at approxamately 7:00pm Defendant CO GRAVES came to the plaintiff's housing unit to conduct calls and the plaintigf had the opportunity to speak with this defendnat in regaurds to the violation of denying legal calss and the violation of the lack of privacy that the plaintiff was being afforded as it related to legal calls with his defense team.

During this conversation in the housing xaunit dayroom defendant CO GRAVES informed the plaintiff that secuirty team officer was instructed by defendnat CAPATIN GANIES not to allow the plaintiff to contact with his defense team or allowed call list because of the fact that the plaintiff had writen about her in his book.

Defendant CO GRAVES also stated that he was instructed by his capatin who is defendant CAPTAIN GANIES that pursuant to DOC polciy 4007 R-B that anyone from secuirty could legally listen and also take notes in regards to what the plaintiff was talking about on the phone regardless of who the plaintiff was speaking with whether it was a lawayer or a private investigator.

This statement is tying the defendnat's actions to Custom, Practcies, Usages, Procedures and rules that violates the plaintiffs Cobstitutional rights to privacy with his attorney under teh Sixth Amendment of the United States Const.

As a result the plaintiff was unable to work on the presntation with his defense team that they were preparing for their meeting with the Kings County Homicide Borough Chief in efforts to getting the Plaintiff Criminal Charges dismissed .

It is alos obvoius that the Custom Usgae, Polciy, Practice, Rule And ./or Procudire that is being enforced againt the plaintiff

in reference to this matter of communication with hjis alllowed
attoirney's is being enforced to obtain just that desired adverse
affect against the plaintiff.

On October 17,  during the conversation with defendnat CO
GRAVES at aprroaxmenetly 6:45pm -7:30pm on hoisung unit 2a in
dayroom.(THE PLAINTIFF RESPECTFULLT DEMAND THAT THE VIDEO FOOTAGE
FROM THIS DATE AND TIME BE PERSVED SO THAT THE GENTIC VIDEO CAN
BE PRESENT DURING THE STAGES OF DISCOVERY IN THSI MATTER).

ON oCTOBER 17, 2022 AT APPROX 12:15PM THE PLAINTIFF WAS
ALLOWED TO USE CELL 7 ON HOUSING UNIT 2A WHIHC IS DEDICATED FOR LAW LIBRARI
STUDIES FOR cOURT ORDER CLASSIFICATIOPN OF INMATES. The footage
form this date and time until 2:30pm will show that the plaintiff
is subjected to having to use a plastic bag to urinate or deficate
into while in cell 7 because of the fcat tha theee is no toilet
in this cell and housing unit staff in instructed by defendant
CAPTIN GINES  not to open cell doors unless she or another caoptin
is present.

This isxtokkx something that is impossible because of the
fact that the facility GRVC is short of staff whihc include Captins
whihc affects the enforcmenet of this Rule, Practcie Polciy without
being  Cruel and Unusla or Abritry and Caprious in nature.

The plaintiff ask that THE GENTIC FOOTAGE FROM THIS DATE
AND TIMES MENTIONED IN REGARDS TO THIS CLAIM BE PERSVED FOR DISCOVERY
PURPOSES 10/17/2022 12:30PM - 2:30PM DIRECTLY CELL 7 AREA OF
HOUSING UNIT 2A.

Oc October 18, 2022 the plaintiff was produced to the Seg
Intake section of the facility for Court Prodcution.

While waiting in the section of the Building (1) in front
of the Seg Intake door defendnat CAPATIN gANIES appeared in the
Facility Corridor section in front of Building one apporaxmately
7:30am and stated to the plaintiff the following, "I SENT ESU TO
YOU AND THEY STRIPPED YOU OF YOU LEGAL WORK AND SNEAKERSBECUASE OF THE FACT
THAT YOU ARE BEEEFING WITH ME AND "MATHIS", I SEE THAT YOUR LAWSUITS STILL
HAVENT BEEN DROPPED SO DO NOT BE SURPIRSED IF YOUR COURT CLOTHES ARENT'S ALL
THERE".

The statement from defendant CAPATIN gANIES is a direct statement
that informed the plaintiff that he was subject of her retalaition
on October 12, 2022 when ESU took his property and legal dtudies
in the form of USB and DOC issued tablet. It also supports that
defendnat CAPTIAN GANIES conduct is a direct and proximate result
of the plaintiff suffering foom a campaign of retaliation that
she is spearheading due to his grievances against her, his book
in whihc she is named in titled"THE TURE UNTOLD STORY OF NEW
YORK CITYS' NOTORIOUS RIKERS XXKBXXXXXXXISLAND", AND  an ongoing
Civil matter in whihc he is approaching trial in the matter of
ALEXANDER WILLIAMS JR, VS. CITY OF NEW YORK ET AL, 19-CV-3347 (JLJ), where
it this matter it has aready been shown that many Correctional Personnel
has been retaliating against the plaintiff inm regards to. (THE
PLAINTIFF DEMAND THAT THE FOPOTAGE FROM THE FACILITY CORRIDOR
FROM OCT 18, 2022 MORNING OF 7:10AM - 8:00AM BE PERSVED FOR DISCOVERY
PURPSOES).

On October 18, 2022 when the plaintiff was getting dressed
for Court he beaame aware that he blacck Gucci shoes was missing
from his Court Clothes bag and understood then what defendant
CAPTIN GAINES HAD stated to him minutes earlier. The plaintiff
filed a griavnce as a result to memoralize the incident. See EX-16.

PLEASE NOTE: THAT THE AREA IN SEG INTAKE WHERE COURT ORDER INMATE TRIAL CLOTHES ARE STORED IS CONSTANTLY UNDER CORRECTIONAL STAFF OBERSRATION AND HAS NO INMATE WORKERS PRESENT EVER.

On October 19, 2022 during the times of 12:30pm and 1:15pm defendants CO PRESTON RITTER, KEVIN WHITE AND ANDRE HICKSON WAS presnt on the plaintiff ghosuing unit conducting legal calls. At some time durring their being present the defendnat PRESTON RITTER walked over to cell 7 where the plaintif fwas using for legal; studies and preparation of this complaint and began speaking to the plaintiff in efforts to convicne him to dropp his lawsuit against MATHIS who was once his capatin at teh facility and to discontinue his grievance and that he would ensure that the plaintiff be allowed to contact his attorney and that all retalaiation would cease. THE PLAINTIFF ASK THAT TRHE FOOTAGE FROM CELL 7 ON OCT 19, 2022 FROM 21:30PM - 1:15PM BE PERSVED FOR DISCOVERY PURPSOES.

On October 20, 2022 at approxamately 11:00am - 12:15pm the plaintiff was forced tp uroinate and defcate inside of a DOC issued plastic bag while he was in Cell 7 being afforded Law Library on housing unit 2a. (THIS IS A CUSTOM, POLCIY, PRACTCIE, USAGE, RULE AND PROCEDURE) becaose f the fact that cell 7 does not have a Toliet inside of it and as per CLO 13/21 seen in EXA-A herein officers are told not to onpen any cell doors unless a captin is presnt. See Pg 2 of Ex-A.

PLEASE NOTE: THAT THE PLAINTIFF REQUEST THAT THIS CLAIM BE ADDED TO WHATEVER XWNXXXXXX THE COURT DEEMS THE VIOLATION IS AS WELL AS BEING ADDED AGAINST THE DEFENDNAT CITY FOR THE SXITH, EIGHTH, THIRD FOURTH AND FIFTH CUASES OF ACTION STATED HEREIN THIS COMAPLINT.

(THE PLAINTIFF ALSO DEMAND THE THE HOUSING UNIT FOOTAGE BE PPERSEVED FROM THIS DATE ON OCTOBER 20TH 2022 AND TIME OF 11:00AM - 12:15PM SO THAT THE FOOTAGE WOULD BE AVAIBLE DURRING THE TIME OF DISCOVERY IN THIS MATTER)

On October 20th 2022 again at approaxmatley 1:30pm - 2:15pm and 2:15pm O3:15pm the plaintiff was inside of cell 7 on housing unit 2a at the GRVC facility and was forced to urinate in the DOC plastic bag because the Coorectional officer that wsas on the post calimed to be a medical status of MM2 and could not open the housing cell door without a captin present and/.or another correctional officer whihc the facility informed her was not aviable at the time.

On October 21,2022 the defendnat KEVIN YOUNG  was present on the housing unit conducting legal call at approxamately 6:30pm -7:00pm and stated to the plaintiff the following: FUCK BOY YOU ARE NOT GOING TO USE THIS PHONE AND I BET MY CHECK THAT YOUR ASS GETTING SHACKLED DOWN DURRING YOU REC TIME TOO". This was a direct and proxmate therat that informed the plaintiff that defendant KEVIN YOUNG was aware that the retsraint being used against the plaintiff was being used unlawfully and in a from of retalaition.

As a result the plaintiff was denied the right to speak wit hhis attorney as well as was intentioally inflcited Emotionally by the defendant's KEVEIN YOUNG  conduct.

On October 20th 2022 evening the plaintiuff was finally able to speak with mental health clinicain PHILLUP WHITQAHAM in regards to the emotional affects that the treatments that he was endurring was taking on himfrom the defendnats KEVIN YOUNG,

34

CAPATIN GAINES, CO ANDRE HICKSON, CO PRESTON RITTER, CO GRAVESX AND CO KEVIN WHITE AND OTHERS. The plaintif was able tro exprss that he was at times thinking of harming himself in order to escape the futherance of such retalaition.

On October 20, 2022 evening appraoxmately 7:00pm - 7:30pm the defendnat KEVEIN YOUNG  was present on the housing unit to conduct legal calls and denied the plaintiff the right to contact hęs legal team unless he was abls lawyers and take notice that this usgae, practcie, polciy  and/or cutsom is something that the defendnat CITY was aware was being practcied as it related to Court Order lockdown inmates and is a known violation of Sixth Amendment right to communicate with Counsel in a secure and privatre manner.This practcie, usgae, custom and/or polciy is also evidence thet the defendant CITY failed to train and supervise the defendnat s who inagnged in that practcie of the proper and legal way to provide legal calls to court ordered lockdown inmates.

On October 21,2022 the plaintif was afforded his (1) hour recreation by Rec staff in accordance with EX-A polciy in a manner of waist chains, shackles and leg iorns.

On Octyober 22, 2022 when the plaintiff was affordded his (1) hour recreation he was done so in accordancwe with EX-A polciy that states that lcokdon inmates must be shackled and waist chains and leg wirons while inside of the cage for an hour Recreation.

On October 23, the plaintif was afforded ĥis (1) hour recreation in acEX-A whihc again violates his rights and is Cruel and unusal Punishmanet without due proces of the Law.

The usage, practcie, polciy of this practcie was deemed
to already violate the rights of Court Ordered Lockdown inmate
by Magistarte Judge Katherin H. Parker in the matter of <u>ALEXANDER</u>
<u>WILLIAMS JR. V CITY FO NEW YORK ET AL.,</u>  21-CV-1083 (PGG) (KHP)
R&R DATED AUGUST 5, 2022, MEANING THAT DEFENDNAT CITY  was and
is aware that such a practcive is wrong and unlawful and still
failed to change superwise or inform defendnat that are employee
of the New York City Department of Correction that such tactic
and procdures are wrong and need to be changed immediately to
ensure the rights of the plaintiff's ALEXANDER WILLIAMS JR,
and other classified as being Court ordered Lockdwon inamtes
with the New York City Department of Correctionss.

On October 23, 2022 the plaintiff again was forced to urinate
and deficate inside of a DOC issued bag because there was no
capatin present of assigned to the housin gunit on that date
whihc made it difficult for the plaintiff to be moved back and
forth from cell 7 durring the times that he used it to cell 11
where he is assigneddto use the bathroomnnxtimifsixxxxxxxxxxxxin
a timely fashion. (PLEASE PERSVE THE GENTIC FOOTAGE ON THIS HOUSING
UNIT FROM TIME OF 1:30 PM - 3:00 PM SO THAT IT MAY BE AVIABLE
DURRING DISCOVERY TIME IN THIS MATTER)

On October 24 -28th 2022 was not afforded hour recreation
in pursuant to with his Supreme Court Lockdown Order, the plaintiff
took this denial as an act of retlaiation from secdurity staff
some of whoi are name4d as defendnats herein this complaint.

From October 24 - Oct 31 2022 the plaintiff was not afforded
the right to take a shower and ask that the defendnat persve
the following: (MADATED SERVIES LOGBOOK FOR THE HOUSING UNIT
2A SO THAT THE DOCUMENTS CAN BE PROERLY PERSVE FOR DISCOVERY
IN THIS CASE).

On October 26, 2022 at approxametly 2:20am in the morning
the plaintiff was awaken by ESU members. The ESU  officer with
the numbers #254 on his vest took the plaintiff's "TORA"  after
reading a copy of EX-Awhihc the plaintiff had in open and stated
to the plaintiff ÜTHAT PER POLCIY FOR THIS HOUSING UNIT WHIHC
IS CLO #13/21 YOU CAN NOT HAVE A TORA AND COULD ONLY HAVE THIS,
"  whihc is when he took a Blue Giddeon issues bible out of his
black satchel on his leg and tossed it on the bed and left with
the plaintiff's TORA placing it inside of the same blackl sachtel.
The plaintiff filed a grievance to memeroalize this incident
that can bee seen herein as EX-17.

This supports the fact that the Plociy of the Court Order
housing Unit  whihc is CLO 13/21 signed by the defendnat WARDEN
OF FACILITY, DEPUTY WARDEN TIFFANY  MORALES, DW JONNEL SHIVRAJ,
DEPUTY WARDEN JOANNE MATOES AND DEPUTY WARDEN LISA BARNBY , along
with the knowldge of defendnat CITY, is a Custom , Usgae, Polciy, Practice
that is being enficend that favors one relihion over the next
and is forcing the plaintiff hereing  ALEXANDER WILLIAMS JR,
to study and on be able to follwo the Christain Religion and
not the religion that he is known to be whihc is Jewish.

After this incidnet the plaintiff stopped receiving his
Jewish Gosha meal wich was in accordance with his religious diet.
The housing unit log book will support this as it will display
that the menu that was logged into the book never came with Kosha
Diert for the plaintiff.

This exhibits that the defendnats stated herein knwoingly and willingly forced the Christain Religion on the plaintiff over the Jewish relioh in whihc he practices and the fact that the facility including the Warden DEFENDNAT CORTZ whi the grievance was forwarded to failed to address the matter when the complaint came to her and the also failed to return the plaintiff 's "TORA" whihc is related to his Jewish Relgion.

Futhermore this is a factor that the defendnats CITY was aware of violated the plaintiff rights fefering the court to the matter seen herein the judges Rep½ort and Recommendation in EX-11.

ON October 26, 2022 attorney's xapkrxxrepresenting the plaintiff from the law offices of PAUL WEISS, RIFKIND, WHARTON & GARRISON attempte dto visits Inamtes Kwaine Thompson and Trevor Forrest in regards to a matter of retalaition and interfernce in a Civil litigatiuon of WILLIAMS V. CITY OF NEW YORK ET AL, 19-CV-3347, for reason unklnown the Åttorneys were unable to visit this inmates vla video from members of the security team.

On Friday October 28, 2022 again attorney's from the same office attempte dto visit inmate Trevor Forrest who was a witness to the conduct of defendnat CAPTIAN GAINES retalaiting against the plaintiff in the matter of WILLIMAS V. CITY OF NEW YORK ET AL 19-CV-3347 AND AT THE SAME TIME THAT THE VIDEO WAS SCHDULED FOR THE PLAINTIF FFROM HIS CELL DOOR WINDOW WITNESS DEFENDNAT CAPTYIN GAINES enter the 2 control bubble station and later learn that Inmate Trevor Forrest 349-200-2023 was not allowed to speak with these attorney's because of defendant captian GAINES. (THE PLAINTIFF ASK THAT THE FOOTAGE FROM GRVC 2 BUILDING HALLWAY GOING INTO CONTROL STATION BE PERSVE FOR THIS DATE DURRING 11:00AM

- 12:00PM ON OCTOBER 28, 2022)(SO THAT IT WILL BE AVAIBLE DURRING DISCOVERY STAGES OF THIS MATTER).

As it relates to this matter and the actions of retalaition for his federal litigation gginst DOC officials **EX-18** will disdplayy that the attorneys that represnt the plaintiff felt the need to request a judical intervention and tranfer of the plaintiff to ensure his safty and health from specifically defendnat **CAPTIN GAINES, CO HICKSON AND ESU MEMBERS** who are named herein this matter for the coinduct that they enagged in.

**EX-19** will show that the Judge the hoħorab;le District Judge LEWIS J. LIMAN felt the need from the evidence that he was shown to order the defendant **CITY** in that matter to answer the attorneys and the courts and lay out the measures that were being taken to ensure that the plaintiff is protected against retalaition, by way of am emergency in-person conference out of his conern. 8ææx

In **EX-18** the court can see that the information whihc is listed as being confidential herein this matter that was shown to the attorney's was of such high and importantce that attorney's from **PAUL WEISS, RIFKIND, WHARTON AND GARRISON** felt the need to address the court of satuirday October 22, 2022, whihch is abnormal and out of practice.

On October 27, 2022 at approaxmately 1:50pm defendant **ANDRE HICKSON** afforded the plaintiff a legal call but first spoke to the palintiff legal defense lawyer Julie Clark Esq before allowing the plaintiff to speak to her. Defendant **ANDRE HIOCKSON** informed the plaintiff that he better nopt speka to Julei Clark in regards to what is going on with the treatment he is getting or he would not be afforded a call again.

After pasing the plaintiff the phone reciving and first speaking to Julie Clark, defendant **ANDRE HICKSON** stood in listening distance to ensure that the plaintiff did as his was threated to do by him.

The same repeated it self during the same date but at 1:55pm when defendnat **ANDRE HICKSON** called the plaintiff priavtre investigator Kewxkwxxxx Kevin Hickson ( No relation to defendant). **(THE PLAINTIFF ASK THAT THE VIDEO FOOTAGE FROM THIS DATE AND TIME BE PERSVED FOR DISCOVERY PURPOSES)**

This conduct was and is so coneerning that the plaintif fand his attorney's and defense doesnt want the plaintiff to discuss the matters of his case over the phone, whihc in return is affecting the fashion in whihc they marshal the defense for the plaintif fwho is preparing for trial and Kings County new York for chrges of Murder in the Second Degree.

. Furthermore after being informed by his attorney from **PAUL WEISS AND WHARTON & GARRISON** , Eric Abrams and Robert Ologhilin the plaintiff learned that defendants **CAPTIN GANIES** and others where filing false reports that the plaintif fhad threathen them in their family. **(NOTE: THAT THE PLAINTIFF WAS NEVER SERVED WITH ANY TICKETS/MISBEHAVIOR REPORTS OR ANYTING ELSE IN REGARDS TO THIS ALLEGED INCIDENTS)**

what the plaintiff conlcuded for this information and from the conudect that the defendnats named herein where enagaging in collectively was that the defedats were durring everything in their power to affect the outcome of the plaintiff criminal case by limiting/retsricting access to his defense team, therathening him in regards of what he could and could not speak to his defnse team about when he did speak to them and falsfiying city documents

47b

by filing false complaints of the plaintiff threathening them
as a from of retalaition and passive violation of his Constitutional
Rights.

This was a matter that Distrcit Judge LEWIS J LIMAN  found
to be conerning and issued a warning to  Law department Counsel
repsenting defendants in the matter of WILLIAMS VS. CITY OF NEW
YORK  19-CV-3347that  he was possibly considering holding Defendanty
MATHIS in that case in contempt, and in violation of federal
laws if the evidence concluded that the retailaition against
the plaintif was being done in order to affect the current Civiul
Litigation.

On October 29,2022 the plaintiff aghain was not afforded
a Kosher meal in pursuant with his Jewish Reliogion nor was he
explained to the reason why.

The plaintiff would like to display to the Court herein
that defendnat CO KEVIN YOUNG, PRESTON RITTER AND ANDRE HICKSON
 was all found to had violated the plaintiffs, inamte Johmanni
Anduze and inmate Gabriel Flores Sixth Amendments rights as it
related to matters of Communication by phone and by mail with
their repsective criminal defense attorneys.

This can be seen in erviwing of EX-11 AND EX-15herein establishing
that the defendnat CITY  failed in their taringing and supervison
of these defendnats and that these defendnats has nor care and
lack the mindset of reasonable sound people working/employed
by the defendnat  CITY  in their officals policy and capacityies.

There is no reason or legal defense that one can offer for
why on each occassion there exist a need to speak first with
the defense attroeny/private investigator etc before allowing

41

the plaintiff to enage in communication that is protected and deem privilged by State and Federal law.

Once the number is verfied there is no reason to constantly xaff verfiy the same number. This in itslef is support that the conduct and actions of these defendnats as it relaes to Communication with the Courts and Attorneys were purpsoely committed with the intentions of inflciting and cauing some sort of harm to the plaintriff ALEXANDER WILLIAMS JR.

On October 29, 2022 the plaintif fwas forced to piss and deifcate inside of a DOC issued plastia bag due to not being allowed to come out of law library ceel & when he nedded to use the bathroom. See Gentic Footage on this date at 1:30pm.(THE PLAINTIFF ASK THAT THE FOOTAGE FROM THIS DATE AND TIME BE PERSEVED FOR DISCOVERY PURSPOES)

On November 2, 2022 at approxamately 2:20pm defendnat CO RAHMAN 11383, ordered the plaintiff to be lcoked in cell 7 whihc is the law library cell on housing unit 2a without access to the bathroom.

As a result the plaintiff was forced to urinate and deficate in a DOC issue plasitic bag whihc was the norm on housing unit 2a. Gentic Footage from housing unit 2a will show defendnat CO RHAMAN 11383 , bring polaintiff ALEXANDER WILLIAMS JR a plasitic bag to use the bathropom inside of at approxamately 3:55pm-4:05pm. (THE PLAINTIFF REQUEST FOOTAGE OF THIS TO BE PERSERVED FOR DISCOVERY REASONS) (PLAINTIFF EXITED CELL 7 AT 4:15PM ON THAT DATE ASK THAT FOOTAGE AT THAT TIME BE PERSVED ASW WELL)

It is the plaintiff believth that defendnat CO RAHMAN was enfrocing the unlawfully lockdown solatirliy confinement like

living condictions because of the fact when the plaintiff informed
defendnat CO RAHMAN  that New York State Halt prohibits him to
being locked in a cell 23/1 defendnat CO RAHMAN explained that
he did no t want to argue with the plaintif fand that he had
to enforce the rules of the facility and follow the orders of
his security captin refering to the defendnat CAPTAIN GANIES.

ON OCT29, 2022 12:45pm defendnat ANDREW HICKSON  afforded
phones calls to housing unit but plaintif was not willing to
accept calling his legal team out of concern that he would not
be able to speak to his attorney in confidentailityy as pursuant
to sstate and fedeal laws.

On Oct 29, at appraoxametely 6:45pm defendnat CO KEVIN YOUNG
came to hgousing unit  to conduct phone calls but again the
plaintiff was afirad that he would bnot be able to speak with
his legal team in private and confiendtaility as pursuant to
state and federal laws.

On Oct 30, 2022 during 7-3 and 3-11 tours the plaintiff
was having hot and cold flasehes and informedd the housing unit
of such. Area Captin dafx Gaun was informed by the plaintiff
at approx 5:45pm whihc in return Captain Gaun contact defendnat
Dr Duvern who informed captyin Guan that the plaintif fcouild
not be seen by medical due to his court order lockdown classification
and that the plaintidfd sickness could not be help by DOC and
that he was scheduled for post-opt with surgeon team at BelleVue
Hospital on Nov 3, 2022.

As of the sickness from that day the plaintiff was never
seen by medical staff and was forced to bare with tye pains and
sickness ofg vomiting and deficating blood for the rest of that
day.

The plaintiff was sceduled on Nov3rd 2022 to return to Bellevue hospital after the defendnats CITY by way of DOC failoed teeto produced him three times since the surgey on September 22, 2022. For Reason never told to the plaintiff he was not produced to this Post-Opt Hospiýal Medical appointment.

The nonproduction to this medical appointment the plaintiff beleives thet the defendnat CAPATIN ĝAINES is behind as a form of retaliation becuase she is the Security captain and directly in charge of the movement of Court Order Lockdown Inmatres at the facility.

As a result of thisa non production the plaintiff was nor able to address the medical condiction of him having the pains in his side where the Organ was removed, suffering from vomiting, hoit falshes and defication of blood. The same systoms are listed on the plaintiff medical discharge papers as being a negative and needeeding t retun back to hospital if occured.

On Nov 4, 2022 at approxamately 6:00pm when the plaintiff was returning from Court outside of his housing unit Defendant Preston Ritter was in front oñ housing unit 2a door and stated to the plaintiff I told you I was going to get you to drop your lawsuiuts I brought Cano Back to violate you.

Once inside of the housing unit the plaintiff was locked into his cell whihc is cell 11 and inmate Christophee Cano began to yield through the connecting vent from cell 12 that Officer Ritter and Captian Gabnies brought him to be locked right next to him ànd informed him if he wanted to go back to population that he needed to "BANG" on the plaintiff. CO Ritter ands Captian Gaines are named defendnats herein.

It is also important to note that Christopher Cano is name in the matterr of <u>WILLIAMS V. CITY OF NEW YORK ET AL,</u>  22-CV-3819(PGG)(KHP)

as being housed in a Court order Lockdwon Housing unit without being
a courty order inmate to retalaite against the plaintiff for his lawsuits
and griavcne against the defendnats.

On Nov 5, 2022 during 7-3 tour the plaintiff wanted to use the
phone but opted out due to conerns that defendant **ANDREW HCIKSON** would
not allow him to speak with his attroney in private and confidential manner.

On Nov 5, 2022 during the 3-11 tour the plaintiff wanted to use
the phone again to discuss the proceeding of court the day  before and
to advise his attroney that defendants' named herein had placed inmate
Christopher  cano next door to him in a act of retalaition by information
that Cano voiced to the plaintiff, but was unable to do so and opted out
of using the phone due to the CUSTOM,USAGE, PRACTCIE, PROCEDURE OR RULE
 where defendnat listend , recorded and monitor plaintiff conversation
with his attorney. **(FOR EVEIDNECE OF THIS USGAE, CUSTOM , POLCIY THE PLAINTIFF
REQUEST THAT FOOTAGE FROM HSOUSING UNIT ON NOV 5, BE PERSVED FOR WHEN
DEFENDANT ANDREW HCISKON AFFORDED INMATE KWAINE THOMSPON A CALL DURING 7-
3 TOUR AND WHEN DEFENDANT KEVIN YOUNG AFFORDED INAMTE KWAINE THOMPSON
A CALL ON 3-11 TOUR, SO THAT THIS VIDEO WILL BE PRESNT DURING COMMENT
OF DISCOVERY PROCESS.)**

On  Nov 7, 2022 at ap½praoxmately 10;25 am while in the law library
cell of cell 7 on housing unit 2a inmate Christopher Cano came to the
cell door and told the plaintiff that he didnt want any issues with
him but that **CAPATIN GAINES** ordered him that the only way that he would
get back to 71a where he had came from was for him to violate the plaintiff
and **"BANG" ON HIM.** Inmate Cano was fering to defendnat **CAPATIN GAINUS,**
mentioned herein as sa defendnat in this matter. **(THE PLAINTIFF ASK
THAT THE FOOTAGE FROM THIS TIME AND DATE DISPLAYING SUCH BE PERSEVED
FOR DISCOVERY PURPOSES).**

On November 9, 2022 the plaintiff again grieved the exisatance of being detiness in a segregeated confiemnet unit such as one with him being held in a cell 23 hours a day and appealed the factor to New York City Department of Correction "EXECUTIVE OFFICER OF O.S.I.U.See EX-27.

EX-26  herein is a copy of the New York state Bill that passed into law on Janurary 25, 2021 banning all forms of solitary confienment from New york State and New York City jails.

Number¶ ¶ 3 - 9 defines "SEGREGATED CONFINEMENT" as being any form of confinement to a cell for more than seventeen hours per day.

It also banns the restrictions for any inmate that has a mental health medical record of any mental illness.

The plaintiff has displayed herein that he fits both criterias and that the defendants name herein are well aware of such but contiuned to violated the protced rights gaurantted to him by the US Constitution and the New York State Constitution.

In review of the bill seen herein as EX-26, there is no exception stated for a title Court order lcokdown or Judical order lcok down, even though if there wqas the plaintiff would fall under the menatl health exemption of the bill.

The defendnats CITY  and DOC are entities that are well aware of the fact that a Judge Order con never over ride a State Law. Thus leaving them no defense or plausible deniability claims.

On November 9, 2022 at approxamately 12:15pm defendnat ANDREW HICKSON  came to afford the plaintiff lergal call in whihc he again spoke with Julie A. Clark whihc left her not wanting to disucs the plaintiff case because of such and out of concern thet defendnat ANDREW HICKSON  was standing near where he would be able to hear ease drop on plaintiff's conversation with attorney.(PLEASE PERSEVE FOOTAGE FORM THIS DATE AND TIME FOR DISOCVERY PURPOSES), afterward defendnat ANDREW HICKSOIN

PROCEEDED TO USE THE PHONE TO CONDUCT PLAINTRIFF'S COMMISSARY FOR HIM
NOT ALLOWING THE PLAINTIFF TO DO SO HIMSELF AS SOOME FORM OF PUNISHMENT
OR RETALAITION.

On NOVEMBER 10, 2022 AT APPROXAMATELY 6:15PM inmate Kwaine Thompsaon
B&C # 349-190-1450 was taken to the clinic area for DOT medication when
he ran into defendants KEVIN YOUNG & CAPTAIN GAINES, who told him that
they were aware that the plaintiff&ALEXANDER WILLIAMS JR was preparing
for trial coming up and tha t they were not going to be coming with
the phone tonight and tha tthey were going to make sure that he isnt
allowed to speak with his attorney, unless he drops his suit.

From this the plaintiff was able to conclude that the defendants,
CAPATIN GAINES, ANDREW HCISKOSN, KEVIN YOUNG, PRESTON RITTER, GRAVES
AND others was indeed engaging in a campaign of retaialiation that
was geared towards affecting the plaintiff in matters of his criminal
and civil case outcome.

On Novemebr 11, 2022 defendant ANDREW HACKSON, attempted to pยrovide
legal call for the plaintiff, but failed to give the plaintiff the proper
confidentailaity in regards to hsi SIXTH AMEND and the plaintiff left
such statement on the camcord camera with defendant ANDREW HICKSON that
day.( THE PLAINTUIFF ASK THAT THE VIDEO FROM THIS DATE AND TIME BE
PERSEVED FOR DISCOVERY PURPSES.)

IT IS IMPORTANT TO NOTE:, that after the plaintiff made a statement on the
camera tha tday that defendant ANDREW HICKSON, stopped from talking to the
plaintiff ALEXANDER WILLIAMS JR, attorneys and private investigators
whenever affording a call, but continued to stand in ear distance and
listening to the converstation,(PLAINTIFF REQUEST BOTH HOUSING UNIT
FOOTAGE AND CAMCORDED FOOTAGE FROM 11/11/2022 FROM CELL 7 ON UNIT 2A
WHERE HE WAS LOCATED WHEN LEGAL CALLS WERE CONDUCTED)(PLEASE PERSEVE
THIS FOOTAGE FOR DSICOVERY PURPSOES), and that the stoppage of intrusion

is clearly an admission and/or a conciouness of gilt by defendant **ANDREW HOICKSON** , in the conduct that was wrong in regards to plaintiff confidence in tha this conversation with attorney's were confidential.

The plaintiff is an observer of MESSIANIC JUDAISM and this includes the religious dietary of Ksoher meals, with grape juice and Matzag bread/cracker and when the plaintiff mentioned the lack of and/or restriction of Kosher meal he is speaking and inclduing grapoe jucies and Matzah crackers as well.

In a recent case out of NEVADA district court the Courts established allowing a plaintiff to move pass dismissal stages with the claims of violation against FIRST AMENDMENT'S FREE EXECERISE CAALUSE, on the basis of restricting an inmate from his religious dietray in Kosher meals, See RUIZ V. NEVADA DEPARTMENT OF CORRECTION., 2022 U.S. DIST. LEXIS 47633 (D. NEV. FEBRUARY 24, 2022) .

In this instance herein the plaintiff submits written policy from defendant CITY, JEAN RENNE, LISA BARNBEY, TIFFANY MORALES, JOANNE MATOS, JONEELL SHIVRAJ and enfocred under defendnat WARDEN COURT that clearly states that Courtt order inmates are not allowed to posess practice any other religious text or believt that are not a BIBLE and tied to the CHRISTAIN believth and that is how correction oficers at GRVC enforces such polciy from there own interuptation of said polciyas seen herein EXQIBIT-34.

The plaintif herein submitted numerous griavnces where he had to grievance to the fact that numerous officer siexed his TORA while conducting facility seraches and even on greiavnces the response was very bleak into the reason  why plaintiff is not allowed to posess a TORA whihc is trickled down into a restriction plaaced on the plaintiff religious dieaty whihc in both instance he isnt given NOTICE or a hearing as to why this polciy existed and is being enforced upon him.

On December 2, 2022 the plaintiff was transfered from GRVC facility to WEST Facility Sprung 6 cell 9.

While being transfered from GRVC Defendnat Preston Ritter stated to the plaintiff as he was aluking from housing unit 2a to the bus for tyransfer that the plaintiff was going to get violated by his call at the facility that he was going top and that he personally made sure that there was no way for him to file any grievance because he had learned that if plaintiff didnt file a griavnce case would not be able to move forward in the c Court.

Plaintiff belives that Defendant PRESTON RITTER was able to understand such due to being named as a defendant in two saperate litigation involving the plaintiff.

Upon arriving at West Facility Sprung six cell nine the plaintiff was placed in a cell with three camaras inside of it and no working hot water in the shower area.

When the plaintiff went to grievae of regards to this matter he became aware that the unit that he was in did not have a grievance box and the correction officers did not store grievance forms stating that West Facility was a hoispital and not an actrual jeil where inmates where held for long.

With this being a factor the plaintiff assert that defendants and/or CITY were estopped in reason why the plaintiff was not able to exhaust his remedies in puruanat to PLRA 42 U.S.C. § 1997, and since plaintiff phone line in restricte dto only being able to dail the numbers listed ob his Court Ordwer the plaintiff was also robbed of being able to contact 311 to fomrally lodge complaint in the timely fashion governed by the grievance policies of NYC DOC. And for this reason the plaintiff ask that the defendnats

be estopped by the courts from asserting the defense of nonexhaustion due
to the fact that the Department of Corrections itslef prevent the plaintiff
from exhausting his remedies, citing RIVERA V. PATAKI,  2005 U.S. DIST
LEXIS 2747.

&HE plaintiff complained of cold water throughout his entire time
of being detained in sprung six cell nine and when mainitence did come
after weeks of him having to wash up in cold water he was told the valve
was broken and couldnt be fix and yet the plaintiff we not move to one
of the open cell euch as 610 or 612.

On Dec 03, 2022 the plaintiff attempted to call sickcall by dailing
614# as instructed by DOC polcies and was unable to do so to make an sickcall
appointment about the pain he was feeling in his retumm area since a USe
of Force with DOC members a year prior.

This went on everyday for over a week until  the plaintiff was
suceesful in getting the doctors attention where he was seen and the doctor
found out that the plaintiff was bleeding in his retum area and may need surgey
for hemroid removal and more.

.    The plaintiff was prescribed pain medicince and was appointment
made for surgey with outside hospital, along with given perpirasion -H
subpository.

1.    The plaintiff is a Jewish inmate and by his religion belaivth that
he should not be seen by anyone other than his wife naked without violating
his religious beliveth.

.  The sprung that the plaintiff was living in sprung six cell nine was
made up of entire glass which allowerd correctional officials female and
male to view the plaintiff at times when he ws in the shower or using the
toilte to sit down and/or stand up. This lead to the Perservation of footage
made by the plaintiff on the front page of this civil suit.

The constant survellance of the plaintiff inside of his cell also violate dhis first amdenment rights durring being recorded while praying and or showering without due process as well as equal protection rights whereas no other inmates are subjected to the same or all the inmates or not sunjected to the same care and tretament.

On Janurary 7, 2023 the plaintiff was place din Enahnce restraint set up with shackles to be taken to the yard hy defendants ANDERSON & RECREATII CAPTIⅡ who was assigned to the recreation that day. The plaintiff presented DOC documentation displaying that he was not an Enhance Restraint inmate but was told by these two defendnats that they must place me in this set up every time that I exit my cell untold I drop my law suit against Cheif LEMON, speaking in regards <u>TO  ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,</u> 22-CV-3819 (PGG) (KHP) . WHEN The plaintiff complained that such was illegal to do both defendnat conversed and stated that they will be okay because this was the Court Order Lockdown Polciy for NIC whihc West facility falls under.

15§§.    The plaintiff understood the statedents made to him descibed in ¶ 14 to be a Custom Polciy being practcied and a violation of his rights pursuant to 42 U.S.C. § 1985(2)(3), wheras the plaintiff is a party and a witness in the matter of <u>ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,</u>  22-CV-3819 and yet the defendnats where attempting a qichange to not violate the plaintiff rights by unlawfully placing him in enhance restraint if he dismiss a penidng suit against a DOC Cheif. The plaintiff is also privilaged not to be placed in an Enhance Restaint Set up with out first being given some form of Due Procss of the law .

:.        During this engagement with the defendnats there was a seprate Correction Officer who went and looked up the plaintiff classification staus in the computer in the sprung bubble and came back and informed the Recreation Captin and Defendant ANDERSON that the plaintiff was correct

and advised against placing such restraint on plaintiff. This correction officer name was CO Colloazo and he safe gaurded himself by placing a notation in the log bog inidscatiing that the recreation capatin was giving defendant ANDERSON an order to use set up on plaintiff.

On the afternoon of  Januaray 06, 2023 at approxamately 6:30pm defendant Deputy Warden Miller accompained by defendant CO Phillup sheild number 12252 was present in the plaintiff sprung and came to his door of cell nine and stated "I CAME HERE JUST FOR YOU", "MY GUY PHULLIPS HERE IS GOING TO HAND CUFF YOU AND TAKE YOU CELL TEN FOR YOU TO TYPE A LETTER DROPPING YOUR CASE AGAINST MY MAN LEMON", The defendnat DW MILLER than stated to the plaintiff " I DONT GIVE A FUCK WHAT HAPPNED IN GRVC I AM MAKING A SPECIAL POLCIY FOR YOUR ASS AND YOU WILL BE ENHANCE RESTRAINT IN MY FACILITY". Afterwards CO PHILLUP opened the plaintiff slot and hand cuffed him and took him over to cell ten where a type writer was located, the plaintiff also became aware that after this date he was classifed an being enhance retsraint and tretaed as such each time that he came out of his ceel without being aforded due process under the state and federal law.

The plaintiff took the alleg ¶ Above directly as a threat or intimdation whihc vioplated his federal rights pursuant to  42 U.S.C. § 1985(2)(3) and that the defendnat DW MILLER would and did engage in the creation of a polciy custom that lead to the mistreatement and enhance restarint agauist the plaintiff. The defendnet's MILLER and PHILLUP directly stated that their mistratement would in relation to a pending civil federal case where their boss is named as a defendant see ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,  22-CV-3919, where defendnat CHARLTON LEMON  is named as a defendant in the matter.

On Januarary 07, 2023 at approxamately 1:45pm the plaintiff asked defendant CO ORellana for a grievance form and if he could drop siad grievance

in a grievance box in another sprung so that the plantiff could somhow bring attention to what was going on with him.. In response defendant CO Orellana ~~FARRINAS~~ informed the plaintiff that he had two years left before retirement and that he could not and would not go against Cheif LEMON for that matter. Defendnat CO ~~FARRINAS~~ Orellana went on to advise the plaintiff that it was stupid of him to start a lawsuit against the cheif of the department and that it would be wise if he dismissed 'the suit'like he was told to do. Defendant FARRINAS then asked the plaintiff if he thought that he shower water was cold by mistake or that it was cameras in his cell because he was just thatxank unlucky.

■■■■ The statement alleged in the above ¶ ~~■■~~ Above allowed the plaintiff to belive that defendnat ~~FARRINAS~~ Orellana and other defendnats named and unnamed was aware of the fact that the plaintiff had cold water coming out of his shower as some form of punishment and that was the reason why he was not moved tp one of the open vacant cells and furthermore was being institued due tohe plaintiff health and direct violation of the plaintiff's federal rights pursuant to 42 U.S.C. § 1985(2)(3)., and that defendnat FARRIANS was not going to prevent harm or prevent further violation of the plaintiff rights as pursuant to federal statue 42 U.S.C. § 1986.

■■■■ Later on durring the day of Janurary 07, 2023 the plaintiff attempted to get defendnat CO ORELLANA who identified himself as working in head quaters to assist him with getting his shower water to be hot and with a grieve form. In return Defendnat ORELLANA informed the plaintiff that he knew who the plaintiff was becaus ehe had written about his bossed and associates in his book titled ' THE TRUE UNTOLD STORY OF NEW YORK CITY';S NOTORIOUS RIKERS ISLAND",  defendnat ORELLANA then went on to inform the plaintiff that he would not give him a grievance and he didnt care about his water being cold , he asked the plaintiff why would he attempt to ask him for assiatn when he was already told by everyone that he was dead on everything until

he dropped his lawqsuit on cheif LEMON.

The statement alleged above ~~in to 80~~ lead the plaintiff to understand that defendnat ORELLANA was aware of the plaintiff rights being violated and failed to prevent furthewr violation purusnat to 42 U.S.C. § 1986 and that the plaintiff also was willing to retaliate or engage in conduct that was intimidating or otherweise attempting to affect an ongoing civil federal case which placed defendnat ORELLANA in violation of the plaintiff's right purusnat to 42 U.S.C. § 1985.

On Januaray 07, 2023 at approxamately 7:35pm  the defendnat heard a bang at his door and saw that it was an specialized correction team who he later became aware of was SRT {Strategic Resoponse Team} , where one of the team member was placing a maks on his head and displaying his MK-2 spray in his hand and ordering the plaintiff to get naked and stand in the middle of the floor and await instruction. The plaintiff later saw that the SRT team member who gave him this order had the number # 79 on the back of his vest thus naming SRT #79 as a defendnat herein. (THE PLAINTIFF DEMAND THE PERSERVATION OF HIS CELL CELL SPRUNG SIX CELL NINE FOOTAGE FROM JAN UARARY 7, 2023 7:35PM - 11:30PM BE PERSVED IN SUPPORT OF THIS CLAIM)

The plaintiff stood in the middle of his cell naked for over an hour and half while numerous defendnats came and trun on his light to ensure that he was standing liked order and to also put him on display for other officers both makle and female who made fun of the plaintiff.

Durring the time period in whihc the plaintiff was tanding naked in the midlle of the cell with his hands behind his back as ordered by defendnu SRT #79, the plaintiff became aware that the inmats accorss from him was staring into his cell since the entire cell in made of glass anbd began master batting to him.

Also durring this time period the plaintiff became aware that SRT officers where telling a white femal dressed in civiain clothes wearing a

gold badge  with dirty blonde hair, was staring into his cell as he stood naked with his hands behind his back as ordered by SRT #79.

.     Defendnat K-9 officer PERPIGNAN  walked by with the dog and turn the light on to enusre that the plaintiff was standing naked as order by SRT 79 and then informed the female SRT  officer who was cating as the camera woman on that day to llok inside of the plaintiff cell while he was standing anked with his hand behinds his back as ordered by SRT #79 and made a joke where the camera female officer hegang laughing.

     Also during this time period while the plaintiff was standing inside of the middle of his cell naked with his hand behjind his back he witness SRT#6 came to his door and turn the light on to also ensure that the plaintiff was doing as he was ordered by SRT #79. This is how defendnats SRT #65 and femeale SRT cmeera owman is named as defendnat herein.

     After nearly two hours of standing in the middle of his cell naked and with his hands behind his back defendnats SRT #77, #capatin #$ #88 and #112 entered the plaintiff cell and ordered him to step forard. When the defefendat #77 and 88 saw thet the plaintiff was within a foot or so in fornt of the plaintiff to  bend at his waist and spread his ass cheeks until they saw his hemroid.  The plaintiff did as he was ordered as trying his best not to get into any phystical altercation with these defendnat. THE PLAINTIFF DEMAND THAT THE FOOTAGE FROM THIS NIGHT OF JANUARARY 7, 2023 FROM 7:35PM - 11:30PM BE PERSVED FOR EVDIENCETITRY PURPOSES).

     While searching the plaintiff cell afterwards SRT #112 and #77 commenced searching the plaintiff cell all the while explaining from the inside under their mask that all of the plaintiff's problem could go away if Cheif LEMON was no longer in his law suits. This is unique because in the matter of ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,  22-CV-3819 (PGG) (KHP) , THE PLAINTIFF ALLGED AND  addmitted supporting documentary

evidnece that DOC Cheif CHARLTON LEMON misised the Strategic Response Team
in a retaliatory fashion due to me suing him over the illegal banning of
the plaintiffg book titled "THE TRUE UNTOLD STORY OF NEW YORK CITY'S NOTORIOUS
RIKERS ISLAND".

The plaintiff became aware that during the search that atheir was
an SRT capatin displaying the number #4 on the back of his vest that was
supervsiing the conduct that these defendants were engaging in, this allowed
the plaintiff to understand that their conduct of making him stand up naked
in the middle of his cell on display with his hands behind his back for
hours was soem form of punishment, retalaition and intimidation in an ongoing
civil federl lawsuit whihc violatedxthe plaintiff constitutional rights
pursuant to 42 U.S.C. §  1985§§§xxxx(2)(3) and leaving each of the defendnats
guilty and/or liable in pursuant to 42 U.S.C. 1986 for failing to prevent
futher harm while each of the defendnats watch or owthersie dirsctly took
part in the conduct while the other defendnat enagaged in violation of
the plaintiff rights.

The plaintiff later learned from inate Kwaine Thompson that while
searching his cell that some of these same defendants and other members
of the same SRt team on Januarary 7, 2023 discussed the fact that they
were ordered to violate the plaintiff in order to get him to stop his litigatic
against chief LEMON and that they were not going to violate his cell but
the message along to plaintiff,                        Thompson
for him to pass xxgaixtxmnxnxxtxxtmixmxxixmxxm, Seexhibit-[28] for Kwaine hxmxxn
wxhnxxxmxhxxwitness statement.

The plaintiff would like to note that each time that he was earched
it was in front of three cameras that are in his cell and the date are
as follwed, januaray 3, 2023, Januaray 4, 2023, Januarary 5, 2023 January
6, 2023, Januaray 7, 2023, January 10, 2023. THE PLAINTIFF DEMAND PERSERVATION
OF THE FOOTAGE INSIDE OF CELL NINE SPRUNG SIX FROM THESE DATES FOR EVIDENCE
REASONS.

14

On Janurary 3, 2023 approxamately 2:30pm defendant Capatin Fluka and ADw GWINNIE of the CIB unit of NYC DOC conducted a search on the plaintiff by rushing his cell while he was using the bathroom and ordering him to strip nakle on Camera #x before allowing him to exit the cell and observe the search. While the plaintiff was being stripped by two unknown CIB officers who are unidentified due to them wearing black mask and wearting no identifying name tags of badges the plaintiff heard defendant Captin Fluka of the CIB Team get called by defendnat ADW GWudnnie and converse with a White male in civilain clothes and light grey hair who the plaintiff takes to be an assistant commisioner name MILLER ~~recoomm~~ and over heard the defendants ADW Gwiune and defendnat capatin Fluka of the CIB unit nod their heads and respond saying yes boss.  Afterwards defendnat ADW Gwinne walked pass the plaintiff telling him that he neds to drop his suit as soon as possible of bear the wrath. Munites later ARWxxxdefendnat Captain Flika walked into plaintiff cell and the plaintiff over heard him saying through mask/or under his breathe that the plaintiff will be minimum standards and enhance restraint until LEMON tells him the suit is drop.

Both defendants ADW Gwinnie and Captin Fluka of the CIB team are well aware that the plaintiff must be afforded a hearing before being placed in enahnce restraint set up and by the conduct ebserved by the plaintiff and mentioned herein it is clear that both these defendnat willingly engaged in conduct that violated the plaintiff rights pursuant to 42 U.S.C.  1985 and 42 U.SC. 1986 along with 42 u.s.c. 1983 by retlaitaion , intimidating a witness or party in a federal case and preventing or failure to prevent harm or violation of the plaintiff rights.

It is important to note that all of this occured after the plaintiff was notified by coporation counsel that the city LAw Department had not yet decided whether they would represent CHARLTON LEMON in a legal capacity in the matter of ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,  22-CV-

• On jan 4, 2023 the plaintiff was stripped searched again by ESU and SST team mebers all while being recorded on the three cameras in the cell naked. (THE PLAINTIFF DEMAND THAT THE FOOTAGE FROM HIS CELL ON THIS DATE BI PERSERVED FOR EVDIECNE REASON AND TO ENSURE THAT THE EVIDENCE IS AVIABLE WHEN DISCOVERY COMMENCES IN THSI ACTION).

On Jan 08, 2023 the plaintiff was ordered to be placed in Enahcne Restraint with mittens and sҺackles if he wanted to go to his (1) recreation. The plaintiff explained to Defendnat SRt Captin #1 and SRT officers #75 and SRT Defednat #80, While defendnat SRT #133 held the camera they had the plaintiff strip naked inside of his cell even thougxplained that he did not want to be recorded naked and afterwards used the enahnce reatrint set up on the plaintiff.

Once outside to recration defendnat SRT #80 informed plaintiff that he used to be an officer assigned to CMC clafficiation and was aware that the plaintiff status was only court order and not CMC but that the situation was bigger then him and he had to follow the capqatins orders. This statement informed the plaintiff that at minimum defendnat SRT #80 was aware that he was engaging in conudct that violated the plaintiff's right but felt obligated to do so out of concern of not following his capatins orders.

The plaintiff clasification number is a 4 whihc is minimum and one of the lowest within NYC department of correction out of the Approxamately 7,000 inmates. The plaintiff has never be afforded a hearing nor notification informing him that he was desgniated as a Enahnce Restant inmate and when his attorney's Julie Clark and Jeffrey Chabrowe brought this factor up to the Judge who signed the plaintiff JLO order the judge stated that Enahnca restarint was not a restriction listed on his order.

Exhibit-30 listed/shown herein is a copy of DOC polcies on Enhance Restarint and Pg 2 ¶7 list the critera for an DOC inamte to meet before

subjected to beiong classified by DOC as being Enhance Restarint:

A.    INMATE ASSAULTS OR ATTCKS STAFF OR ANOTHER INMATE;

B.    INMATE CUASES SUBSTANTIAL PROPERTY DAMAGE OR PLACE PERSON IN HARM;

C.    INMATE ATTEMPTS TO ASSAULT OR ATTACK STAFF OF ANAOTHER INMATE

        In Addition, any inmate found in possession of a scalpel, hobby
knife, razor balde, or other damgerous instructment as difined during his/her
current or prior iocarceration within the last five years may be placed
in Enahnce Restarint status.

ι   .   The plaintiff have been locked up in the cusody of DOC since March
2018 whihc is 60 days shy of five years and has never been found guilty
of a misbehavior or crim,inal charge that reaches the level listed in Exhibit-
C on this incarrecartion on in any other bid.

    .   This supports that the plaintiff Due Process righst were in deed
violated and that defendnats knew that the plaintiff was not enahnce restarint
by way of the pedigree that is posted on his door whihc each defendnat
sees and records each time before the plaintiff is placed in set up. This
pedigree clearly states that the plaintiff is noit RED I.D./ENHANCE RESTARINT/I
ICR/OR ESCAPE RISK.

    .   Furthermore Exhibit30, Pg 7 ¶ 2 lays out the Due Process right of
each pretrail detianne when it comes to being placed in Enahce Restarint
with stating that the plaintiff/inmate must be given notice of such within
the first 72 hours and a departmental hearing shall follow. The plaintiff
was never afforded either of the two.

    .   At 12:4 on Jan 08, 2023 the plaintiff was told by one of the SRT
team memebesr who vest had no numbers and he wore a mask that he could
not get any cold water and tow drink for the shower or the sink for all
he cared. Since that period the plaintiff only drunk water from his shower
area whihc the cameras in his call will support. That is  WHY PLAINTIFF
AS THAT ALL FOOTAGE FROM CELL NINE BE PERSEVED FOR THE PURSOE OF EVIDENCE
AND EXAMAINATION OF OTHER CUASES OF ACTION IN THIS MATTER.

.   ON JAN 08, 2023 mid day the plaintiff was subjected to being recorded
by the three cameras in his cell while showering and praying and again
at 9:15pm the same day.

    On Jan 09, 2023 the plaintiff was subjected to being recorded showering
at 8:00am  by the three cameras inside of his cell that was not inside
of every other inamte cell whihc the plaintiff attest is a violation of
the Equal Protect Clause of the federal constitution..

    On Jan 09, 2023 the plaintiff was subjected to be recorded naked
while praying at 8:15am whihc the plaintiff attest is a violation of his
religious rights pursunat to the first amamendment and 42 U.S.C. § 2000cc.

    On jan 09, 2023 the plaintiff got the attention of SRT defendnat
SRT #75 and informed him that he needed sick-call because he was bleeding
out of his retun area and feeling pain that was unbareable. In response
defendant SRT #75 told the plaintiff that that was not what he was here
for to hold it down. This left the plaintiff in serve pain and bleeding
out of his retumn area without any medical services , even though the doctor's
office was five feet away from defendnat SRT #75.

.    On Jan 09, 2023 the plaintiff was informed by defendnat SRT #75
that he was getting no Rec, No Law Library, No Mail and No sickcall as
long as he had open litigation againstLERONY.Hearing this the plaintiff
recognized that defendnat SRT #75 was referring to the matter of ALEXANDER
WILLIAMS JR V. CITY OF NEW YORK ET AL, 22-CV-3819 (PGG) (KHP) , whihc
was also  a violation of the plaintiff's rights pursunat to 42 U.S.C. §
1985(2)(3), where it was obvious that teh denial of basic rights and needs
was being implemneted against the plaintiff as a form of retalaiation,
and intimdation of a party/witness in an ongoing federal civil case, as
well as violation of the plaintiff rights pursunat to 42 U.S.C. 1986.

.    On Jan 09,2023 defendant DW MILLER and Defendant CO Phillup Shaild number 12252 enter the plaintiff housing unit along with conversating with Defendant SRT Captain #1 and stated in ear shot of the plaintiff Defendnat DW MILLER stated make sure he does not recive or send out any mail of any sort and that he has enhance restarint on at all times even when seeingghis att attorney.  At 10:30am the plaintiff contacted his attorney Julie Clark to make a formal comaplint since there is no grievance system in sprung six and the plaintiff pin is block from dsailing 311.

|.    On Jan 09, 2023 at 11:05am  the plaintiff asked defendant SRT #75 if he could send out mail addressed to the PRO_SE INTAKE of the UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, NEW YORK NY 10007. This mail was the plaintiff objecting to the defense request for a second extention in the matter of <u>ALEXANDER WILLIAMS V. CITY OF NEW YORK ET AL.,</u> 21-CV-1083 (PGG) (KHP), without the plaintiff responding in the alotted time frame the court will make a decison on the request without taking his objection into consideration. Due to the defendnats denial of allowing the plaintiff to access the court that is exactly what happen in the matter. This denail constituted a violation of the plaintiff First Amendment rights and righst to access the Courts as well.

.    On Jan 09, 2023 at 11:44am defendant SRT 108, the plaintiff when he asked for water to drink shower water like he was told. This denial could seen on plaintiff cell footage and&&& for that reason the p-laintiff DEMAND that the footage from this dater and time be perseved so that it is aviavalable for discovery to use as evidence in this action. The drinking of plenty fluids was the plaintiff way of attemping to self heal from his hemroid issue by ensuring tha the drunk alot so that his stool was soft. The plaintiff explaine this to SRT #108 and asked for sickcall whihc SRT #108 simply walked away without responding to plaintiff resquest.

On Jan 10, 2023 at 7:30am the plaintiff was recorde by the three cmaeras in his cell taking a shower. THE PLAINTIFF DEMAND PERSERVATION OF THE CELL FOOTAGE ON THIS DATE AND TIME SPECIFICALLY TO BE USED AS EVIDENCE IN THIS ACTION.

On Jan 10,2023 at 7:39am defendnat SRT #113 came to plaintiff door and asked him if he was ready to drop his lawsuit against LEMON after getting off of the phone at the desk. The plaintiff concruded this question as a threat.

On Jan 10, 2023 at 7:45am the three cameras in plaintiff cell recorded him enagging in religious activites such as praying and reading from the TORA. THE PLAINTIFF ASK THAT THE FOOTAGE FROM HIS CELL THGIS TIME AND DATE BE PERSVED FOR EVIDENCE IN THIS ACTION.

On the morning of Jan 10, 2023 at approxamate 8:30am the plaintiff was ordered by ESU and SST Special Search Team to get naked and strip, this took place on the cameras recording inside of tha plaintiff cell. During this time while getting naked the plaintiff was again placed on display for the following defendnats who were present and failed to stop what was taking place: DEFENDNAT ESU CAPATIN RIVERA, ~~defendnat ESU #113 BY VEST~~ ESU CAPATIN #28 ON VEST. One of these defendnats placed the plaintiff light on so that he could be viewed while nakled by each of them ~~including each of them~~ ~~officertour~~.

DURRING THIS TIME OF BEING MAKE THE PLAINTIF FBECAME AWARE THAT DEFENDANT  ESU Secratary bearing the sheild number of 4190 was at the desk looking at him inside of his cell nake and making jokes along with other ESU, SST and DOC officilas prsent.

On Jan 10, 2023 11:00am defendnat Captain ~~Mathin~~ Mathis and defendnat SRT #73 was present and placing the plaintiff in Enahnce restarint set up to go to the yeard. It is impoatrtant to note that defendant Capatin Bernard

20

was the security capatin when the plaintif was on the same status in MDC

and has direct knowldge that the plaintif fis not Enahnce Rsetaint Classfifcat

. Furthermore defendant Capatin Bernard Mathis is a defendnat in the matter

21-cv-1083

of WILLIAMS V. CITY OF NEW YORK ET AL, .   AND HAS FOUND TO BE LIABLE FOR

VIOLATION  OF PLAINTIFF DUE PROCESS RIGHTS AND FOURTEENTH AmendmenT VIOBITION

RIGHTS FOR THE EXACT SAME CONDUCT SEE THE REPORT AND RECOMMENDATION OF

magistaret Judge Katharin H. Parker on August 05,2022 in WILLIAMS V. CITY

OF NEW YORK ET AL.,   21-CV-1083 (PGG) (KHP).

,.      On Jan 10, 2023 defendnat Capatin mathis and defendnat SRT #75 used

the enahnce retsraint set up again on the plaintiff at 12:35pm. EACH TIME

THAT THE PLAINTIFF ATTEST THAT ENAHNCE RETSRAINT SET UP WAS USE DON HIM,

DEFENDNAT DID SO USING A HAND HELD RECORDER TO RECORD THIS AND THE PLAINTIFF

DEMAND THE PERSERVATION OF SAID FOOTAGE THROUGHOUT EACH TIME THAT HE MENTIONED

AND/OR LIST THE USGAE OF ENAHNCE RESTARINT ON HIM WITHIN THIS COMPLAINT.

(..     On Jan 10, 2023 the plaintiff Was topld by defendnat capatin Bernard

Mathis that he can not send or recieve any mail from anayone inclduing

the courts. This was a direct violation of the plaintiff first letters

going to attorney's that he does not have on his calling list and writing

is the only way of contatc. Those attorney's are as followed Christe Wan

of Paul, Weiss, Rifkind, Wharton & garrtson and Sabina Khan which you can

see from Exhibts 31 & 32 are attorney's that resprent the plaintiff in one

feshion or anaother.

².      On Jan 11, 2023 at 7:45am ~ 8:20am the plaintiff was recorded naked

in his cell by the three cameras. AGAIN   THE PLAINTIFF DEMAND THE ½PERSERVATION

OF THE CELL FOOTAGE FOR EVIDENTRY REASON IN THIS ACTION.

.      On Jan 11, 2023 at approxamately 9:20aam SRT defendnats SRT #75

& #74 while standing in front of the plaintiff door responded to plaintiff

concerns about his rights being violated by stating, "WE ARE GOING TO DO

WHAT THE FUCK CHEIF LEMON AND ASSIANT COMMISSIONER (NO NAME) TELL US TO DO FUCK WHAT THE COURT SAY, WE ARE SOILDERS THEY WILL DEAL WITH ALL OF THAT COURT SHIT".

AT 10:00am on Jan 11, 2023 the plaintiff was once again oplaced in Enahnce Restarint set by defendants SRT #75 & #74 to be taken to video conference with his attorney Sabina Khan. While being taken to court plaintiff spoke to defendnat Captin Bernard Mathis who was present and supervising the movement and personally involved that the he was awre that the conduct that was taking place was wrong. In response defendnat SRT #75 looked at the plaintif fand then at defendnat Capt Bernard Mathis and stated to defendan MATHIS "I told you that I got you". THE PLAINTIFF DEMAND THAT THE FOOTAGE ON THE HAND HELD CAMERA OF THIS MOVEMENT FROM THIS DATE AND TIME BE PERSERVED FOR EVIDENTRY PURPOSES.

.    The plaintiff took the above mentioned stated and communication bethweeen defendnat SRT #75 and Defendnat BERANRD MATHIS  was in deed conspiri and acting in conert to violate the plaintiff rights and did so fully aware that their conduct was wrongful in nature.

On Jan 11, 2023 at approxamately 12:50pm against defendnats BERNARD MATHIS, SRT #74 & #74 illegally  used the enhance restraint set up on plaintif when he was leaving the west facility video conference area. Before these defendant commenced to using said set up on the plaintiff, he asked defendnat BERNARD MATHIS why was he doing this knowing that he was he captin over Court Order Status when the plaintiff was detainned in MDC and had direct knowldege that the plaintiff was not clasified as being an Enhance Restarint Inmate. In return and out of Camera view defendnat BERNARD MATHIS simply shrugged his shoulders.

?.    WHen the plaintiff was taken to that video call with his attorney Sabina Khan it is importnat to note that in the middle of his legal conference

that the video connect was appearently pursely cut as soon as the plaintiff was heard expressing his complaints to attorney Sabina Khan and giving out identifiying information in wrong to the defendnats named herein this complaint.

..... On jan 11, 2023 the plaintiff asked defendnat **BERNARD MATHIS** if he couldnt send out mail and he couldnt met with his attorney on video what was the issue with at least giving him a grievance form so that he could properly document the denial. In response defendnat **BERNARD MATHIS** stated to the plaintiff that from being a defendnat in prior litigation he learned a thing or two and knew that if there was no exhaustion there was no claim.

__. On Jan 11, 2023 the plaintiff was shceduled to me seen by Mental Health Staff MS KOONEY but was unable to do so because SRT and defendnat Capatin BERNARD MATHIS denied Mental Health Staff entry to the sprung for reasons unknown.(THIS LEFT THE PLAINTIFF UNABLE TO EXPRESS SUCIDE THOUGHTS)

. On Jan 11, 2023 at aproxmately y 2:30pm DEFENDANTS dEPUTY wARDEM **MILLER** and CO **PHILLUPS** sheild 12282 entered the plaintiff housing unit and due to the plaintiff cell being position in front of the housing unit desk he was able to over hear the conversation these two defendants had with defendnat **BERANRD MATHUIS**. **DW MILLER** asked defendnat **MATHIS** if the plaintiff was able to give his attsnory any viable informatointo whihc defenat MATHIS stated no (THIS ALLOWED THE PLAINTIFF TO DETERMINE THAT DW MILLER AND MATHIS WAS DIRECTLY INVOLVED WITH THE PLAINTIFF'S VIDEO CALL WITH ATTORNEY BEING CUT OFF), DEFENDANT co phillups THEN GAVE DEFENDNAT mathis A HUG AND THAT THE PLAINTIFF WAS NOT SUPPOSED TO RECIVE ANY MAIL, SEND OUT ANY MAIL AND WOULD BE ENHANCE RESTARINT UNTIL HE DROPPED HIS LAW SUIT AGAINT LEMON. In return **BERNARD MATHIS** defendant stated that he knows the cutine and that as long as he was captain on the post the plaintiff was dead on everything.

This interfered with the plaintiff responding to the southern district objecting to the defense counsel request for an extention as seen herein as Exhibit-3B in the matter of ALEXANDER WILLIANS JR V. CITY OF NEW YORK ET AL., 21-CV-1083 (PGG) (KHP), IT ALSO violate dthe plaintiff Sixth Amendment Rights from communicating with attorney's that represented him who he had mail waiting to go out to for over five days citing Sabina Khan, Eric Abrams, Tracie Sundack, Christe Wan, Hillary Black and Daniel Beller, who each reprsent the plaintiff in crinimal and civil matters and communication with them were crucial due to the various stages in the cases and the fact that the plaintiff jail pim was restricted from calling these knxxfew attroney after the Judge Vincet DelGuidice ordered him to be allowed contact with them to prevent any appealable issues in the plaintiff criminal case.

In the afternoon of Jan 11,2023 approxamately 2:4pm the plaintiff served from an astma attck in his cell due to the cell no having any windows where fresj air could entered and the plaintiff alerted defendnat SRT #75 who told him to use his asthma pump because he was not calling medical for him. THE PLAINTIFF DEMAND THAT THE FOOTAGE FROM HIS CELL FROM THIS DATE BE PERSVED FOR EVIDENTRY PURPOSES.

ON JAN 11, 2023 AT APPROXAMETLY 3:45PM THE PLAINTIFF WAS VIDEO RECORDED TAKING A SHOWER AND BEING NAKED IN HIS CELL BY THE CAMERAS INSIDE OF HIS CELL THAT ARE NOT INSIDE OF ANY OTHER INMATE.(the plaintiff demand that the footage from this date and time be persrved for evidantry purposes.)

On Jan 12, 2023  at aprox 9:30am defendant capatin LOPEZ Sheild 462 informed the plaintiff when he asked that he was not allowed to send out or recive mail or receiev any grievance forms to submit and that this was Per Defendnat DW MILLER. Defendnat LOPEZ shiled  462 informed the plaintiff that he was just folliwng orders so do not shot the little man. ( PLAINTIFF DEMAND THAT THE FOOTAGE FROM HIS CELL BE PERSBED FROM THIS DATE AND TIME).

On Jan 12, 2023 the plaintiff was orered to strip naked while getting serach and recorded on cameera at 10:45am by defendants Captain LOPEZ sheild number 462, SRT #117 and SRT #135 sheild number 9957.

On Jan 12, 2023 at 10:45am the three defendnats named above in T75 illegally used the enahcne Restaint on the Plaintiff even though there was a sign on the front of plaintiff door indicating that he was not (1) ENAHCE REDSTARIN, (2) RED I.D. (3) ESACAPE RISK AND (4) ICR INMATE.

On Jan 12, 2023 at 12:35pm the plaintiff was againg placed in Enahce Rsetaint set up by defendnat SRt #135 sheild 9957 ₿₿Z₿, capatin LOPEX sheild 462. ( IS VERY IMPORTANT TO NOTE THAT THE PLAINTIFF USES A CANE TO WALK AND IS SEEN IN EVERY TIME THAT ENAHNCE RESTAINT MECHANICAL ARE USED WITH A CANE WHIHC IS IMPOSSIBLE TO WALK WITH WHEN PLACED IN ENAHCE RESTARINT SET UP)

On Jan 12, 2023 the plaintiff informed defendnat Capt LOPEZ #462 and SRT 135- sheild 9957 that he was in serve pain and having issue  using the bathroon  and was blleeding and that he wanted to be seen by sickcall as an emengcy matter., In return the plaintiff was told that he could not see sick call until defendnat DW MILLER okayed it, by both defendnat Captin LOPEZ shield 462 and SRT ₿₿Z-135-sheild 9957.

On Jan 12, 2023 while in the yard at approxamatel 11:30am the plaintif was informed by security capatin Captin LACROX that he had an outside medical appointment at BeLLvue hopital and that he was here tyo get him. Once the plaintiff was taken back inside by SRT defendnat he was informed by defendnat SRT 117 that he could not go to outside hospital per defendnat DW MILLER. IT IS IMPORTANT TO NOTE THAT THE HOSPITAL TRIP WAS FOR SURGERY ON THE PLAINTIFF HEMORIDS AND FOR POST OPT SURGERY FROM GALLBLADDER REMOVAL.It was alos obvious to the plaintiff that his meedical was being denied due to his litigation against Cheif LEMON.

82

On Jan 12, 2023 at approxmately 5:30pm defendant SS vest number
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX , rear cuff the plaintiff to be moved
from cell 610 back to cell 609 where plaintiff was using unit base law
loibrary. This ocured even though the plaintiff has a cane and has two medical
orders  saying that due to medical issues plaintiff is to be side cuffed.
(1) issued on 9/22/22 by NYC Bellvue prison hospital by DR SOMIL CHUGH
MD and (2) issed by DOC DR BENJAMIN OKONTA MD on 9/22/22, both are knonw
through DOC facilities but SRT defendants decided not to abide by this
due to plaintiff ongoing litigation.

As a result the plaintiff was in serve pain whenever he was transfered
using rear cuff or not in accordance with the medical order issued by Two
seperate doctors.

On Jan 12, 2023 at 5:45pm  defendants #120, #82, and #139 rear cuffed
plaintiff not allowing him to use his cane to go and see medical to discuss
the incident that took place on Jan 7, 2023 dascibed herein and other medical
issues. Plaintiff explained that he needed his cane and defendant #120
can be seen on camera whispering in plaintiff's ear that he doesnt give
a fuck. Furthermore while in meedical room talking with doctors about medical
issues defendant SRT #133 stood in the dorr way listening and monitoring
plaintiff meical examination that took place. Again the plaintiff descibed
the two seperate medical orders that are listed within DOC for medical
exemption in regards to cuffing  in ¶ 60 above.

On Jan 13, 2023 the plaintif was stripped naked on camera in his
cell at 8:55am by defendant Capt LOPEZ 462, SRT #113, #117, #203. (the
plaintiff demand thet footage from this incident in his cell at this date
& and time be persved for evidnectry purposes)

On Jan 13, 2023 at 10:30am again the defendats mentioned above in ¶ 88
will be seen in plaintiff cell camera using the Enhance restraint on himeven
though he is not an enhance retsraint inmate. the PLAINTIFF AGAIN DEMANDS

PERSEVRVATION OF THE CELL CAMERA FOOTAGE IN REGARDS TO THIS DATE, TIME
AND INCIDENT.

84.
     On Jan 13, 2023 between the hours of 9:00am and 10:30am while in
the yard the plaintiff asked defendant Capt LOPEZ 462, SRT #203, and #113
for sickcall explaining that he was in serve pain and neded medical assiatnce
and for a grievnce and both were deniaed to the plaintif fwithout reason.
Stating that they are SRT and do not do sickcall.

85.    Again on Jan 13, 2023 at approxamately 11:30am the plaintiff asked
defendnat SRT #77 and SRT Capt #3 for asickcall explaining in dept this
time that he was bleeding from his rectum  andf was in pain and needed
medical assiatnce, when plaintiff see that thase two defendnat s were not
answering him but looking directly at him he asked for a grievance whihc
seemed to infiriate defendnat #3 whihc lead to no futher answer.

     On Jan 13, 2023 at 11:55am the plaintiff requested to use the law
library cell in 610 whihc lead to defandants SRT #77, #78 #182 under the
supervision of SRT Capt #3 being placed in entire enhance restraint set
up with mittens to be moved ten feet to the nexktcell. The plaintif topok
this as a form of retaliation for his asking for a grievance since he had
never been placed in entire enahce restarint set up when being moved to
xxxxxxxxxxxxxxxxxxxhaamaakixaxtiawixyaxatraamai
law library cell prior to this date.  (PLAINTIFF ASK THAT THE FOOTAGE FROM
HIS CELL AS WELL AS HAND HELD CAMERA BE PERSRVED FOR DISCOVERY REASONS
IN THIS ACTION)

88.    On Jan 12, 2023 at 7:50pm the plaintif was recorded in his cell
naked while taking a shhower. THE PLAINTIFF DEMAND THAT THE FOOTAGE FROM
THIS TIME AND DATE BE PERSVRED.

89.    On Jan 12, 2023 the plaintiff asked defendnat SRT #65 for cleaning
supplies to clean his cell because the dust and dirty was causing him asthma
attacks and the plaintiffwas told that he could not get this per defendnat
Deputy Warden MILLER due to his lawsuits. This denial caused that plaintiff

to suffer f4om an asthma attack.

On Jan 13, 2023 at 1:50pm defendnats SRT# <u>78</u> # <u>182</u> and ## <u>77</u> under the supversion of SRT Capt #3 used the enahnce restarint set up on the plaintiff denail him to propelry use the cane and disregarding his medical exemption due to his ongoing litigation against DOC officials and even thoiughX the plaintiff is not an enhance restarint inmate,. THE PLAINTIFF DEMAND THAT THGE FOOTAGE ☒ FORM THE HAND HELD CAMER BE PERSERWED FOR DISCOVERY REASONS. PLAINTIFF HAVING TO DEAL WITH SRT #77 WHO HIM Remembers from JAN 8,2023 Sexual encounter caused Plaintiff to become, stressed, depressed and Emotional distrauqhT.

7.   On Jan 13, 2023 the plaintiff was told by SRT team members and capatin SRT3# that he wpould not be able to send out regular mail or legal mail per defendant Deputy Warden MILLER, stating that the plaintiff knew what the de deal was regarding his beff with defendnat DW MILLER.(THE PLAINTIF FTOOK THIS DENIAL AS BEING  TEID TO HIS UNWILLINGNESS TO DROP HIS PENDING LITIGATION AGAINST ASSISTANT COMMISSIONER CHARLTON LEMON AS RECOGNIZED IT AS BEING A VIOPATION OF HIS RIGHT PURSUANT TO 42  U.S.C. § 1995(2)(3)).

.   On Jan 13, 2023 at 5:00pm the plaintiff informed defendants SRT #112, SRT #203 that he was again beleding from his rectum area and was in serve pain and in need of medicasl care and emergancy sickcall. IOn response he was told that SRT doesnt do sick call and that all his problems could disapper with a snap of a finger is he dropped his lawsuits like he was told to do.

On Jan 13, 2023 at 7:35pm the plaintiff was video recorded in his cell taking a shower and being naked without his consent and upon viewing of video the court will see that the plaintiff was still taking and being subjected to cold water shours whihc he took as a form of retleiation since there was a empty cell that he could have been moved to in cell 612.

THE PLAINTIFF DEMAND THAT THE VIDEO FOOTAGE OF HIS CELL BE PERSEVRED FOR

DISCOVERY REASONS ON JAN 13, 2023 FROM 7:35 - 9:00PM).

.   On Jan 13, 2023 at 7:55pm the plaintif was visite dby mental health

staff and in stead of SRT defendnat that were present who name are unknown

allowing the MH staff to enter to indie of the plaintiff cell whihc has

a double door so plaintiff would still be on one side and the MH staff

on another but out of ear shot of SRT where he could engage in MH counsling

MH staff was told that she had to speak to plaintiff through door while

she was in the halway with SRT and they were listening to plaintiff mental

health session. (PLEAINTIFF UNDERSTOOD THIS TO BE A VIOLATION OF HIS AMERICAN

DISABILITIES ACT RIGHTS AND A FORM OF RETALAITION PREVENTING HIM FROM DISCLOSIN

WHAT WAS TAKING PLACE IN THIS MATTER)

.   On Jan 14, 2023 at approxanately  10:10am the plaintiff requested

sickcall to SRT Captian #4 informing him that he needed a refill of his

medication "DOCUSATE SODIUM"  in efforts to soften his stool and stop the

bleading that was occuring with his body. As a response SRT Capt #4 stated

to the plaintiuff that SRT doesnt do sick call and that the plaintiff needed

to call 6114. The plaintiff explained that his tablet and pin doesnt allow

him to do such whihc SRT #4 stated well I guess you will bleed to death

then because SRT do not have doctors and nurses.

After the discussion mentioned above SRT #4 then informed the plaintiff

that he did have mail listing (1) piece coming from the DOJ in Washington

D.C., (2) a second piece coming from the Law Department of New York City,

(3) a third piece coming from the Southern District Court in New York City, but

informed the plaintiff that his mail was not going to be delivered to him

until he told Defendnat DW MILLER whatever it was that he wanted to hear.

On Jan 14, 2023 at 10:35am the plaintiff asked to go to the law library cell in cell 510 and prepared to be rear cuffed to move to that cell. When the plaintiff door was open he was informed that being cuffed to moved within the housing unit was not polciy and if that was taking place then those SRT members had their own agenda for doing such. This llowed the plaintiff to reach the conlcusion that being cuffed to go to law librray cell and to see medical when is was allowed to do so was being done as a form of retaliation and deterrent  due to the litigation against DOC and CI (THE PLAINTIFF DEMAND THE CELL FOTGAE AND HAND HELD CAMERA FOOTAGE FROM THIS DATE AND TIME TO BE PERSVED FOR EVIDENTRY REASONS)

On Jan 15, 2023 Investigatorsa from the New york city Correction Investigation Division came to speak with the plaintiff in regards tro the incident that took plaee on Jan 7, 2023 descibed herein. At 5:10pm defendnat SRT 120 and 82 attempted to prevent the investigation division oficers from speaking to the plaintiff in a confidnetial manner until investigatixga investigators brought such up to defendnats capatins. THE PLAINTIFF UNDERSTOOD THIS AS A WAY OF DEFENDNATS ATTEMPTS AT PREVENTING THE PLAINTIFF FROM DISLCOSING WHAT VIOLATION OF HIS RIGHTS WERE TAKING PLACE BECAUSE HE WOULD HAVE NOT BEEN ABLE TO DO SO WITH SRT DEFENDNATS LISTENING , WHIHC IS CONSISTANT WITH THE VIOLATION MENTIONED HEREIN PURSUNAT TO U.S.C. 42 $  1985(2)(3).

## COMPLAINT IN REGARDS TO VIOLATIONS THAT
## OCCURRED AT G.R.V.C. FROM JAN 16, 2023 -          , PRESENT

On Jan 16, 2023 the plaintiff was tranferred back to GRVC facility and was houswed in a housing unit 1a, without his carry medication and astma pupm.

J.   On Jan 17, 2023 the plaintiff still did not have his property and at approxamatley 10:30am began having a asthma attack and notified defendnat CO Mardemn sheild 13770 of such who smiled and stated to the plaintiff WELCOME BACK TO GRVC and walked away.

.   On Jan 17, 2023 defendant  Assistant Commisioner THOMAS GRIFFN toured housing unit 1a with defendant Warden Katherin Cort and stopped in fron tof plaintiff cell whihc was cell 13 and asked the plaintiff"IF HE WAS READY TO DROP THE SUIT WITH LEMON", the plaintiff was shokc and did not respond but over heard this defendant walk way saying I will break him like I did so many like him when I worked in GreenHaven.

The plaintiff cell was subsequently moved from 13 - 11 due to maitinace issues and once moved to cell 11 on Jan 17, 2023 afternoon the plaintiff was given his bag by secuirty officer Andrew Hickson  who came to ceèl 11 opened the plaintiff cell and smile saying welcome back. This officer is named in cases involing the plaintiff in <u>ALEXANDER WILLIAMS V. CITY</u> <u>ET AL,</u>  21-CV-1083 (PGG)(KHP) ,  <u>ALEXANDER WILLIAMS V. CITY OF NEW YORK</u> <u>ET AL,</u>  22-CV-3819 (PGG)(KHP) AND  <u>AALEXANDER WILLIAMS V. CITY OF NEW YORK</u> <u>ETA L</u>  22-CV-10537(UA),  the plaintiff is not naming the officer Andrew Hickson in this case because he can not definitely state that CO Hickson is the cause of the missing property he discovered was no longer in his bag.

When the plaintiff serach his bags after secuirty officer Andrew Hickson gave it to him after property was not with plaintiff for two days the plaintiff  became aware that his TORA and Jewish Letirture was misssing along with legal papers concerning on-going legal matters and all of his medication inclduing two athsma pumps. The plaintiif was told by officer Andrew Hickson that the property had to be search before itx was given

to him but knows that in the past the facility as an whole has instituted a custoim policy of not allowing court order lockdown inmates to have Tora's or Korans and issueng ~~bibkie~~xxbibles in replacement. In fact after throughly insopecting his property the plaintiff saw that that was the case and he filed a grieve on the matter. Comttlaint Plled see EXHIBIT - 4L.

The plaintiff was not fed kosher trays on Jan 16, lunch and dinner and on Jan 17, 2023 breakfast lunch and dinner. And in stead was fed Cold food, and told that houisng unit 1a doesnt not have food warmers because we were not inspecting you guys to come back to the jial. As a result the ~~p0ainti0~~f did not eat at all.

On Jan 1J, 2023 the was subjected to his cell light being on all moring, day , afternoon and night and told that that were the orders tha tthey were given in regards to delaing with him. The plaintiff began to suffer migraine headaceh from this and took it as retalaiation and punihsment for his litigtaion.

On jan 17, 2023 when the plaintiff was allowed to take a shower he was placed in Enahnce restarint and cuff even though he has a cane and meedical documentation that stae otherwise. Defendnat Marden <u>stated to</u> plaintiff when placing him in the shopwer that his assisitant <u>commisioner</u> ~~thexplaintxxwhenxplacingxhimxinxthexshowerxQxthatxhexwasxtoidx~~ gave him orders and that was what he was going to follow. The plaintiff took this as defendan tMARDEN  speaking in regards to something defendnat THOMAS GRIFFIN  informed him or ordered him to speficially do in regards to the plaintiff.

While in the shower a captain TAYLOR left the housing unit and ~~whe~~went over to  HEARING DEPARTMENT  which is ten feet from housing unit 1a and checked the plaintiff hearing and insitutional records. He informed the plaintiff that he is none of the clafficviations of CPATYAIN ESCORT, RED I.D. OR ENAHNCE RETSRAINT  as the facility was informing staff tha the was and sent an email out to the O.S.I.U department seeking guidance moving

forward.

.   On Jan 17, 2023 the plaintiffw was unable to pray and read from the TORA because it was conficacated and he was not given a voucher andor a reason why. Nor was he explained why property was search outside presence.

.   On Jan 18, 2023 at approxamately 5:30 - 6:30am txhthe plaintiff was fed a tray that was freezing cold by defendnat MARDEN  and was not kosher, when the plaintiff explained to defendant MARDEN  that he was Jewish and needed a kosher tray the plaintiff was told by MARDEN that he was no Jew and that as a Army soilder he didnt belive in Jews being in jail. NOTE: THAT THIS IS A MATTER THAT WAS ALREADY DISCUSSED WITHIN THE FACILITY AND THE FACILITY WAS PLACED ON NOTOICE THAT THE PLAINTIF WAS HAVING ISSUES RECIVING KOSHER TRAYTS SINCE HE WAS A JEWISH INMATE SINCE ENTRY OF NYC DEP'T OF CORR IN MARCH 20-18.

At approxmately 9:20am on Jan 18, 2023 plaintiff informed defendnat MARDEN  that he was having xiiissues breathing and was suffering from an asthma attack, defendant MARDEN  caiiadxinformed plaintiff that there was nothing wrong with him but stated that he was going to cover his ass by logging in housin gunit logbook that he had called medical emegerncy at 9:20am and another officer by the names of BROS was present to witness this. At 9:53am the plainmtiff asked again stating that he was weezing and in chest pains and was infored by defendnat MARDEN' that he was tokld by ADW Tindle not to give the plaintiff shit if a capatin was not present on housing unit. The plaintiff was never afforded medical attention and used a clear plastic bag property was in to assist in getting breating under control. See  EXHIBIT - 41,

On Jan 17, 2023 at approxmately 7:30am the plaiunttiff was awake and on his door speaking to defendant KATHERIN CORT who is the warden of GRVC, and informed her that the facility was using enhance restarint on him when he was not that status. Defendant KATHERINE KRXRX CORT, smiled

at the plaintiff and stated YOU HEARD WHAT THE COMMISONER SAID TO ME ABOUT
YOU, speaking in regards to the statement made by defendnat THOMAS GRIFFIN
on Jan 17, 2023 in regards to breaking the plaintiff over naming a seprate
assistant comminsioner CHARLTON LEMON  in a seperate legal action under
WILLIAMS V. CITY OF NEW YORK ET AL,  22-CV-3819.

   At 12;30pm on Jan 18, 2023 the plaintif fwas place in Ehance Restarint
by defendnat MARDEN  and walked to the facility barbershop area. This all
took place on camera and the plaintiff atxtxattest on camera that he was
not this classification of enahcne restarint. THE PLAINTIFF ASK THAT THE
CAMER FOOTAGE BE PERSVED FOR THIS MATTER, SO THAT GENTIC VIDEO WILL BE
AVIALBE DURRING DISCOVERY IN THIS MATTER.

   While walking to babrebershop the plaintoif stopped ADW HARRIS and
aksed him why was he in enahce restarint set up if as the tour commander
and admin dep of facility ADW HARRIS was aware that plaintiff was not Enahnce
Restyarint Status.

   Subsequently while in the babershop ADW HARRIS called and spoke
with a Capatin Taylor and informed him that the plaintif fis not Enahce
Rseatin status and to no longer place miitens, waist chains or shakcles
on the plaintiff because of the fact that ADW HARRIS was sent an email
from O.S.I.U. informing of such.

   On Jan 18, 2023 durring luch time the plaintiff was fed a nonkosher
meal that was cold and as a result the plaintiff did not eat .

   On Jan 16, 2023 the plaintiff wa sno tafforded (1) hour recreation
andf the courts have long recognized that detainnes have a right to recreation
where they can execersise and reciev fresh air, See McCRAY V. LEE  963
F.3d 110, 117 (2d Cir. 2020) QUOTING  ADERSON V. COUGHLIN,  757 F.2d 33.
34-35. With the plaintiff being unlawfully subjected to 23 lockdown after
the opasing of the HUMANE ALTERNATIVE TO LONG-TERM solitary confinement
act, the (1) hour a day for recreation is the only day that the plaintiff

is provided fresh air and sunlight.

THE PLAINTIFF DOES WANT TO STATE A EQUAL PROTECTION RIGHT VIOLATION WHEREAS AS WHEN IN WEST FACILITY FROM DEC 2, 2022 - JAN 16, 2023 THE PLAINTIFF AND ALL COURT ORDER LODCKDOWN INATE HAD TV'S IN THIER CELL AND NOW THAT THE PLAINTIFF IS BACK IN GRVC HE IS SUBJECTED TO NO TEVLIVIISON IN CEEL 23 OR 24 HOURS DAY, WITH COMMUNICATION OR TV WHILE OTHER COURT OIRDER INMATE WHO RESIDE AT WEST FACILITY HAVE TV IN CELL.

On Jan 18, 2023 at approx 12:35pm whne the plaintiff was placed inxxnahce
in Enahce Restraint Set Up by defendant CO MARDEN,  he reiterated that he was doing what he was informed to do by defendnat PRESTON RITTER, who is secuirty staff at the facility. It is important to note that defendant PRESTON RITTER as a secuirty officer knonws the plaintiff status is not enhance restraint but puirposely mislead defendant MARDEN as a form of retaliation against the plaintiff out of the fact that he is named in two seperate suits in regards of action and conduct that he enaged in against the plaintiff and other inmates that were on court order lodkdown status. These case are as followed, ALEXANDER WILLIAMS JR V. CITYY ET AL,  21-CV-1083, JOHMANNI ANDUZE V. CITY ET AL, 2022 U.S. DIST LEXIS 140929 AND FLORES V. CITY ET AL, 2022 U.S. DIST LEXIS 140941 and that he was found to had acted in retaliatiᵒ in eah case.

On Jan 19, 2023 at approxametly 8:45am defendnat KATHERINE CORT toured plaintiff housing unit and informed plaintiff that he was correct that he was noit suppose to be hand cuff unless he was leaving the building and that she informed the correctional staff throughout the facility.This admission by the warden supports the plaintiff claims of Due Process violation and retaliation since the issues had already been visited under previous administartion of WArden Jean Renee.

On Jan 19, 2023 at approxamately 9:45am defendnat capatin Jospeh

entered the plaintiff housing unit to affoird the plaintiff a shower and
ordered a Officer to use enhance restraint set up on the plaintiff to go
to the shower. When the plaintiff attempted to inform defendnat Captin
JOSEPH  that he was not enahcne restarint status defendnat  TOLD ƘAPATIN
JOSPEH  told plaintiff to shut up and turn around. THIS WAS DESPITE THE
FACT THAT A CAPTIN GENTRY HAD ALREADY MADE A NOTATION IN LOG BOOK ON PAGE
76 OF 1A LOGBOOK INFORMING THATTHE PLAINTIFF AND ANOTHER INMATE BY THE
NAME OF FRANCIS WERE ONLY TO BE CUFFED WHNE LEAVING THE FACILITY.

On Jan 19, 2023 the plaintiff was not afforded kosher meal fro breakfast
lunch and diner.

ƟN  Jan 19, 2023 the plaintif was not afforded (1) hour recration and was usbjected
to 24 hours locked in a cell which was contempt of JLO and inhumane as well as deliberate
done so by defendnat named herein this complaint.

In displaying the issue and in support of exhibiting to the court
the obvious Due Process violation of the  plaintiff's rights in regards
to being unlawfully placed in Enhance Restaints the plaintiff present Exhibit·35
Ɲ whihc is informing and etailing that the plaintiff  is to be placed in
Enhance Restarint to and from every single program, and then Exhibit-36 which
clearly states that the plaintiff is only to be placed in Enhance Restaint
set up when leaving out side of the facility. The plaintiff attest that
Exhibit I is a custom, police, practice, usgae of the  Defendnat CIty and
Ɒ other named and not bamed herein this complaint.

On Jan 20, 2023 the plaintiff awoke to a housing unit search by
SRT, while search was getting conducted the plaintiff can be seen asking
Defendnat SRT 117 where is the video camera and/or body camera so that
they can ensure that the condcut ddsplayed durring the search is properly
Memoralized. SRT 117  ensured the plaintiff that the search was on the
up and up. Defendnat SRT 78 ENTERS PLAINTIFF CELL  of cell 11 on housing

1a and begins reading plaintiff legal papers in search of what pliantiff
tokk to be particular documentation. Once paperwork was located the plaintiff
saw that **SRT 78**  DID SEIZE  a motion of objecting and a recently obtained
legal documentation in the matter of **ALEXANDER WILLIAMS JR V. CITY ET AL,**
**21-CV-1083 (PGG)(KHP)**  where the plaintiff was wroking on an objection
to defense counsel requedst for an STAY in the matter.  Defendant SRT 78
placed the legal documnets of the plaintiff inside a orange DOC issue jacket
that the plaintiff was issued for recreation and placed both inside of
a plastic bag and walked out of the plaintiff cell stating; **"FUCK YOUR**
**LAWSUITS AND THE COURT SRT RUNS THIS ".** The plaintiff was never isued a
reason why his legal documentation was seized, was never given a vocuher
or reciept and took defendant SRT 78 comment as being tied to retalaition
and violation of the plaintiff First Amendement rights, as well as Conspricay
to violate one's civil right pursunat to **42 u.s.c. §1985(2)(3).** DEFENDNAT
**SRT 117,**  was heard  by the plaintiff telling Defendnat SRT 78 that he
did not want to be apart of that and next time do not involve him in that
Bullshit. The plaintiff attest that Defendnat SRT 117, violated the plaintiff
rights pursuant to **42 U.S.C. § 1986** FOR  failung to prevent violation of
the plaintiff constitutional rights at that time. (Greiavnce was filed)

On jan 20, 2023 the plaintiff was not afforded recreation and when
he asked defendnat CO **BAWA SHILD NO 1812**  about recreation the  plaintiff
was informed ~~thatby~~ defendant **BAWA**  that he would not being getting recreation
because he was Ordered by defendant **WARDEN CORT** to make sure that I was
on the burn and dead of all services. defendnat **BAWA**  then issued a mental
Health Referral later seeing that the plaintiff became depress and distance
in  nature.

**NOTE: PLAINTIFG FDEMAND THAT THE FOOTAGE FROM HOUSING UNIT 1A ON JAN 20,**
**2023 SRT SEARCH AT APPROX 8:00AM -10:30AM BE PERSVED FOR EVIDENTRY PURPOSES**

_. . On Jan 20, 2023 again the plaintiff was not afforded a kosher meal
in pursuant to his religious deitary and therefore did not eat for the
entire day, nor was he given a reason the was tied to a legitimate penological
purpose of denial of his Kosher meal. Durring lucnh fedding time on Jan
20, 2023 defendant BBAWA, when asked for his Kosher tray/meal was told
by defendant BAWA, 'YOU ARE NOT JEWISH THE FACILITY CARD DOESNT SAY IT
AND I WAS TOLD TO FEED YOU REGULAR TRAY", the housing unit logbook would
support that no Kosher meals was sent to housing unit for the plaintiff.

. On Jan 20, 2023 the plaintt while working in law library cell 1
of housing unit 1a requested to use the bathroom from Defendnat BAWA and
was denied the right to do so but given a plastic garbae bag and told to
use this for bathroom this could bex seen on camera when the plaintiff
exits law library cell at 2 :15 pm on that date.(THE PLAINTIFF DEMAND THE
PERSERVATION OF THIS FOOTAGE FROM HOUSING UNIT 1A ON JAN 20, 2023 AT THIS
TIME FOR EVIDENTRY PURPOESES)

. Agin for a second time on Jan 20, 2023 the plaintiff can be seen
on housing unit gentic footage using a bag to use the bathroom whenever
in law libaray cell 1 as a custom, practice, policy procedure or rule of
GRVC, DOC amd defendnat CITY, at 06 :45 pm. (PLAINTIFF DEMAND THAT HOSUING
UNIT 1A FOOTAGE AT THAT TIME BE PERSVED FOR DISOCVERY REASONS).

. On Jan 20,2023 at approxmately 9:15pm Defendant Capt RIVERA sheild
1230,  stopped at the plaintiff cell door that he was the "REASON" that
I was now calssified as Enhace Restarint Status, that he did not care about
what defendnat WARDEN CORT, said in regards to the facility wide memoradum
that the plaintiff was not ERS (Enhance Restarint Status) because he had
just as much time as she did and that everytime that plaintiff came out
of hhis cell he would be cuffed. By Defendnat's CAPT RIVERA, own words
he is clearly knowlegdable that his action s violates the plaintiff's

due process rights covered by the FOURTEENTH AMENDMENT, as well as supporting evidence that defendnat WARDEN CORT failure to supervise and otherwise discipline officer, capatins alike under her commands for their wrongful conduct.

). On the moirning of Jan 21, 2023 the plaintiff asked to go to cell one whihc was designed for in-house law library for his housing unit. Defendant CAPATIN RIVERA SHEILD 1230, ordered the plaintiff rear cuffed even though he is aware that the plaintiff posess a cane and had the plaintiff placed in cell one further giving instruction that the plaintiff is to use a facility garbage bag to use the bathroom if/when needed. Once the door was closed defendnat CAPTIN RIVERA SHEILD 1230, informed the plaintiffstating "YOU WILL BE SURPIRSED WHAT I AM CAPABLE OF DOING WITH CART BLANHCE, I WAS TOILD TO BREAK YOU AND THAT I COULD HAVE THE DEPUTY WARDEN POSITION AT ANY FACILITY I WANT SINCE I PASSED THE CLASS AND I AM PLANNING TO DO JUST THAT "MR WILLIAMS" NOW ENJOY YOURSELVE WITH THNE LAW LIBRARY, BY THE WAY DID YOU GET YOU LEGAL WORK BACK FROM SRT?. This comment informed the plaintiff that defendnat CAPTAIN RIVERA SHEILD 12230 , was not only aware of the fact that defendnat SRT 78 seized the plaintiff legal documentation the day before, but lead the plaintiff to belive that defendant CAPT RIVERA SHEILD 1230 conspiried with defendnat SRT 78 and others unknown to the plaintiff to do so in efforts of preventing the plaintiff litigtaion, whihc is pursunat to the claim brought herein 42 U.S.C. § 1985(2)(3).

Plaintiff ALEXANDER WILLIAMS JR. used the bathroom inside of cell 1 using clear plastic bag all day and can be seen exitin g with bag of urination on Jan 21, 2023 at approxamately __:__pm.( PLAINTIFF DEAMND THAT GENTICE FOOTAGE FROM 1A UNIT BE PERSVED DISPLAYING THIS FOR EVDIENTRY REASONS)

i.   At 12:15pm the plaintiff infocmed defendant CAPT RIVERA SHEILD 1230

that he was bleeding bad in his retum area and needed medical emergency

to whihc capt RIVERA SHEILD 1230, stated to plaintiff that pursuant to

facility polcies for his housing unit that the plaintff was not allowed

to be seen by medical staff in clinic area of the facility.

_.   The plaintiff again asked defendnat CAPT RIVERA SHEILD 1230   at 3:45pm

if he could please be taaken to see a doctor for a medcial emergency because

he was in serv pain and bleeding to whihc defendnat CAPT RIVERA 1230   stated

to plaintiff to stop asking him for medical because it was not going to

happen. ( THE PLAINTIFF DEMAND PERSERVATION OF OUTSIDE OF CELL 1 ON HOUSING

UNIT 1A ON 3:45PM ON JAN 21, 2023 SHOWING DEFENDANT CAPT RIVERA 1230 STANDING

IN FRONT OF DOOR WHIULE PLAINTIFF ON GROUND IN PAIN)

On jan 21, 2023 at approxamately 4:55pm defendnat CAP RIVERA SHEILD

1230   was present on housing unit for dinner feeding where plaintiff

expressed to him that he hadnt eaten all day be€aused facility did

not provide a Kosher meal purusnat to his religious Kosher diet to whihc

defendnat CAPT RIVERA SHIELD 1230   responed telling the plaintiff that

court order inmate per facility command level order / polciy was not jewish

muslim, uastfarian, anything othetr  than christian so that it didnt matter

what they eat.  Plaintiff argued that this was wrong and being done out

of spite and retalaition to whihc defendnat CAPT RIVERA SHILED 1230   stated

you finnaly starting to understand it now Mr Williams and it wil lall go away wh

when you decide to dismiss you suit against LEMON, speaking about plaintiff

case in the Southern District under WILLIAMS V. CITY OF NEW YORK ET AL,

22-CV-3819(PGG)(KHP).

On Jan 21, 2023 when the plaintiuff asked defeendant CAPT RIVERA

1230 for his (1) hour recreation session he was told the same thing that

Defendant MARDEN informed him whihc was that he was told by defendant CORT

that the plaintiff specifically was on "RECREATION RESTRICTION" indifinite
until further notice. The plaintiff attest to both defendant MARDEN on
Jan 18, 2023 and CAPT RIVERA 1230 on Ajnxix JAN 21, 2023 that he did not
recieve a ticket/misbehavior infraction where recreation restriction was
given at the conclusion of a hearing, that he did not recieve and no"NOTICE"
that he was restricted from recreation and that restricting him from recreation
without the two was violation of hid DUE PROCESS rights. As a response
defendant CAPT RIVERA 1230 stated " I DO NOT CARE ABOUT THE LEGAL JAILHOUSE
LAWYER SHIT YOU KNOW WHAT EVERYONE WANTS AND EXPECTS FROM YOU SO THE SOONER
THAT THE LAWSUIT IS DISMISSED THE SOONER YOUR DUE PROCESS RIGHST WILL BE
RESPECTED".                    ¶¶'    IS SPECIAL NOTICE

    The plaintiff would like to attched this and the religion burden
to the cause of action  of (1) DUE PROCESS VIOLATION & (2) CUSTOM POLCIY
UNDER THE MUNICIPAL OF DEFENDANT CITY using EXHIBIT-31 as support showing
that defendant CITY and other named and unnamed herein has been using a
custom, practrice, poilicy, procedure or rule of defendant CITY to place
Substaintial Burdens of COURT ORDER inmates Religion as well as denial
of (1) hour recreation as stated in Supreme Court Orders without reason
or "NOTICE", where a well known respected civil attorney in TRACIE A SUNDACK
LLP filed suit in the matter of a KWAINE THOMPSON who is a court order
lockdweon inmate the like of the plaintiff AL;EXANDER WILLIAMS JR, Plaintiff
also attaches EXHIBIT-36 as copies of grievance showing that such is a normal
practice that been going on for time now.

    On Jan 22, 2023 the plaontiff asked CO Deleaus sheild 6035, if
he could get his (1) hour rection and was told that the plaintiff is on
recreation restriction and that he would not reciuve rec but the rest of
the inmates would. After hearing the plaintiff out CO LOPEZ went into unit
bubble station to locate any documnetation supporting the plaintiff restriction

and resturn to inform the plaintiff that the officer in the bubble a CO BLANCIE informed him "CO LOPEZ" that the warden of the facility GRVC informed her personally that the plaintiuff was not allowed to recreation ever period.

___.   This was the fourth times that the plaintiff was informed something of this nature when regarding his recreation session that is mandatory if properly following supreme court lockdown order, and without "NOTICE"; or a "HEARING" concluding recreation restriction as a finding for depribation of mandorty service/right per court order the plaintiff attest that he had his (1) DUE PROCESS RIGHTS violated by defendant named herein; (2) was subjected to a CUSTOM PRACTICE, POLICY, PROCEDURE, OR RULE of Defendant CITY pointing to EXHIBIT-37 as support along with EXHIBIT-38 ℓ𝒸𝒸

___.   On Jan 21, 22, 2023 the plaintiff was not afforded his kosher meal in pursuant to his religious deiatry , understanding that missing a few days of kosher meals might night arise to a consitutional violation, but at this point it was obvious that the defendants had placed a substaintail burden on the plaintiff enteir religious freedom whihc included his kosher meal and did so without notice which would include a DUE PROCESS violation pursuant to the CAUSE of ACTION stated herein this complaint, and that the defendnat CITY, WQARDEN CORT, JEAN RENEE, TIFFANY MORALES, JOANNA MATOS, LISA BARNBY, JONELL SHVRAJ and others unnamed created a polciy as seen herein EXHIBIT-34 making such a BURDEN an officla polciy.
                     34

  .   On jan 22, 2023 the plaintif was subjected to using a clear garbage to use the bathrrom while in cell 1 a cell used for typing and legal studies as seen on footage exiting with bag of urination at _6_ : _40_ pm(.PLAINTIFF DEMAND THAT THE DEFENDANT PERSEV FOOTAGE OF HOUSING HXUNIT AT THIS TIME AND DATE FOR EVDIENCE AND BISCOVERY IN THIS ACTION:)IN  support to establish that such was yet another custom, polciy, practice, usage, procedure or rule , of  Defendnat CITY.

.   ӨN   Jan 22, 2023 at approxamately 6:30pm the plaintiff can /will be seen on grvc gentic footgae exitiung cell 1 escorted by Defendant CAPTAIN GUAN sheild 367 handcuffed and carrying plastic bag of urination where he was sunbjected toi using the bathroom in such manner as punishment and oither inmates who use cell 1 law library was not. Furthermore the plaintiff was then e escorted by Defendnat CAPATIN GUAN sheild 367 to the shower hjand cuffed. When the plaintiff attested he was told by defendnat CAPATIN GAUN " I DO NOT CARE WHAT YOUR PAPER WORK SAY i AM CUFFING YOU AND VIOLATING YOU UNTIL ADW HARRIS TELLS ME THAT YOU DISMMISED LAWSUIT LIKE THEY WANT".clearly acknowldgeing the fact that the plaintiff was not supposed to be transported in said manner but was doing so pushing an agenda that was in violation of the Plaintiff ALEXAANDER WILLIAMS JR  Constitutional Rights.

.   ..   On Jan 23, 2023 at approxamately 10:40am the plaintiff was able to aghain speka with defendant WARDEN CORT who was touring the housing unit with other ADW's and showed her the AFFIDAVIT from the secuirty captin ERICA GAINOUS and inform the warden that this captain instituted a facility wide seperation on him on matters that the plaintiff allegely thgreaten the life of her kids and family members. Plaintiff expresssed that this CAPATIN Erica GAINOIUS had numerous officers in the pass violate his rights and become aggressive with him and that the seperation that is known in DOC should be honored. In response defendnat COURT stated to the plaintiff that he isnt seperating from GRVC until his suit against LEMON is no longer an factor and she did not care about his Recreation Restriction and conditions of his housing unit, leaving this defendant unable to argue 'PERSONAL INVOLVEMEN " as an affimitive defense. See EXHIBIT-34 for copy of affidavit submitted to the court by secuirty capatin Erica Gainous.

.   ATapproxamately 1:20 pm on Jan 23, 2023 the defendnat THOMAS GRIFFIN was present on the plaintif fhgousing unity and the plaintiff spoek with him from cell 1 law library cell where the defendnat stated to the plaintiff " YOU DO NOT NED A TV YOU DO NOT NEED A CANE YOU ARE ON PUNITIVE LOCKDWON

UNTIL WE KNOW FROM THE COURTS WHATS GOING ON WITH SUITS", . The plaintiff
took this as the defendnat THOMAS GRIFFIN engaging in the saem retalitory
conduct that many other defendants named herein engaged in along with the
defnedant THOMAS GRIFFIN openingly admitting that DOC in in violation AMERTCAN
DISABILITIES ACT , named hereinwhere DOC maintains a custom, practice,
polciy rule or procedure of taking plaintiff walking cane whihc he needs
to walk and making him hop and jump around the housing unit when neded to go to
shower or law library cell , when EXHIBIT-¶0 herein does not state any restrion
or limitation on posession of walking cane nor odes defendnat CITY or DOC
have a written policy of limitation on medical devices issued by medical
staff and cotors.

        On Jan 23, 2023 at approxamately 2:45pm when returning from medical
the defendnat HO sheild number 17626 took the plaintiff walking cane when
he got to housing unit door even though there are no othe rinmates out
of the unit floor and ordered plaintiff ti limp around . defendnat HO stated
that he did not caare of the plaintiff painnor did he care about the plaintiff's
complaints because he was close to retirment and nothing would happened
to him for violating plaintiff Rights.. Permit for plaintiff cane could
be sen herein as EXHIBIT-¶0.

        On Jan 23., 2023 at approxamtely 3:35pm - 3:55pm the plaintiff was let out his
cell to go to 11 cell to retrive paperwork and go back to law library cell 1
without being allowed to use his cane and as a resultwas subjected to hopping
up the stairs and back down, by defendnat HO.

        **On Jan 25, 2023 the plaintif was subjected to urinating in clear
plastic bag whenevr utilizing cell one law library and that plaintiff could
be seen exiting cell one at $\underline{07:37}$ pm with bag of urination as this was
custom, polciy, practice, procedure or rule of defendnat CITY and others.( THE
PLAINTIFF DEMAND PERSVATION OF GENTIC FOOTAGE FROM HOUSING UNIT ON THIS
DATE AND TIME FOR DISCOVERY PURSPOES)**

On Jan 23 2023 and Jan 24, 2023 the plaintiff again was not afforded a Kosher meal leavinghim with nothing to eat and without notification as to why he was being restricted from his Kosher meal purusnat to his Jewish Religion.

On Jan 26, 2023 the plaintiff was perscribed antifungi medication due to catching fungus from the shower area in housing unit 1a not being properly sanitized. The Court should be informed that 311 and the facility GRVC Grievance office recived grievances from the seven inmates that were housed in 1a and yet the unit was never sanitized as per defendant CITY and BBXEXDOC policy maintains.

On Jan 25 and jan 26, 2023 the plaintiff again was restricted from his Kosher diet and wa snot given notification as to why of afforded a hearing where he could present evidence in his defense .

149.    On Jan 26, 2023 the defendants CITY failed to produce the plaintiff to Bellvue hospital again for surgey leaving the plaintiff to stay in constant pain and bleeding from retum area where surgey was for hemroid removal.NOTE: THAT THIS IS DEFENDANTS 2nd TIMES IN SUCH DENIAL AND SEPERATE MATTER DENIAL TO SURGERY APPOINTMENTS LEAD TO THE PLAINTIFF'S CLOSE DEATH EXPERINCE WHERE GALLBLADDER NEARLY EXPLODED.SEE <u>ALEXANDER WILLIAMS JR V. CITY OF NEW YORK</u> <u>ET AL,</u> 22-CV-3819(PGG)(KHP). Plaintiff ALEXANDER WILLIAMS JR,  asserts this medical denial to the Custom polciyy for court order lockdown inmates that are barred from the facility clinic area showed in polciy 13/21 seen herein as EXHIBIT-❉ 34.

150.    On Jan 27, 2023 the plaintiff was aksing to take a shower but was placed on hold due to inmate Kwaine Thompson explaining to Defendnat CAPT PALMERO and CO RODRIGUEZ that there was a department wide list in housing unit bubble station that informed who in housing unit was mandated to hand-cuffing ERS and who was not. BOTH defendant left unit to go and look at document which is also seen herein as EXHIBIT-36.

Directly after reviewing this documentation in 1a bubble station
defendant's CAPT PALMERO sheild 1888 , CO RODRIGUEZ sheild 9067 and CO
WOLOSKI came to plaintiff's cell and placed him in ERS set up disregarding
the informtion circulated by facility officials seen herein EXHIBIT-36
and escorted the plaintiff to shower. When plaintiff explaianed the information
displayed in EXHIBIT-36 that he isnt one of the ERS inmates in housg unit
this was disreagrded on Jan 27, 2023 approxamately 8:30am - 9:30am . The
plaintiff conscured this as relaitory conduct like that of the other defendants
mentioned herein due to the fact that defendant CO WOLOSKI was present
days ealier with another capatin and was informed by that captain who in
housing unit was supposed to be cuffed ERS and who wasnt and that the plaintiff
was one of the inmates that wasnt. As a result of this incidcdent the plaintif
became MANICALLY depressed that lead to facility medical staff placing
him on a 24/7 suicide watch that started on JAN 27, 2023 and ended on FEB 3,
2023 . STATING THAT THE BLAKET USE OF ERS SET UP AT GRVC WAS A CUSTOIM,
POLCIY, USAGE, PRACTICE, PROCDURE AND RULE OF DEFENDNAT XCITY.

On Jan 30, 2023 the plaintif was subjected to having to urinate
and deficate inside of clear garbage bag while using unit law library.
PLAINTIFF DEMAND THE PERSERVATION OF UNIT 1A FOOTAGE AT 8 : 10 PM ON JAN
30, 2023 DISPLAYING HIM COMING OUT WITH CLEAR BAG OF BODY FLUIDS.

On Jan 30, 2023 the plaintiff requested to have his own tv placed
in front of huis  cell like that of RICKY TORESS in cell 7 and the other
inmates in cells 2 - 5 . When plaintiff was denied he understood that denial
was tied to retalitory and punishable conduct because of his civil litigation
and that his confienment to cell 11 on court order was punitive in nature.

On Jan 31, 2023 the plaintiff was subjected to using the bathroom again in a plastic bag displaying the CUSTOM polciy, practice usgae that is being maintain and Gentice cameras could catch the plaintiff exiting cell 1 on housing unit 1a with clear bag of urination on said date at approxamately O6:OOpm. THE PLAINTIFF ASK THAT FOOTAGE BE PERSEVED FOR DISCOVERY REASON.

Also on Jan 29, 30, and 31 2023 the plaintiff was not afforded a kosher tray but other inmate that was jewish did, this included matzah creackers and grape juice.

<u>VIOLATION OF PLAINTIFF'S RIGHTS AS IT</u>
<u>REKLATES TO DEFENDANT'S CITY POLCIY ON</u>
<u>ON CONDUCTING (1) HOUR REC FOR COURT</u>
<u>ORDERED LOCK DOWN INMATE CLASSIFICATION</u>

The plaintiuff attest that on all of the days excluding the ones listed herein that he was not afforded (1) hour reacreeation that he was subjected to being placed in an enhanced restarint set up such as waist chaines, handcuffs and mitts for the enterie hour in whihc he was afforded recarteion.

This is a polciy that is a custom usage, polciy, practice of the DEFENDNAT CITY as seen pg 5 of EX-A herein, this policy was also already found to be in violation of the rights to inmate in Court order Classifcation by Magistrate Judge Katherin H. Parker in the matter of <u>ALEXANDER WILLIAMS JR VS. CITY</u> <u>(KHP) REPORT AND RECOMMENDATION DATED AUGUST 05, 2022,</u>   21-CV-1083 PG 51-56 XXXXXXX See EX-11 herein.

The polciy that is currently in place is a miiror image of the polcit that was found to be in violation whiohc was Command level order 370.20 and could bee seen here in as EX-12 to be compared to EX-A herein.

The defendant CITY was a defendant named in the matter of Williams Vs City Of NEW YORK 21-cv-1083 and as of being name in that matter and reciving the Report and Reccomandati in that matter, the plaintiff position is that trhe defrendant CITY was notified and should have known to allow the exact same Poilcy to be usgaed, enforced against the plaintiff and others that are claiffied as being Court Order Lockdown uinmates within the entire DOC.

For this matter the plaintiff anmes the following people as being defendnat herein this matter for the creation and endorsmenet of EX-A . :

WARDEN JEAN RENE, JONELLE SHIVRAJ, LISA BARNABY, JOANNE MATOS AND TIFFANY MORALLES.

45

There is no diffrence in the wording or any changes made between CLO 370.20 and CLO 13/21 in whihc the defendnat CITY can used as a defense in the matter of violating the plaintif rights as it relates to recreation and the right to excersie and not being placed in such retsriant s during his recartyion time period.

Therte is no legitimnate Government interst in this matter that can support the reason why the plaintiff would need to be placed in such retsriants when he is being reced only and is the only person in the rec pin in the entire recreation yard during the (1) jour in whihc he is afforded recration.

It is the plaintiff beliveth that he was and is being treated in such matter as not only knowingly and willingly violatiung his Rights but as a form of Retialation . This believth is taken because of when it is viewed in the totality to the treatment that he recived from the defendnat named herein it is obvious that they knew or should have known that using such set up for the plaintif fduring recration periods were indeeded wrong and improper.

Courts in the second circuit has recognized that some opprotunity for excersie must be afforded to inmates in matters of McCRAY V.S LEE 963 F.3d 110, 117, (2d CIR 2020).

The Court has also stated that the requiring of Enhance restarints during the period of recreation deprives a person of a meaningful opportunity to execersie and that such a Law is clearly established, See EDWARDS V. QUIROS 986 F.3d 187, 192 (2d Cir2021).

IN THE INSTANT MATTER THE PLAINTIFF ASSERTS VIOLATION OF HIS SUBSTAINTAL DUE PROCESS RIGHTS TO BE ATTACHED TO THE SECOND CUASE OF ACTION IN VIOLATION OF DUE PROCESS.

Defendnat **CITY**  and oithers stated/named herein classifed the plaintiff as being enhanced restsraint when engaging in his (1) hour receation when NYC DOC polciy 4518R-B pages 5-10 lays out the polciy for being enahnce restraint status and that any inmate that has such status should be given **"NOTIEE OF AUTHROIZATION FOR INTILA PLACEMENT IN EHNAHCNE RESTAINT STATUS"**,Theplaintiff was never served with such before being enhance restarint per polcity seen here in as **EX-A** , see **EX-25 - herein for copy of NYC DOC  Enhance Restaint Policy.**

**X**      **FURTHEMORF** PG 7 OF **EX-25**  lays out the Due Process hearing concnerning the classifying of a detainne as being Enhance Rsetraint Status. This is yet something else that the plaintiff was never afforded whihc violkates his rights.

47

## VIOLATION IN PLAINTIFF'S LEGAL CALLS:

The plaintiff as a detainee process and maintains the Sixth Amendment right to counsel in connection with the criminal case and pending civil cases that he has pending. This Right is also grounded in various oonstitutional rights includding the right to Due Process and equal Protection, See **BOURDON V. LOUGHREN,** **386 F. 3d 88, 95 (2nd Cir. 2004)** .

**THER** restrictions being placed on the plaintiff as a pre-trial detnianee contact with his defense attorneys and civil attorney's is a Constitutional Violation because the restrictions are unreasonable burdening to the plaintiff **ALEXANDER WILLIAMS JR** opprotunity to consult with consuel and to prepare his defense.

At the times when the plaintiff was able to speak with counsel defendnats made it theire business to stand in front of his door and l,isten to his conversatin whibh is a direct violation to attorney client privilege and holds no penological intrest in the sfaty and secuoirty the facility or individuals on the outside world.

The Courts have already estblsihed in **PATTERSONH VS. PONTE,** **2017 WL 1194489, AT \*3 (S.D.N.Y. MAR. 30, 2017) THAT** a pretrial detainee's Sixth Amendment rights are violated whe a prison regulation unjustifiably obstruct, infringes, unreasonable burdens or significantly interferes with his/her access to counsel.

In the instance case the plaintiff is not akllowed to call his attoirney during reasonable hours such as ₤₤12:00pm -2:00pm whihc are common lunch hours or in the evening between 5:00pm and 6:30m pm when attorneys are out of Courts.

Furthemore the fact that the defendnats **CITY** by way of GRVC
and DOC Officials do not have a policy in regards to  properly
addressing this matter is eviudence of a custom, practice, p½olciy.
procedure and or rulee that is in violation with the law and
the plaintiff's  **ALEXANDER WILLIAMS JR,**  constitutaional rights,
especiALLY IN THE instandce where defendnats are standing and
listening to concversatoins that plaintiff is having with his
attorney's when he does call.

This type/style of practice disoourages the plaintiff from
calling attooney's on opportunity's when he did have the chnace
out of concern tha tthe practice of standing and listneing to
his conversation violatres his rights and would prejudcie his
defense in his criminal and civil matters.

This is also evience as mentioned herein one of the plaintiff's
cuase of action that the defendndat **CITY** fail ed in training
the defendnat who enaged in this activity of the rights of pretrail
detainee, and also failed in supervising them whihc defendnat
**CAPATIN GANIES AND**  defendnat  **CITY-** are both liable for in that
instance.

There is no legal arguiement tha tthe defendants can make
in regaurds to the penoligical interest of a Witness, correction
staff or to prevent escape when the plaintiff is being restricted
from calling numbers that were pre-appraoved by the Supreme Court
Justiuce Vincet DelGuduice who ordered the Lcokdwn whihc in returns
gives the plaintiff a Right to enage in conversation with the
people listed on the Supreme Court Order By a Suprem Court Justice
demands.

The arguiement violating the plaintiff Sixth Amendment Right

must be implemneted in this matter because the plaintiff asserted
that he was aware and knows that his copmmunication with his
counsels are deemed private  and that his lawful preparations
for trial are secure against intrusion by the Government whihc
incldudes the defendnat CITY  and the defendnats names herein
that are employeed by the defendant **CITY**  as correction officer
for the New York City Department of Corrections. See <u>UNITED STAES</u>
<u>VS. ROSNER,</u>  485 F. 2d 1213, 1224 (2d Cir. 1973) , whereas the defendant
CITY  by way of the New York City Court system and the State
Of New York is adversity to the plaintiff **ALEXANDER WILLIAMS**
JR  in regards to the criminal matter in whihc he is preparing
for trial in.

The defendnats CITY  is aware of the violation that this
practice creates because they were informed by the Courts in
a matter of <u>ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL,</u>  21-CV-1083
(PGG) (KHP)  <u>REPORT AND RECOMMENDATION DATED AUGUST 05, 2022,</u> where some
of the same defendnat had violated the plaintiff rights in the
same instance.

In addicction to thematter above in whihc the plaintiff is
named as the plaintiff in whihc he uses as support in this arguement.
The plaintiff would like to also refer this matter to the case
of <u>JOHMANNI ANDUZE V. CITY OF NEW YORK</u> 21-CV-0519(PGG)(KHP) Where
the plaintiff in the court matter established that Defendant
**CITY & DUNBAR**  who wa sthe warden of the facility at the time
did violate his rights by way of the policy CLO 370.20 as it
related to being p;laced in Enhanced Retsrints while duriing
(1) recration. **SEE  EX-15 HERTEIN**

Ex-A herein this complaint as stated before is a mirror
image of CLO 370.20 whihc was the core of the two complaints

listed above.

This is reason where the plaintiff herein this matter instance **ALEXANDER WILLIAMS JR**,  names the Current Warden Warden Cortz, DW LISA BARNEBY, DW TIFFANT MORALES, DWJONNEL SHIKRAJ and DW JOANNE MATOES as defendnat sherein this matter by way of signing and acknowledging the enforcment of such a polciy just as in the matter of  <u>**WILLIAMS V. CITY OF NEW YORK ET AL, 8 21-CV-1083**</u> <u>**(PGG) (KHP) AUG 5, 2022 & JOHMANNI ANDUZE V. CITY OF NEW YORK**</u> <u>**ET AL,**</u>  21-CV-0519(PGG)(KHP).

The plaintiff is and was never afforded any Due Process in order to present evidence and information as to why he should noit be restriant durring recartoion hours.

The situation/violation from the defendnats as it relates to the illegal montioring and censoring of the plaintiff legal calls reached the level of where the plaintiff had to file and request an **TRO TEMPORARY RETRSINING ORDE IN THE CASE OF** <u>**ALEXANDER**</u> <u>**WILLIAMS JR. V. CITY OF NEW YORK ET AL,**</u>  21-CV-1083 (PGG) (KHP) on or about November 7 of 2022 due to the fact that the plaintif fwas being unable to marshal his defense and consult with hjis attorneys in confideintal as madated by state and federal laws.

Futhermore another Court Order Lcokdwon Imnate Kwaine Thompson legal advisor had to file an affirmation amending  his JLO for the Courts to order DOC and some of the same defendnats in **CO ANDRW HICKSOIN, CO PRERSTON RITTER, CO KEVIN YOUNG AND CO GRAVES,** to stop monitoring Kwaine Thompson phones calls as well as the defendnat **CITY** by way of DOC who for some reason monitors the legal calls and notify you while you on the phone with the attorney that the fecilaity if montiroing the call.

See **EX-21**, for a copy of attorney Harlan Greenberg ESQ,

affirmation in regards to this issues.

This affirmation along with other exhibits listed herein supports that the montoring of court order lockdown inmates legal calls with their attorneys' and privatex investigator is a custom, p;olciy,xpkkactrisexxpractice, usgae, procedure and rule that defendnats stated herein are enfrocing that has no legitmate penoloical pntrest other than to discomfort and violate the rights of the plaintiff and others .

## PLAINTIFF ARGUMENT IN REGARDS TO THE
## CONSTITUTIONAL VIOLATION OF THE 23/1
## LOCKDOWN COURT ORDER

___   Defemdant CITY by way of DOC  has mislead and failed to
inform  the New york City Court System of its changes within
the New york City Department Of Correction in regards to SPecial
Housing Units and LockDown Housing Units such as the one that
the plaintif fis held in.

EX-F  is a copy of the plaintiff's Supreme Court Lockdown
Order that explains that the Court was presented with valid information
that maded the court belive that the plaintiff was soliciting
the aid of other person to affect the witness(es) in his criminal
case.

From Jan 2019 - Nov of 2020 the plaintiff was housed in
9 North at the Manhattan Detention Complex in a housing unit
specially designed for Court Order Lockdown Inmates.

In Nov of 2020 the plaintiff was moved to GRVC to prersent
time instead of being transfered to one of the many facilities
on Rikers Island that are also speciallyy designed for Court
Ordered LockDown inmates such as West Facility and N.I.C.

The circumstance at GRVC are beyond dire and are exactly
Solitary Confienment as it relates to 23/1 Court Order Inmates,
Dispolaying that the defendants CITY by way of DOC Officials
are implementing added retsrioctions that are not listed on the
plaintiffs court order upon all Court Order Lockdown Inmates.

These Restrictions lead to the court order being enforced
in a punitive manner/fashion which in returns is a violation
of the plaintiffs Due Process rights as it relates to **WOLFF VS
McDONNELL**.

53

The process that was used to present to so-call evidence to the court was done so ion an Ex-Parte fashion leaving the plaintiff without the opportunity to present evdience and information favorable to his defense in the matter.

Assistant District ATtorney **Ernest Chin** used testimony from a **David Walker**, this testimony that was covered by a protectvie order is seen herein as **EX-N**.

Is importnat to note that David Walker  was vidoe recorded confessing to the murder that the plaintiff is charged with and also Audio recorded three times over.

When the courts examine **EX-N** you will find that on pages 40 -41 **David Walker** stated that he did confess to commiting the murder but only after he was told to do so whihc was never established by who ~~so~~ ot when.

**In EX-N**  on pages 6 - 7 **David Walker**  testified that he and the plaintiff ran **f**guns and commited various acts of crime up and down the East Coast from 1997, 1998 and 1999. This can not be true because of the fact that the plaintiff was incarceratted from 1996 - 1999 from the age of fifthteen until he was eightteen by a a Judge for 3 years restricted placement in the New Yoprk State Divsion for Youth.

**In EX-N**  on pages 9 - 11 **David Walker** testifies to commiting these crime again from 1998 - 2009. But in examination of EX-O, you will find by way of a background check via White Pages Premium that **David Walker**  was incarceraated from 2000- 2010 for arm robbery and various other violent penal law violations.

If the plaintiff was locked up from 1996-1999 and david Walkler from 2000- 2010 then it is clear that David Walker for whatever reason perjured himself and that the rest of the information that he testified to could not be deem reliable and truthful.

This si key in the plaintiff Court Order because by law in the State of New York who ever request for any courts order such as protection orders, search warrant, arrest warrant or special tkasdCourt Order for lock down is responsible for vetting the information that they use for truthfulness before prersenting said information to a Judge as being reliable and credible.

In the cae of the plaintif this was not done as the Courts can se and can also examine for themselve that the person who made the testimony also admits that he did confess to the murder in whihc that the plaintiff is charged with.

In regards to the 23/1 Court order to address the plaintiffs communication and isolation form anyone who he can communicate with that can spread word to the outside.

Itx is factual that if the Defendnat CITYT wanted to adress such concerns that the plaintiff does not have to be subjected to such serve isolation to reach the objective agenda.

The plaintiff pin number to his phone is computerized to the point whsee he can only dail numbers that are programed and listed on his Court order that go to defense attroeny Julie A. Clatrk Esq, Jeffrey Chabrowe Esq, Private Investigator Kevin Hinkson and Private Investigator David Barret.

Therefore their should be no added restricted limited to the amount of times he could contact his attorney where is defendant CITY by way of DOC Officials do not have the right to determine

the amount of time per day per week or per month that the plaintiff should get to discuss legal concerns and marshal defense in any case let alone a charge **aff** of murder which is the top charge that one can be charged with in the state Of New York.

Thus said added restriction being implemented is evidence of a Custom, Usga or Practice rule and procedure of the defendant **CITY** that has no penoligical interest when the plaintiff pin is already blocked to only being able to call numbers listed by the Juydge who Order the plaintiff LockDown.

Such an added restriction only makes room for exactly what is taking place whihc is to be used in an advrse fashion that can only violate the plaintiff right to communicate with his attorney a Right that is garuantueed to him by the **SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS WELL AS THE NEW YORK STATE CONSTITUTION.**

Furthermore the housing unit that the plaintif fis housed in is located in an isolated area of the facility away from all other inmate population which prevents him from any commincation with other inmates in general population. Thus 23 or 24 hours a day in a cell bears no penológical intrest if this is the case.

Agian such a restriction can only be used in a fashion adverse towards the plaintiff and retalitoryu fashion by defendnat **CITY** by way of DOC Officials.

Again as explain herein though  not listed within his Court order seen in **EX-F**, the plaintiff is restricted from going to the facility clinic area as seen in the polciy herein **EX-A**, which also prevents him from outside commincation. When the plaintiff is moved around the facility he is so with a DOC Official escort and many of the times the DOC Official holds the rank of a Captain

or higher.

Lastly The New York City Department of Correction has recently converted the Commissary system from a paper fashion to automated whihc is done by way of Telephone.

The facility has failed to train the security officers who are responsible for conducting legal calls to court order inmate how to use the phone to place commissary orders for the plaintiff and others in his classification, because of the fact that they do not want to allow the plaintiff to opportunity to physically touch a phone.

Defendnat CITY is liable for this failure to train and defendant CAPTAIN GANIES who holds the poistion as secuirty capatin and is direct supervisor over the officers who are assigned to conduct phonce for failing to supervise and address the matter of the plaintiff ordering commisssary.

Again this laspe and/or added restriction violates the plaintiff rights and could only be used in adverse fashion and as retalaition whenever the plaintiff doesnt do something that an DOC Officials demands.

The defendant CITYY is liable for this violation as they are responsible in reproting back to the Courts with updates on the change in their policy and position as it relates to matters that are in direct conflcit with the Court Order lockdown inamte classification as to allowing the Court to modify its Order to fit the capabilities of the Department of Corrections.

### MENTAL AFFECTS AND 8TH AMEND VIOLATION OF LOCKDOWN ORDER:

Though there is no garuntee Right to Television when incarceratted in New York City DOC. The plaintiff is locked in a cell 23 hours

aday and mant times its 24 hours a day when half of a month recreation
is not afforddd due to staffing issues or retialation by defendnat
named herein and others.

There is by way of the housing area the Court Order concern
already being addressed and an addage of 23 hours locked in a
cell has no penological intrest and only causes damgge that is
unrepairable to the plaintiff.

Another example of defendnats CITY by way of DOC failed
to inform the Courts that since the Covid -19 pandemic that DOC
has converted to the form of using the faxphone tpo dail 614#
to make a sickcall request to see doctors. See EX-P.

The plaintiff is not allowed to use the phone txa do call
sickcall even though its an inner departmental number whihc has
lead to many days of his medical needs not being able to be addressed.

DEFENDNAT CITY by way of DOC has abolished all special housing
unit, BOX/SHU and lock down housing areas. The Defendant CITY
has not informed the Courts of this change which has lead to
the plaintiff being subjected to mental abuse by way of 23 or
24 hours locked in a cell in a punitice nature by DOC officials
and the defendnats named herein this complaint.

On January 25, 2013 the NEW YORK STATE BAR ASSOCIATIONCOMMITEE
ON CIVIL RIGHTS, PRESENTA REPORT IN regards to the effects of
solitary confiuenmnet in the state of New York to the House of
Delegates  as seen herein as EX-Q.

In that report doctors and lawyers highlighted the mental
affects of solitary confienement long and short term as well
as the physical damage that are both temporary and permanenet
to a person being sibjected to such living condiction for long
and short periods of time.

58

The reprots also hightlights that solitary confienment is Counterproductive to Human Dignity and has been Largely abandoned by the entire International Community.

The plaintiff came to being confined by the defendnats CITY by way ofd DOC in March of 2018 and has been incareratted every since and came with no Mental haxkxkxMax Health History.

As it currently stands in May of 2022  Doctors employed by the defendnat CITY at the NYC Health and Hospitals rendered a Professional Judgement stating that the plaintiff may no longer be mental fit and appears to mentally Ill. See EX-R.

Thids is a diangnoses that the plaintiff did not have before being subjected to 23 hgours locked in a cell a day without an end date.

EX-S, the court wiull see when a DOC staff member witness the plaintiff screaming the name of the arresting officer in his criminal case  documenting that the plaintiff seemed to be slipping away from reality and suffering from deprerssion.

EX-T shows yet another mental health referral when yet a seperate DOC staff member reported that the plaintiff has been observed talking to hiomself. Something that he had never been reported doing befor being subjected to 23 hours a day locked in a cell.

In EX-U another DOC staff memeber submitted a mental health refferral documenting that he witness the plaintiff screaming the name Thomas Handley   "YOU WILL NOT  KILL ME". Another act that the plaintiff never had a hoistory of before lockdown for so long.

In **EX-W THE PLAINTIFF** was observed in his cell begging and praying for his life from DOC officials by name, another fact that display that the plaintiff has been greatly affected by lock down order.

The Jurisprudence on Solitary Confinement within the Inter-American System on Human Rights has explained in depth the danger and injuires that are cuasued by short and long term time spent in Solitary Confinement. The Inter-American Court on Human Rights has found that its eaements of a prison regime and certain physical prison condictions in themselves constitutes Cruel and Inhuman treatment, and therefore violates **Artilce** 5 of the **Amewrican Convention on Human Rights**, which recognizes the right to the integrity of the person.

This Court held that "PROLONGED" ISOLATAION AND DEPRIVATION OF COMMUNICATION ARE IN THEMSELVES CRUEL AND INHUMAN TREATMENT, HARMFUL TO THE PSYCHOLOGICAL AND MORAL INTEGRITY OF THE PERSON AND A VIOLATION OF THE  RIGHT OF ANY DETAINEE TO RESPECT FOR HIS/HER INHERENT DIGNITY AS AHUMAN BEING". See <u>VELAZQUEZ-RODRIGUEZ V. HONDRAS</u>, INTER-AMERICAN COURT OF HUMAN RIGHTS, SERIES C, NO. 4 PARA. 156 (1988)

The Court has additionally addressed physical condictions of detention asserting that "ISOLATION IN A SMALL CELL, WITHOUT VENTILATION OR NATURAL LIGHT,....  ][AND] RESTRICTION OF VISITING RIGHTS.... CONSTITUTES FORMS OF CRUEL, INHUMAN AND DEGRADING TREATMENT".

The plaintiff asserts the following as being an injury as well.

<u>DUE PROCESS VIOLATION</u>:

In  **WOLLF V. McDONELL** the courts established the nedd of
Due Process before an inmate recived punitive results such as
box time and/or soltaire confinement.

It is well know that New York  State Rationale for the use
of Solitary Confinement  is to **(1) Punish an Indivbidual (2)
Protect Vulnerable individuals (3) to Protect or Promote National
Security and (4) To Facilitate Pre-Charge or pretrial investigations.**

The plaintiff **ALEXANDER WILLIAMS JR,**  was not and is not
being afforded the Due Process rights which is rights Procadureal
and Substaintial in nature under the Fourtteenth Amendment of
the Unites States Constitutions.

**EX-V**  is Court minutes showing that in Feburary 13, 2022
whihc was only 30 days after the Lockdown Order was instituted
ADA Ernest Chin infomred the Courts that he and the Kings County
District Attorney Ofice was investigating and close to bring
charges against the plaintiff and other people.

Those charges never materialized and years later the plaintiff
was still under that same Lockdown order.

The KKKKKXX legalk defense team that represented the plaintiff
was able to display and present facts that supported that any/all
statements and evidence placed in front of the court during EX-
Parte proceedings were false or never ended an any viable arrest
of anyone including the plaintiff.

Every other inmate that was detanieed with the plaintiff
under the Lockdown order had been recharged with a crime that
was the result of them being placed on  Lcokdonw order. Thses
crime were such as witness tampering, bribery, forgey, threatneing
witness or victim, violation of an Order of Protection etc.

The plaintiff was not and has not been charged with any other crime outside of the charges he was initially arrested on in March of 2018.

Furthermore from theiur investigation the plaintiff and his defendse team was sucessful in getting charges dismissed against the plaintiff other than the Murder in 2nd degree charge.

With the understanding that the plaintiff was placed in Court order by a supreme Court Judge this Court has the Authority and Power to reassess these facts in camera and detærmine if the plaintiff should have been afforded more Due Process in regards to thge LockDown order.

Being placed in SOlitary Confinement  without an End date and without being found guilty or even charged with a crime or a misbehavior infraction in support of such order is direct proff of the violation of the plaintiff Due Process.

This és espeically when the DA officesd have expericned a level of attriction and shortage in ADA's whihc have pushed the plaintiff trial back years now.

### CONCLUSION ON LEGAL ARGUEMNT IN RELATIONS TO LOCKDOWN ORDER:

In June 3rd of 2021 the prersident of the United States of America Joe Biden and Vice President of thge United States of America Harris  recived  a letter from multiple organization that presented evidence and facts on why there should be an end to Solitary Confinement, A copy of this letter can be read herein as **EX-X.**

BY WAY OF THE MEDICAL RECORDS  PRESENTED AS EXHIBITS HEREIN it is clear that the plaintiff has been diagnoised with mental health illnesses that the state of New York and the federal Governement

recognize as being a mental disability.

With this being the case the continuance of housing the plaintiff in any form of solitary confinement like situation is the Courts, the defendnat's **CITY OF NEW YORK** , and DOC Officials going against everything that the same have acknowldged as being wrong and are currently showing that by failing to properly address the mental health ilness(es) of the Citienz of the United States have lead to an uptick and unprevented criminal violation that stem from the lowest to the highest criminal acts.

The defendnat' **CITY** violated the plaintiff's Due Process when they failed to inform the Court on their change in no longer housing inmate/pretrial detianees in a solitary fashion like manner.

The inmates that are commiting rapes, stabbing againts other inmates and correctional officers are not housed in solitary confiement like manners , whne the plaintiff is and he has never been convicted of a violentx crime and evidence exist that support that he was not the person who actual committed the violent crime in whihc he is currently charged with.

the defendnat **CITY** also violated the plaintiff's Due Process rights and failed to properly train and supervise its Staff tyo make them understand that Court Order Lockdown Classification is not a classification that should be handled in a punitive fashiuon or manner.

because of the absence of witness other then other DOC staff members , solitary confiement increases the risk of acts of torture and other cruel, inhumane and degrading treatment in a punitive fashion that the plaintiff has been experiecning.

Given its serve adverse health effects, the use of solitary confinement itself can amount to acts prohibited by aRT. 7 of **the international covenant on civil and political rights,** TORTURE AS DEFINED IN art 1 OF THE CONVENTION AGAINST TORTURE OR CRUEL , INHUMANE OR DEGRADING PUNISHMENT AS DEFINED IN ARTICLE 16 OF THE CONVENTION.

**The** defendant CITY is responsible for how the plaintiff and all the inmates that are in its custody are housed and recive care trhat are not in violation of any state and federal rights and in such a manner that does not create or excerbarate any existing injuries that one inmate/detainee may have.

In the case of the plaintiff the defendnat CITY  has failed in this area whihc has lead to the filing of this complaint and others and has also showed that the plaintiff has been injuried in ways that are irrepairable and if treatment continues can be life ending if not addressed.

Amongst the mental injuries stated herein it is noted that the plaintif has suffred from ofher medical issues such as the Removal of his GallBaldder after being misdisgnose and untearted and not produced to medical appoints hundreds of times.

The plaintiff aslo suffres from a Shoulder and Wrist injury in whihc he has requested a second opion on and has yet to heard a repsoase as seen in **EXE** EX-Y herein.

**As** a result of how the plaintifffis housed by the defendnat CITY by way of DOC, all of the issues stated within the Court are can be addressed without the implemention of solitary like condiction, whihc at this point hodl no Penalogical Intrest other

than being punitive against the plaintif feven though he has
been found guilty any any crime, any of the speculations stated
within the Court order, or even a misbehavior infraction by DOC
Officials that would support the unlimited confiemenet of the
plaintif fwhihc he has displayed created injuries that will never
be able to heal afterwards.

As a result of the practices in which the plainfiff is housed
in by the defendnats **CITY** , by way of DOC Officals who knowing
and willing are knowledgable in the Law called **"HALT"** that was
establsihed and passed in 2020 that ended solitary conficnement.

And as aresult of these practcices, polcies and custom the
plaintiff injures by Doctored employed by the New York City Health
and Hospitals whihc falls under employees for the defendnat herein
**CITY** has diagnosed the plaintiff with the following injuires:

- ANTISOCIAL PERSONALITY DISORDER

- PERSISTYSENT DEPRESSIVE DISORDER

- INSOMINA DISORDER

- NON SLEEP DISORDER WITH MENTAL COMORBIDITY

- PERSISTENT NIGHTMARE DISORDER WITH ASSOCIATED NON SLEEP DISORDER.

Placing the plaintiff on numerous drugs such as **MELATONIN
PO, MIRTAZAPINE PO, PRAZOSIN HCL PO.**

The disorders named herein are life changging disorders
that will follow the plaintiff for the rest of his life whether
he is or is not convcited of the charges in whihc he is awaiting
trial currently.

Other injuries assocaited with the soltatlry confinemet
mentioned herein are as followed:  **ELEVATED ALT MESSUREMENT OF
ANEMIA AND CHOLETIHIASIS WITH ACUTE CHRONIC CHOLECYSTITS** , which
as lead to the removal of the plaintiff GallBladder body organ.

These inquires are the direct and proxamite result of the defendant's CITY polciy and practice that have been and are well known to be inhumane and in violation of anyone's right whihc incldues the plaintiff ALEXANDER WILLIMS JR.

The Court Order also violates the plaintiff Fifth and Sixth Amendment Rights in a fashion that denies him/prevents/restriucts him from being able to contact other criminal defense attorneys to consult with them in regards to hiring them to add to his current defense team or to replace the defense team that he currently has.

The plaintiff has wanteds tohire new Lawyers and wanted to consult with lawyers from Esptein and Conroy Esq, Bengiman Bradford and others and has been unable to sonsult with the firms to explain what it is he may want to hire them to do in regfards to his criminal case.

The plaintiff has voiced this concerns to Attorney's from the Law Firm of  PAUL, WIESS, RIFKIND, WHARTON & GARRISON LLP, who reptresent him in a seperate matter on Civil litigation , who also had a difficult time of being able to speak with the plaintiff via telephone to assist him in locating a suitable criminal deffense lawyer who he can hire to replace the current defense team that he has. (THIS CAN BE ATTEST AS FACTUAL BY ERIC ABRAMS ESQ ANN ASSOCAITE WITH PAUL AND WEISS)

THE plaintiff is also represnted by the law offices of TRACIE A. SUNDACK & ASSOCIATES, LLC, who also complains of having issues and hard time contacting or hearing from the plaintiff in regards to the matter in whihc they represent him in.

In the matter of the allageation involving Tracie A. Sundack
esq the court could refere to NYC Claim No. 2022PI002930 and
in the matter of the allegation involing the firm of **PAUL WEISS**,
The Courts could reffer to 19-CV-3347, 21-CV-1083 and 22-cv-3819
in whihc they represnt the plaintiff in some fashion in each
matter. See **EX-13 FOR COPY OF SUPPLEMENTAL AGREEMENT ON PAUL
WIESS AND EX-14 FOR LETTER FROM TRACIE SUNDACK.**

**IN** ALL It  is the plaintiff stating that the Suprme Court
Lockdown order violates his Sixth Amenmdent rights by restricting
him from being able to access to the Courts and other Lawyers
at all completely which is in regards to hiring  new counsel
to reprsent him in his legal criminal matter out of Kings County
New York for the charges of Murder.

The plaintiff aserrts herein this 1983 pursuant o federal
constitutional violations **"PENDING STATE CLAIMS"** in regards to
this Soltariy confienment claim as well as the stated federal
Violations.

**EX-20**  though not addressed directly to the plaintiff is
a letter to another inmate who is housed in Court Order Lockdown
housing unit purusnat to a JLO(Judical Court Order) where a lawyer
from **"DRNY"** Disability Rights New York informed the Office of
counsel for the New York City Department of Correction who is
essentially for the purpsoe of this claim the same peron(s) as
the defendnat stated herein **CITY.**

Other case law that supports the plaintiff's claim as being
housed ion 23/1 condiction as being as violation can bea seen
in, ALLAH V MILLING,  876 F.3d 48;  BELL V. WOLFISH,  441 US
520; BELL V. WOLFISH  99 XXX S. Ct 1816; ALSO BEST V. NYC DOC

<u>14</u> F. Supp. 3d 348; ALSO <u>BENJAMIN V. FRASER</u> 264 F. 3d 175.

THE DEFENDNATS' CITY for the most part has been notified in numerous cases that teh housing related to 23/1 soltarity like vioilates indivuals rights and that they has ignored these notifications which is also a claim that could be stated that defendnat CITY was and still is "DELIBERATE INDEFFRENCE" to the injuries that their actions cuases to the plaintiff in this case.

The defendants CITY, ERIC ADAMS, LOUIS MOLINA, are task with the resppnsibilities invested in them to enforce the Laws of the State of New York and defendant LOUIS MOLINA DN ERIC ADAMS especially the Laws of Correction Law that Governs the Plaintiff and others inmate who are detaineed in city jails.

EX-26 herein is a copy of the HALT Bill that was passed into Law on January 2021 leaving no exception of Court Order Lockdown to exist in the restriction of solitary confienment, lsiting the definition of "segregated confinement" as being any form of confinement were an inmate is confined to a cell for more than seventeen hours a day.

Defendants LOUIS MOLINA, ERIC ADMAS & CITY, knew of this law but purposely contiued the confiement of the plaintiff ALEXASNDER WILLIAMS and other inamtes in a court ordered lockdown housing unit in facilites such as G.R.V.C., N.I.C. and West Facility, MDC all the while being aware of the law that restricted such existance.

Defendants ERIC ADAMS & LOUIS MOLINA, has given numerous public specches where they personally has mentioned and/or spoke about this law that restricts this form of solitary confienment leaving them no defense of PERSONAL INVOLEMENT.

The plaintiff names the defendnats CITY, LUOIS MLONIA AND ERICC ADAMS TO ₿ added to the following Cuases of Action: FOURTEENTH AMEND, FAILURE TO PROTECT UNDER STATE AND FEDERAL LAWS, EIGHTH AMEND, EQUAL PROTECTION CLAUSES, STATE LAW NEGKLGENCE, NILIGENT TRAINING, RESPONDEAT SUPERIOR, MUNICIPALITY (CUSTOM), UNLAWFUL IMPRISONMENT.

The Custom , Usgae, Practice Procudce of institutiong and subjecting the plaintiff ALEXANDER WILLIAMS JR, to a solitary confiement that the defendnats knew or should have known was no longer apporitae and was against NYS and NYC Corr Laws, is proof that these defendants, CITY, WARDEN COURT, JEAN RENEE, DW FLEEMING, DW JONEELLE SHIVRAJ, TIFFANY MORALES, DW LISA BARNEBY, DW JOANNE MATOES, CATP FERNANDEZ, ESU OFFICER RCIHARTDS #254, ESU TEAM MEMBERS FROM BOTH OCT 12, AND OCT 26, 2022INCIDENTS, CAPTIN GAINES, (SECURITY CAPATIN), CAPTIN WIGFALL, DR DUVERN, PRESTON RITTER, ADNREW HICKSON, KEVIN YOUNG, KEVIN WHITE, GRAVES, RAHMAN, LUOIS MOLINA, ERIC ADAMS_____ , engannged in a conduct that they knew wes unlawful and was used pursposes to deter and/or to affect the plaintiff ALEXANDER WILLIAMS JR, criminal and civil cases in an adver manner in hopes of gaining an unfavorable outcome for the plaintiuff ALEXANDER WILLIAMSⱫ JR,.

Further pro6f of this facts is that Southern district Judge LEWIS LIMAN who is the judge preciding over the matter of <u>ALEXANDER WILLIAMS JRV. CITY OF NEW YORK ET AL,</u>  19-CV-3347 (LJL), found the needed in the matter to isue Defendnat BERNARD MATHIS  by way of his Corporation coundel attorney a stark warning that he and other DOC Officals some named herein needed to tread lightly, and if he found out that there were conduct that was takltg place that was geared towards changging the course of the matter in whihc he is persiding over he himself would persue federal charges.

The warning was issued after attorney who represented the plaintiff in that case from the law firm of PAUL, EISS, RIFKIND, WHARTON & GARRISON, presnted evidence in the form of testimony, of affidavits from Eric Abrams Esq explaining tha tthey had spoken to numerous witness(es) to conduct from DOC Officials who was stating that their conduct was geared towards the plaintiff because he would not dismiss his lawsuit against CAPATIN BERNARD MATHIS.

Furthemore the usgae of the 23/1 was affecting the plaintiff case by way of limiting his communication with each of his attyorneys, JULIE CLARK, JEFFREY CHABROWE, ERIC ABRAMS, HILLARY BLACK, DAN BELLER, ROBERT OLOUGHILN, TRACUIE A SUNDACK1, WHIHC WAS AFFECTING THE WAY THAT THE PLAINTIFF MARSHALLED HIS DEFENSE IN EACH OF THE MATTERS IN WHIHC THESE LAWYERS REPRESENTED HIM ESPECIALLY THE CRIMINAL MATTER WHIHC WAS THE MOST IMPROTANT.

WHEN THE plaintiff reached the point of beliving that he had no way of stopping whatr was taken placed as described herein, it lead to numerous occassions of being placed on Sucicde watch, numerous occassion where he wrote his attroney and contemplated pleading guilty to a murder tha the didnt commhit and many occassions of contemplating dismissal of civil litigation is order to stop the injuries tha twere purpsoesly being inflicted upon him.

The Courts has already noted in more recents years a ahndful of cases where the New York State Appealatte courts dismiss cases where defendnats pleaded guilty after being showed evidence when prsion condictions and long entened  waits before commencemnt of trial prejudiced the defendant and affected his defense.

By way of the 23/1 lockdown order and the conduct in whihc it was used against the plaintiff in, he was prejudiced by lack of commicnation

with his defense team and private inveigations and investigators, that
prevented him from instructing them to speak with witness(es) that had
either died  by time he was able to do so as in an eye witness by the
name of **SHELIEAN WEESWELLS R**, witness to the alleged eye witness in
his murder case who wrote the Kings County District Attorney Office
and stated that she was a family member of the person stating tha tthey
witness the plaintiff commit the shooting but was lying to cops. By
the time the plaintiff became aware of this his investigators were two
years behind the 8 ball and was unable to locate the person at the address
left on the envelope that was mailed to the DA office.

      This i sjust some of the ways that the 23/1 unlawful; lcokdown
was prejudice to the plaintiff **ALEXANDER WILLIAMS JR**.

      Which nearly lead to the ouctome of him pleading guilty just
to get free from being subjected to such unconstitutional conditions.

PLAINTIFFS' LEGAL ARGUEMENT IN SUPPORT
OF RECIVING INADEQUATE MEDICAL CARE AS WELL AS
DEFENDANTS CONDUCT OF BEING DELIBERATE & INDIFFRENT
TO HIS MEDICAL CONDICTION AND MEDICLA EMERGENCIES

The plaintiff has displayed throughout this complaint the
times that defendnats named herein refused to contact medical
when he was in need of a medical emergency even when being informed
that the plaintif may have been bleeding internally.

To add to this arguement the plaintiff wouylld like to display
to the court the following Greivance/complaints filed that support
that the denial to medical care was deliberate and tied to a
Custom, Practice, usgae, Procdedure and/or rule of the defendants'
CITY in hwich restricted the plaintiff from proper care even
after abd before a life changging surgey in the removal of his
GallBladder.

On August 07, 2022 the plaintiff suffered an astma attck
from heat exhaustion and medical was not afforded when he requested
see **EX-1.**

On August 13, 2022 the plaintiff formally complained about
not being proiduced to over a 100x medical appointments see **EX-
2.**

On AUgust 25, 2022 the plaintiff filed a grievance in regards
to not recieving medical care and someone other than himself
signing refusal forms or saying t5hat he refused, See **EX-3.**

On Augsut 31, 2022 the plaintiff filed a griavnece in regards
to DOC officals and trhe SRT team preventing him from going to
the facility clinic after he was ummoned due to having a mental
breakdonw whihc his mental health records support the serve mental
issues that he has, See **EX-4.**

On August 31, 2022 the plaintiff filed a grievance displaying that he wa shaving sharp pains and belived that it was due to a gallbladder infection recognizing such from having the same issues medically in the past, See EX-5.

On August 31, 2022 the plaintiff filed a grievance documenting that the doctors are conducting sick-call rounds before the housing unit is up and failing to inform the inmates that thgey rae present to take their medical request, See **EX-6.**

On August 31, 2022 the plaintiff filed a grievance documenting that  he was having a constant pain in his right shoulder and wrist and a tear near huis analarear due to an extraction and was being denied care for such since Jan 13, 2022, See **EX-7.**

On September 1, 2022 the plaintiff filed a grievance in regards top having a serve constant pain and DOC officials failing top produce him for surgey appointments as retalaition, See **EX-9.**

On September 3rd 2022 the plaintiff filed a grievance showing that DOC Officials removed his sucide watch officer because the facility claimed to be short of staff, See **EX-9.**

On September 1, 2022 the plaintiff filed a grievance complaining of sharp pains in his staomach area, See **EX-10.**

Herein the complaint the plaintiff reference EX-H AS BEING A COLLOGE OF MEDCIAL DOCUMENTS SHOWING THAT HE MISSED OVER 50 DIFFRENT MEDCIAL APPOINTS.

**EX-1-10** including **EX-H** displays the delebrate in DOC officials as well as the plaintiff  when it was in regards to the plaintifss medcial care.

Defendants herein inclduing defendant **CITY**, by way of DOC oficials maintained a custom, usage, practice and policy that

inheriented the defendnats and other DOC Officials with the power
to delay, prohibt, or cuase to delay and prohibits inmates inclduing
the plaintiff **ALEXANDER WILLIAMS JR**, from being provided with
meical care duriing medical emergenices and making decision in
regards to people medical care when City Polcies tstae that all
medical decison for pretrial detainees shall me made by medical
personnel only.

In **EX-H** the court wuill find numerous occassion when the
plaintif was not produced for nusing and the reason for such
non-production is not listed, whereas  DOC Officials are not
privligae to inmatesinlcuding the plainff **ALEXANDER WILLIAMS
JR,**  medical needs and medicsal condictions and unaware if nonproduction
can be hazardous to the plaintiff rights and healths.

In **EX-H,** THE COURT WILL FIND NUMEROUS MENTAL HEALTH REQUEST
FROM MENTAL HEALTH PERSONNEL WHERE THE PLAINTIFF WAS NOT PRODUCED
**without DOC oficials** having knowlddge if these nonproductiopns
are hazardous to the plaintif fmenhal health care.

These denial without substaintial reason at such a high
rate and high amount constitute deliberate indiffrence to the
health of the plaintiff  **ALEXANDER WILLIAMS JR.**

In The instances before and after the plaintiff gallbaldder
Surgey the defendnat named herein as well as other unmaed DOC
Officials failed to produce the plaintiff to medical emergencies
and medical calls outs and post surtgey appoints at Bellvue hoppital
and the facility clinic without care and without knowing of the
seriousness kaxpaxaxaxaxkxxthat such denial posed to the risk
of damage to the plaintiff's health even when it was obvious
that the nedd for medical care was urgent like when the plaintiff
weported that he was bleeding from his rectum and experining

sharp pains in the area where he had just had surgey, See <u>HATHAWAY</u>
<u>V. COUGHLIN,</u> 99 F.3d 550, 553, (2dCir. 1996)

Any reasonable person who is infgormed by another that they
are bleeding and in serve pain would assume that said person
is in need of immedately meddical care.

In the matter before the court not only did the defendnat
failed to address the plaintiffs' ALEXANDER WILLIAMS JR , MEDICAL
ISSUES WHEN HE  reported them to them the defendaas CITY established
a written polciy sen in EX-a, WHICH DOUMENTS JUST BECAUSE THE
PLAINTIFF IS CLASSIFED AS BEING A cOURT ORDER lCOKDOWN INMATE
THAT HE AND OTHER LIKE HIM IS NOT ALLOWED to be seen or seek
medical attention and medical care at the facility clinic area
unless it is in need of a mmergency and when the emrgency did
takle place dOC Officlas still maintain such a pract, usgag and
polcit, custom.

As a result of such practices, customs, usgaes and procedures
the plaintiff suffed damage that is is repparibale and his Const
righst in various Amendments were violated as a direct and proximate
cause of the defendnats condcut.

## VIOLATIONS UNDER 42 USCS § 2000DD

42 USCS 2000dd ensures that no individual in the custody or under physical control of the United States Government, regradless of nationality or physical location, shall be subjected to cruel, inhumane, or degrading or punishment.

The plaintiff explains and list fottage as supporting evidnce that on Jan 7, 2023  he was ordered to stand naked in the middle of his cell with his hands behind his back for over two hours, while other inmates were not subjected to such. While standing naked the plaintiff explains that he was  placed on display and named serveral SRT team members by vest number who came and turn the lights off and on for female officers to laugh and see the plaintiff, to make sure that the plaintif was still naked and to mistreat the plaintiff in a crual and inhumane fashion.

As a result of such treatment the plaintiff explains that he became depressed and sucicdal and informed mental health staff MS KOONEY of such on Jan 12, 2023 at approxmately 3:00am.

### VIOLATION  OF PLAINTIFF RIGHTS PURSUNAT TO THE AMERICANS DISABILITIES ACT TITLE II 42 U.S.C. § 12131 ETSEQ

The plaintiff has been incarceratted at the New York City department of Correction for over five years now. Since being incarceratted the plaintiff has been diagnoised with the following disabilities:_____

_____, and has been perscibed medication to address these medical mental health issues.

The plaintiff is also rutuniedly seen by mental health doctors and clinicains for counseling in addressing and healing with the mental issues that he has.

The plaintiff also has an history of pediatry issues that lead to him being given a cane, and has recently been having isues hearing is is a known asthmaitic detainee.

The plaintiff describes the condiction that he was forced to lived under (1) not having any hot water to shower in even though a work order was placed in to fix the hot water the plaintiff was never moved to a diffrent cell or unit where the water was not freezing cold, (2) not being able to use his cane to walk due to constantly being placed in  Enhance Restarint set up illegally without due process, (3) not being allowed to see sickcall and/or mental health staff as on Jan 11, 2023 and on Jan 12, 2023 being subjected to discuss his mental health confiential business with mh MS KOONEY  in the presence of defendnat SRT #135 sheild number 8957.

The plaintiff serverally belives that the treatment was done to him in relation to ongoing civil litiagtion whihc also violates numerous other federal protected rights mentioned herein.

Exhibit-N herein being the plaintiff CANR PERMIT supports tha tthe plaintiff legally possed cane to assist with his walking disabilities. The defendants WARDCDEN COLLINS, CITY, WARDEN CORT bach maintined a CUSTOM, PRACTPOLICY, PROCEDFURE OR RULE  where the plaintiff cane was seized leaving him to hop and limp around hosuing unit without reason, "NOTICE": or hearing where he could present eveidnce as to the fact that he has a diisability Right to posession of walking cane at all times.

And that on Jan 24, 2023 the plaintiff ALEXANDER WILLIAMS JR was subjected to hoping around from law library cell to his cell from his cell back to shower area and from shower back to his cell.

On the evening of Jan 24, 2023 at approxamately 9:25pm the plaintiff was not able to stabalize himself getting out of his bed and fell striking the wall with his head, suffering a head knock from not having immedatley access to his cane.

On Jan 25, 2023at approxamatelyt 2:00pm the plaintif was subjected to hopping from his cell to the front of the housing unit to be provided recreation due to the polciy of not being medically accomendated by Defendnat

named herein this complaint speifcially CITY and WRADEN who seem to be
aware of such but disregarding plaintiff medical needs in medical accomendation
and moving him to suitable housing that fitrs his needs.

## PRELIMINARY INJUNCTIVE RELIEF:

As seen herein as Exhibit-C the pl;icies that surround/govern NYC DOC Red I.D/Enahnce Restaint classification and usage the plaintiff demand injunctive relief in the ofrm of a Memoranudm and a Pedigree as well as being placed in his floor card that he is not and Enahcne Restaint Classifed inmate.

The defendants can only admit that the plaintiff was never given a hearing whihgc is needed by their own polcies and whihc is required by law espeically since the plaintiff clearly indicates that the enhance restarint set up was used against him in a Punityive fashion by his believth.

There is no evidence that the plaintiff alexandere williams jr book and case number 141-180-1532 has ever been found guilty of any form of assualtive behavior, posession of any form of weapon, cell phone, knife, scalpel ect, in the last five years under this book and case number whihc viods the defendants of such calims as an affirmative defense.

Due Process Procedural and Substaintial is the Corner stone of the Fourthteen Amendment and  is known throughout the Court system to be cruail in the evnts of violations involving pretrail inmates as well as convicted inmates. Example of such is the matter of  DAVID WILLIAMS V. NEW YORK CITY DEPT' OF CORRECTION 2005 U.S. Dist. LEXIS 9393 (S.D.N.Y. MAY 2ND 2005), where the Court in this circuit ruled summary judgement  in favor of pretrial detainees such as the plainitiff in this case ALEXANDER WILLIAMS JR  is where DOC failed to provide timely hearing and medical review for enahnce reatrsint red I.D. Status.

Other  precedent case law such as  WOLFF V. McDONNELL  413 U.S. 539 SET THE PRECEDENT as in regards to the ned for Due Process, Notification and hearing befa subjecting even a convicted prisoner to sacntions and deprivation not subjected to the average prisoner within a facility.

Other Preliminary Injuctive relief that the plaintiff sought is as follwed:

Plaintiff demand to be produced to every medical apporntment that he is called for. The plaintif fsuffers from numerous medical condictions and has surgey appointments, therapy appoidhs and nursing appoints that he is never produced to and medical records state no reason plaintiff is not produced to these appointments.

In more recnt cases law such as the matter of A AGNEW V N.Y.C. DEP'T OF CORRECTION., 2021 N.Y. MISC LEXIS 6134, the Department of correction was placed in contempt when not abdiding by the orders of Bronx Justice Honorable Elizabeth a. Taylor.

In the plaintiff case it seems as the pOlaintiff made claer that his denail of medical care is tied directly to being retalaitory due to his grievances and ongoing civil litigation naming high uppers DOC offocials such as Charlton Lemon, Louis Molina and Mayor Eric Adams in the case of WILLIAMS V. CITY OF NEW YORK IT AL., 22-CV-3919 (PGG)(KHP) and  WILLAIMS V. CITY OF NEW YORK ET AL.,  22-CV-10537 (UA).

In the year of 2022 over 20 inmates died on Rikers Island and DOC officials tied most of the death to on going medical issues already pnsessed by these detainees. That being their legal arguement an inmate such as the plaintiff who has already had two close to death medicla incidents should never miss a medical appointment at all.

CAUSES OF ACTION IN THIS COMPLAINT

## REQUEST FOR DECLARTORY RELIEF:

The plaintiff is also demanding Declartory Relief in the form of correcting and chagging the plocies of CLO **13/21** as it relates to its entirity due tothe fact that the signing of New York State Halth Act prohibits one from being hosued in any fashion of being 23 hours locked in a cell perd day.

Also that CLO **13/21**, progibits detainees from being able to go to the facility Clinic, Law Library, and Social Service ares.

Also that CLO **13/21** Authmatically classifies Court Orders inamtes as being Enhance Restarint Status without affording Due Process hearings and that it is also classifying detainees as being Captin Escort whihc is another stuats used by Newa Yoprk City Department of Corrections for punitive purposes.

THEplaintiff ask fro declartory Relief in the form of stopping completely the usgae, polciy, practicve of monitoring, listening, interfeing with any detiness communication with an Attorney by way of recording, calling and speaking to be fore allowing the detinee to speak or standing near in ear shot distance.

The plaintiff demand Declartory Relief in the form of ordering the defendnat **CITY** by way of NYC DOC to produce the plaintiff and all detinees to any/all medical appoints inclduing those within the facility as those outside of the facility.

The plaintiff demands Declartory Relief in the form of Adqaute Training to Securiby Officers in relatioins to knowing the Constitutional Rights of any/all classification of Detainees in all aspects.

It is clear that the defendnat named herein this complaint that are assigned the position of Secuirty Officer lack the tarining

7/

mental capacity, matuirty, or supervision to know the rights
of the inmates in whihc they are employed to come in contact
with or are ordered to enageg in certain acts with.

These officers may be live that they are acting within the
scope of their duties when in actually their conduct is not within
the scope of their employement whihc is support and pro6f or
being poorly trained and supervise in areas of the alw in its
entirty.

The plaintiff ask that the Courts, The federal Governement
and others be taksed with creating and instituting a comprehensive
plan with realestic goals tok reach a level of compliance within
the facilities that make up Rikers ᶻᵃⁱˣwIsland.

## AS AND FOR A FIRST CUASE OF ACTION FOR
## VIOLATION OF FIRST AMDNEMENT RIGHTS PURSUNAT
## TO U.S.C. § 1983, 1985 & 1986

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each and every paragraph of this complaint and further allges:

The defendant's named herein did engage in conduct that constitued a violation of plaintiff first amend rights that (1) relaitited against the plaintuiff and condcut that was not tied to any legitimate penological intrest of the defendnat CITY, (2) was geared towrds intimindating, tampering and otherwise affecting the outcome of the plaintiff pending Federal Litigation be it as a witness or proceedings, (3) did place a subtsiantial burden on the plaintiff FREEDOM OF RELIGIOUS BELIEVTH , that is protected under the FREE EXERCISE CLAUSE of the FIRST AMENDMENTX OF THE CONSTITUTION, (4) did restrict/denial plaintiff from access to the court, access to incoming and outgoing mail to attorney's and the outside world, grievance, and petitioning the government .

As a result of the defendant's conduct grievances and litigation of the plaintiff was curtials when defendants condcut and action mentioned herein was received by the plaintiff as being designed to intimidate, place fear and to prevent the plaintiff and /or stop the plaintuiff from proceeding with civil litigation and greiavnces as threats seen herein EXHIBIT-C.

As a result of the defendants conduct / actions the plaintiff suffered injuries to the mind. body and soul to the degree that said injuries are irrepairable leaving the plaintiff with scars eternally.

## AS AND FOR A SECOND CUASE OF ACTION FOR
## EQUAL PROTECTION CLAUSE PURSUNAT TO 42 U.S.C.
## § 2000cc AND FREEDOM EXERCISE CLAUSE

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each and evry paragrah of this complaint and further alleges:

The defendnats maintain a polciy seen herein as  EXHIBIT-=A  that the defendnat were for warned violated court order inmaytes righst as it goes to religious freedom and religious text in that of COMMAND LEVEL ORDER 370.20 whihc was a mirror image word for word the same as COMMAND LEVEL ORDER 13/21 seen in exhibit-A , see this establishement by the court in a recnt case of FLORES V. CITY OF NEW YORK , 2022 U.S. DIST LEXIS 179347, 2022 WL 4592892 (S.D.N.Y. SEPTEMBER 30, 2022); and ANDUZE V.CITY OF NEW YORK , 2022 U.S. DIST LEXIS 177927, 2022 WL 4547420 (S.D.N.Y. 29, 2022).

In that the parctrices usgages and rule of the defendnat placed substaintial burdens on the plaintiff religious righst without any legitimate penological inrest or reason at all.

As a result of the dfendnat conduct the plaintiff was not allowed to enage in his religious studies of Judaism and was not afforded kosher meals grape juice and matzah crackers as pursunat to his religious deiaty and said conudct was purposely enforced as punichment upon the plaintiff. Along with the plaintiff being vidoe recorded whiole praying sometimes naake when praying.

As aresult the plaintiff usffred injuries on the mind, body and soul atht are irrepariable injuries that wil be everlasting in nature.  CLO 370.20 could bee seen herein as EXHIBIT-12 for comaprison to CLO 13/21 seen herein as EXHIBIT-A.

<u>AS AND FOR A THIRD CAUSE OF ACTION FOR
VIOLATION OF EQUAL PROTECTION RIGHTS PURSUNAT
THE SIXTH AMENDMENT COMMUNICATION WITH
ATTORNEY'S AND COURT</u>

Plaintiff  ALEXANDER WILLIAMS JR,  repeats, reiterates and reallegseach and every paragraph of this complaint and further allges:

The defendnat conduct from Jan 7 2023 - Jan 16, 2023 did violate the plaintiff righst as it is pursunat to his Sixth Amendment right to communicate with counsel in opriviate when defendnats from SRT stood in front of glass window and listed to the plaintiff legal conversation with attorney SABINA KHAN.

And that defendnat engaged in conduct as a policy as GRVC where defendnats stood in front of plaintiff cell and listened to conversation with various attorney's that

defendant were aware were legal calls and attorney that were approved by the Judge in his JLO as legal personell.

And that defendnat purpsely interfered with plaintiff's with plaintiff's corresponace with attorney's and the court and cuased the plaintiff to mis the opportunity to object to counsel request for extention in his civil matter of <u>WILLIAMS V. CITY OF NEW YORK ET AL, 21-CV-1083 (PGG)(KHP)</u>, and that said interfernce was without legitimate penological interest and was geared towards harming, intimidating or otherwise installing fear into the plaintiff fro the contiunace of litiagtion against DOC and CITY officals..

As result to defendant conduct the plaintif falso lost out on the opportunity to respond to FIOA matters with DOJ and had to start the process all over gaain.

The conduct violated the Equal Protection Rights in pursunat to Sixth Amendment as other inmates detainned at RIKERS ISLAND are not  subjected to :

- LISTENING TO /MONITORING COVERSATION WITH THEIR ATTORNEY'S
- THEIR LEGAL VISIT BEING MOINITORED AND LISTED TO BY DOC STAFF
- THEIR LEGAL CORRESPONDACES BEING CURTIAL/ RESTRICTED AND OTHERWISE STOPPED GOING AND COMING
- THE FACILITY CUTTING OFF OR MINIORTING CALLS WITH ATTORNEY'S WHILE ON THE PHONE

- USB WITH DISCOVERY BEING CONFISCATED AND NEVER RETURED WITHOUT CUASE OR REASON

AS AND FOR A FOURTH CAUSE OF ACTION FOR
<u>VIOLATION OF THE SIXTH AMENDMENT IN RELATION TO
CONFIDENTIALITY AND PRIVILAGE COMMUNICATION WITH
HIS DEFENSE ATTORNEY'S AND OTHER LEGAL ATTORNEY'S</u>

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each and every paragrah of this complaint and further allges:

Defendants each either directly enaged in conduct that moniroed limited restricted and/or listed to plaintiff legal calls and cobersations with his attorney or signed off on , created and endorsed such a policy that violated the  plaintiff cominication with counsel.

And that defendnat CITY and other named herein and not named enforced an illegal JLO that restricted the plaintiff from consulting with other counsle by calling and engaging in attempts to hire other defense counsel and cilif counsel to assit in matters of legal

that the plaintif fhad going, by enfrocing the restriction laid out in the Judges Court order and resticting his calls to only that of the attorneys listed in JLO.

And that defendant were placed on notice that such conducty violated court order  inam RIGHTS  in the matters of JOHMANNI ANDUZE V. CITY OF NEW YORK , 2022 U.S. DIST LEXIS 177927, 2022 WL 4547420 (S.D.N.Y. SEPTEMBER 29, 2022) ; and  ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL 21-CV-1083 (PGG)(KHP) AUGUST 5, 2022 REPORT AND RECOMMENDATION.see EXHIBIT-11 and EXHIBIT-15 herein.

And that defendnat Training and duities should have informed them that such coinduct was illgeal wrong and violated plaintiff's rights and the engagement of such conduct should leave these defendnats liable individually unless defendnat CITY is wiling to admit that the  training is faulty, lacking and bad.

The existance of the prior cases and the contiuation of such cases supports that defendnat Maintained a CUSTOM Polciy, usgae and practice of defendnat CITY.

### AS AND FOR A FIVTH CAUSE OF ACTION FOR VIOLATION OF DUE PROCESS RIGHTS PURSUNAT TO THE FOURTEENTH AMENDMENT UNDER STATE AND FEDERAL LAWS

Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates and reallges each and every paragraph of this complaint and further allges:

The polciy seen herein EXHIBIT-A and EXHIBIT-34 violates the plaintiff rights as it dictates that the plaintiff (1) automatically is to be considered ENAHNCE RESTARINT STATUS  without hearing or notice ( 2) that plaintiff's and others are to be left in ENHANCE RESTARINT SET UP  while in the rec cage for an hour , (3) that plaintiff is autmatically restricted from recieving Medical care at the facility clinic, (4) that the plaintiff is automatically restricted from sending out mail, whihc is all clear evidence that the conduct that defense enaged and enforced upon plaintiff was punitive in nature and that the living condition was designed to be punitice in nature without affording plaintiff and others alike  the ue Proces Rights garuantee by the United Sates Const.

EXHIBIT-35 is further proff that defendnat did enaged in said restriction without affording the plaintiff a hearing and a noitice as stated in DOC polciy seen in EXHIBIT-30 herein.

And that plaintiff rights as referring to Due Process and those alike are violated in EXHIBIT-a dn EXHIBIT-35 wheras the polciy dictates that BIBLE will be only religious text allowed and that Koshers are restricted withouyt due process and that plaintiff's and others alike are placed on Recreation restriction perioically without due process as a normal factor leaving plaintiff and others otherwise locked in cell for 24 hours a day.

All which is illegal as seen by New York state and New york City state law and correction law as seen herein EXHIBIT-26 the HUMANE ALTERNITAIVE TO LONGTERM SOLITARY CONFIENMENT ACT  passed by the stae in janurary 2021.

Defendnat CITY is liable for failing to inform Supreme Court Judges and the UNIFORM COURT SYSTEM that DOC no longer could house plaintiff and others alike in a 23/1 fashion but rather in a 17 hour fashion at the most as stated in the HALT act and furthermore that defendant CITY was on notice for such issues stating on-going polictial battles over the isue on no bbx plicy for the most violent inmates on Rikers Island aw well os being placed on notice in the folliwng cases : BELL V. WOLFISH, 411 US 520 ;  also BELL V. WOLFISH 99 S. Ct. 1816;  also  BEST V. NEW YORK CITY DEP'T OF CORR 14 F. Supp 3d 348; and  BENJAMIN V. FRASER 264. F. 3d 175.

And that the defendnat CITY was aware that the courts reject the stoppage of the HALT act in a matter that is widely recognized in  N.Y. STATE CORRECTION OFFICERS & POLCIE BENEVOLENT ASS'N  V. HOCHUL, 2022 U.S. DIST LEXIS 107145, 2022 WL 2180050 (N.D.N.Y. JUNE 16, 2022) whihc was a last ditch shot to bring back 23 hour and box units.

Defendant  did enaged in conduct that constituted a violation of the plaintiff Due Process rights and that defndants did so knowly and willingly for reason other than reasonable.

(a)     The plaintiff was placed in 23 sometime 24 hour solitary confinemnet like conmditions;

(b)     The plaintiff was classifed and treated as being ENHANCEW RESTRAINT even though

there was no official DOC documentation that supported that plaintiff was given NOTICE a hearing or was actaully ERS status.

(c)     Each defendant has direct access to the INQUIRY system that is the computer at every bubble station in each unit that can be accessed and reviewed to determine if DOC intranet system to see if plaintiff was ERS

(d)     Each defendnat had access to plaintiff floor card tro determine if he was Jewish

and should be afforded religious meals and poesseesion of religious Jewish material

(e)     defendnat CITY was placed on notice that ploicy, practice violated the plaintiff rights in the matter of ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL 21-CV-1083 (PGG)(KHP) REPORT AND RECCOEMNDATION AUGSUT 5, 2022.


## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## EQUAL PROTECTION RIGHTS PURSUANT TO DUE PROCESS

81
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Plaintiff ALEXANDER WILLIAMS JR , repeats, reiterates and reallges each paragraph of this complaint and further allges:

That the defendnat Robbed the plaintiff of the same eqaul Protection Due Proces rights as those inmates that are detianedd in other fracilities through Rikers Ialsnd and the other jails maintained and ran by defendnat CITY

As a result of the violation stated in Quase of actions Five abd Six the plaintiff suffered injuires that are irreparible in nature humilated and mental tramu that he would not have faced otherwise the conduct engaged in by the defendants.

The plaintiff was placed in solityary confined a setting that was abolished by the law withouit his consent and suffered mental deiases and tram that constitues injuries stated herein.


## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## FAILURE TO PROTECT UNDER STATE AND FEDERAL LAWS

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each paragraph of this complaint and futher allegs:

That the defendnat failedc to adbere to seperation of the plaintiff and inmate Christopher CAno as form the incident that is mentioned and core of the complinat in the matter of WILLIAMS V. CITY OF NEW YORK ET AL, 22-CV-3819, and did so knowingly and willingly

disregarding their mandorty duites.

Then defendnat did the same whne plaintiff was subjected to being housed in same facility with defendnat ERIC GANIOUS who maintained the position of SECUIRT CAPTIAN and had insituted a department wide seperation by way of affidavit seen herein as EXHIBIT-39.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR VIOLATION OF EIGHTH AMENDMENT RIGHTS PURSUNAT 42 U.S.C. 1983 CRUEL AND UNSUAL PUNISHMENT

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each and every paragraph of this complaint and further alleges:

defendnat were well aware of the HALT act and the fact that is discontinued solitary cc condinement, SHU/BOX and 23/1 lockdown but engaged in conduct that contiuned this callsificati and housing when it came to the plaintiff and other alike.

defendnat LOUIS MOLINA, ERIC ADAMS and THOMAS GRIFFIN and AC MILLER have given public and unpublic interviews in regards to this exact setting of detention and confinement a yet walked toured the lockdown housing unit with full knowldge that such unit had been abolished by HALT act.

Each defendnat had acces to an entire legal divsion of New York department of Correction legal where they could have asked for guidance in regards to the seeting and questioned whthger a judge had legal authority to over ride a state and correction law.

defendnat each of them could have contacted DOC and LEGAL liaosn person and ask that and email be sent to to court seeking guideance due to the passing of the HALT act law.

As stated herein each defendant had intimate knowldge that defendant CITY and DOC no longer housed detainees in a lockdown fashion or manner for any reason pursuant to NYS and NYC correction law .

At each and every instance stated herein this complaint defendant conduct was committed agaainst the plaintiff while or durring plaintiff was lockdown in exact setting as that of the BOX whihc is punitive with no end date under solitary confirnment .

As employee holding the title as "PEACE OFFICERS": each of the defendnats are also bou by duty toi protect and enforce CITY, STATE and FEDERAL law and each faailed in their duites as such.

In aach instance each defendant failed to live up to their OATH as a PEACE OFFICER and engaged in condtc/action that was Abritary and Caprioucios causing suerve injuires to the plaintiff ALEXANDER WILLIAMS JR, as well as enaged in constant behvaior because of the plaintiff's practices that rightfully challenged poilcies and laws of his confinement as he had the right to do .

Thje defendnat enaged in conduct that denied the plaintiff libery the right to cleaning his cell , a clean and health enviorment, that subjected the plaintiff rto being lock in a cel lwithout medical recreation, telvision, reiligious material, food pursunat to his religious diet and caused the plaintiff to live in INHUMANE liuving condition as punishment while other in same classification was afforded opportunity to use the bathroom and not a garbage bag to bathroom i, to have a tv in there cell or in front of their cell, to engage in freedom of religious practice and more.

This condcut was the direct and proximate cause of the plaintiff attempting sucide on numerous occassion, being a mental health patient and being subjected to inadquaate medical care while in the custody of the New York city Depoartment of Correction.

AS AND FOR THE NINTH CAUSE OF ACTION FOR
VIOLATION OF EQUAL PROTECTION RIGHTS
PURSUNAT TO THE EIGHT YH AMENDMENT 42 U.S.C. 1983

Plaintiff ALEXANDER WILLIAMS JR,  repeats reiterates and reallges each paragraph of this complaint and further allges:

that the defendnat knwoingly, willingly and pursoely enaged in conduct that wa
geared towards violating the plaintiff equal protection rights as that other court order
lockdown inmate are housed in a fashion as West Facility and N.I.C. where they have acces
to TV's in their cell and the plaintiff is not.

The defendnat violated the plaintiff equal protectiobn rights where other court
order inmates  right in the same housing unit with the plaintigff had access to a telvisdon
of their own like RICKY TORESS in 1a cell andx7 and cells 2- 5 in 1a as well.

The defendnat knowingly, willing and purpsoley violated the plaintiff due proces
and eqaul protection rights where the other inmates where not subjected to three cameras
recording them when they showered and sleep naked in their cell at west facility such
                                                                    officers
as the plaintiff was, and that the plaintiff was in a glass cell where inmates male and
female and inmates accross from him could view him showering and getting dressed.

xxxxxxxxThexdefendnat
The defendnat violated the plaintiff equal protection rights when the plaintiff was su
to having to meet and speak with mental health staff in the ear and  eye sight of other
inmates, correction staff and in a manner that violated medical and patient relation confident
lity and other inmates were not subjected to the same.


### AS AND FOR A TENTH CAUSE OF ACTION FOR
### VIOLATION PURSUNAT TO THE FORUTH AMENDMENT
### 42 U.S.C. 1983 UNRESOANABLE INTRUSION


Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates and reallges each paragrah of th
complaint and further allges:

The defendnat, did sunject the plaintiff to unreasonable intrusion and did engage
in conduct while plaintiff was under unreasonabel intrusion circumstances and did search
plaintiff stripping him naked knwoingly that plaintiff was being recorded while being
naked whihc is against CITy and DOC polcies, and that their was no penoligical legitimate
inrest in doing so.

the defendnat violated the plaintiff rights as it relates to the foruth amendment
of the United sates Constitution wheereas defendnat had already reached an agreement in
this same matter and accepted a settlement in the case of  NUNEZ V. CITY OF NEW YORK ,
2015 U.S. DIST LEXIS 176190 (S.D.N.Y.) JULY 10, 2015)  where it was outline in the section
makered settlement under "COMPREHENSIVE VIDEO SURVIELLANCE OF JAILS"; DOC will install
suffieicnet additional wall-mounted video survillance cameras throughout the CITY jails
to ensure complte camera coverage of CITY JAILS, with certain narrow exceptions such as
the interior of SHOWER AERAS and TOLIET ARFAS. Defendnat CITY agreing that such would
be properly in place and complted by February 28., 2018. The plaintiff complaint herein
surpassed this date by five years and the defendnat CITY is void of any legal arguuent
that would cure a reason why there would be cameras in a plaintiff or innate cell video
recording shopwer and toilet areas and conducting strip searches under these same conditions.

~~ASXANBXRBXXANXKKBYNXNNXEARBEXBXXAEXXBNXRBX~~
AS A RESULT OF THIS CONDUCT AND FACTOR THE PLAINTIFF'S RIGHTS WERE VIOLA
AND SUBJECTED THE PLAINTIFF TO INJUIRES IN THAT OF MIND BODY AND SOUL AND
THAT HIS BODY AND OTHER PARTS WERE RECORDED AND UNLAWFULLY STORED WITHOUT
HIS CONSTENT OR THE DEFENDNAT HAVING PERMISSION TO OTHERWISE DO SO.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR
### RELEIF UNDER NEGLIGENCE UNDER 42 U.S.C 1983

Plain8tiff AALEXANDER WILLIAMS JR, REPEATS,  REITERATES AND REALLGES EACH PARAGRAP OF
THIS COMPLAINT AND FURTHER ALLGES:

At all times herein defendnats CITY was in charged with the hiring, training,
retention and direction, syupervision, discipline and oversight and promotion of all correctiou
officers, supervision and staffing its employments including but not limited to the defendnats
named herin as employees of defendant CITY.

At all times allged herein defendant CITY assumed a duty of care to plaintiff
ALEXANDER WILLIAMS JR.

aT ALL TIMES ALLGED HEREIN DEFENDNAT city WAS ENTRSUTED WTIH A SPECIAL DUTY FO CARE TO THE PLAINTIFF alexander williams jr.

Defeadnats CITY and its agents servants employee including but not limted to thoise named herein owed a duty to reasononable care to protect the plaintiff ALEXANDER WILTLIAMS JR, while he was in their custody, control and care.

Befendnat CITY, its agents, employees and/or servants, including but not limted to those named herein this complaint, owed the duty of affording the plaintiff AALEXANDER WILLIAMS JR, Due Process rights of a hearing before limiting restricting him from that of medical care, being enhance restarint, placed in solityary confinemnet with hareaing, affording himmedical teratment in area area fit for the criteria under NYS for medical treatment verus being exmained through a cell door window, being restricted from being able to practuice the religion of his choice, being able to be afforded meals pursuant to his religious deit, being afforde recreation without limitation and restriction without a hearing, being afforded right to meet and speak with consel in a confidential manner and whatver other violation that the court may find after conscruing the plaintiff's complaint as liberal as posssible.

As set forth above defendant CITY and its agents servanta nd employees including but not limted to those named herein knew or show have knwon by reasonable diligence that their conduct was displaying the propensity to angage in such conduct that would violate the plaintiff and other alike rights

The defendnat inclduning CITY should have know that their conduct was also unacceptabl from the matter of PEOPLE EX REL, BRUSE V. SCHIRALDI, as well as the daily news artcles where supreme court Justice Elizabeth Taylor released inmates without bails over the exact kind of condition described by the plaintiff herein this complaint.

## AS AND FOR A TWELFTH CAUSE OF ACTION FOR
## INTENTIONAL INFLCITION OF EMOTIONAL DISTRESS

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each paragrah of this comop;laint and further allges:

As set forth above and within this complaint the defendnat named herein aforsaid condcut was Intentional, Malicious and execessivie and served no reasonable or legetimate penological government interest.

The enforcement of restricting the plaintiff AALEXANDER WILLIAMS JR, from ENGAGING IN PRACTICE OF HIS RELIGION, RESTRICTED FROM RELIGIOUS MEALS, RECITTED FROM (1) HOUR RECREATION WITHOUT HEARING OR NOTICE, RECLASSIFICATION FROM NORMAL TO ENHANCE RESTRAINT WITHOUT HEARING OR NOTICE, PLACED IN SOLITARY CONFINEMENT THAT WAS ABOLOISHED BY STATE AND CORRECTION LAW HALT ACT, ILLEGAL MONITORING BY WIRE AND DOC STAFF OF HIS LEGAL CALLS AND COUNSEL VISIT WITHOUT A WARRANT, SUBJECTED TO LIVING UNDER INHUMANE CONDICTIONS AND  other violation of State and Federal laws stated hereiin was intentional and malicously instituted  without care of the injuires to the Plaintiff ALEXANDER WILLIAMS and the State and fedear statues along with Correction laws in which are designed and in placed to protect the plaintiff and other alike.

The defendnats engaged in illicts enorcement of polices written and unwritten knwoingly that said polcies were wrong and violated plaintiff rights and did so with a malice intent due to the plaintiff's record and history for civil litigation and the publishing of his book that exsposed Rikers Island titled "THE TRUE UNTOLD STORY OF NEW YORK CITY'S NOTORIOUS RIKERS ISLAND". These polcies such as the one seenherein EXHIBITY-A clearly are wrong and enforce restriction on the plaintiff and other alike and did affect that plaintiff state of mind mentally, and affected the plaintiff spirituallity.

As set forth above and within this complaint defendant intentionally, recklessly and/or negligently engaged in conductthat was egregious and outrageous in nature that exceeded all bounds usually tolerated by society and unreasonably and dangerous to plaintiff's psycholigical and emotional well-being.

As a result of the foregoing, Plaintiff ALEXANDER WILLIAMS JR, suffered and continues to suffer permenent psycholigical and emotional injuires.

The plaintiff religious spirit basiefs has been attacked, damaged and suppressed by defendnatenforced of restriction of not just religious tex and religious diet but restictior of any Jewish Material unless it was a BIBLE or text of that of the Christain religion.

The defendnats conduct along with the global up-rise of anti-semtic langauge, actions, comments, and behavior that has been sprewed against those who are Considered JEWISH has reached the New york city department of Correction front door and has spilled into the actions and conduct of the servant, agents and employees of the defendnat CITY.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF RIGHTS PURSUNAT TO 42 § U.S.C. 1985(2)&(3)

Plaintiff ALEXANDER WILLIAMS JR, repeats, reiterates and reallges each pargraph of this complaint and further allges:

That the defendnat, did engaged in action/condcut that was specifically designed to violate the plaintiff's rights, cauise harm, initmidate or otherwise convince the plaintiff to drop his law suit aghainst defendnats , servant agents of the defendnat CITY in that matter of Assistant Cheif CHARLTON LEMON who is named as a defendant in plaintiff case seee, ALEXANDEWR WILLIAMS JR V. CITY OF NEW YORK ET AL, 22-CV-3819(PGG)(KHP), an that said condcut and actions did not occur until after NEW YORK CITY law dfepartment may have possible opted out of representing assistant commissioner CHARLTON LEMON in that matter as the plaintiff submitted letter from counsel at Law department stating such in EXHIBIT-29 herein.

This factor satifies the adverse prong as well as the fact that the plaintiff understood and believed that the conduct was geared towards(1) OBSTRUCTING JUSTICE, (2) INTIMDATING HIM AS A WITNESS, &(3) DEPRIVING HIM OF PPROTECTED AND GAURANTEED RIGHTS AFFORDED BY STATE AND FEDERAL CONSTITUTIONS AS WELL AS CORRECTION LAW.

The plaintiff ALEXANDER WILLIAMS JR, UNDERSTOOD THAT BY INFORMING HIM OR OTHERWISE NORMALIZING THEIR CONDUCT THAT HE WAS ONLY BEING SUBJECTED TO SUCH INJURIES DESCRIBED HEREIN BY DEFENDNATS NOT BECAUSE HE HAD VIOLATED RULES AND REGULATIONS OF THE DEPARTMENT OF CORRECTION, BUT RATHER BECAUSE HE HAD AN OPEN LAW SUIT AGAINST SPECIFICALLY CHARLTON LEMON AND PUBLISHED A BOOK EXSPOSING DOC WRONG DOING AS HE WAS TOLD BY DEFENDANT NUMEORUS TIMES OVER.

This admission and normalization by the defendnat named herein who were trained and tested on matters of NYC DOC rules and regulations is clear and understanding that these defendants knwoingly, willingly engaged in conduct that was specifcally geared towards detering, forcing, threatening and intimidating the plaintiff ALEXANDER WILLIAMS JR into dismissing , or testifying in favor of or otherwise making solely ASSISTANT COMMISSIONER CHALRTON LEMOM  innocent in the claims against him that is pending within Judges at teh SOUTHERN DISTRICT COURT.

Defendnats conduct was the direct and proximate cause of the plaintiff injuries, falling into deep depression, attempting sucide by starvation and emotional and sprirtual injuires that are permenant in nature.

The plaintiff was concious and did not coinsent to such conduct inflicted upon him by all and each defendnat named herein the complaint.

## AS AND FOR A FOURTENTH CAUSE OF ATION FOR VIOLATION OF RIGHTS PURSUNAT TO 42 U.S.C. § 1986 ~~XXXXXXXXXX~~

Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates and reallges each and every paragraph of this complaint and further allges:

That the defendnats in this complaint each had an opportunity of preventing violation of the plaintif fcivil rights , each had the responsibility of preventing violation of the plaintiff's civil rights, each had direct knowledge that their conduct was improer wrong and unlawful and each failed to do anything other than engage in the same conduct and behavior as the next defendnat named herein.

The defendnat concerns were about that of ASSISTANT COMMISSIONER CHARLTON LEMON and not of the rights of plaintiff ALEXANDER WILLIAMS JR, in that they each and collectively and together failed to abide by their duties as according to mandatory duties under NEW YORK CITY ADMIN CODe § 9-108(C), CORRECTION LAW § 500-C(4), Subdivision 23 of section 2 of CORRECTIONM LAw as well as Subdivison 33 and 34, and the RULES of the CITY of NEW YORK 40 §§ 3-02(B)(4), (C)(1) and (C)(4), along with other duites to that owed to the plaintiff including but not limited to protecting the plaintiff from further harm and

and from such wrongful conduct even if said wrongful conduct is being committed by other
correctional personnell that was claerly a conspiracy in intimidating, forceing, placing
fear, threatening plaintiff to drop a peniding Federal Law suit.

Defendnat named herein should have known and could have acted like that of a reasonabl
other person and dilligently could have prevented . reported EEO complaint and could have
preventyed further damage and injurires suffered by the plaintiff after they were notified and
witnessed or was forced to engaged in simular conduct durring the time that they were
posted on plaintiff's hjousing unit or otherwise came in contact with the plaintiff's
as mentioned herein.

These defendants failure to prevent further harm ands to prevent further actions
in conspricay was direect and proximate result of plaintiff's injuries of pain, suffering,
susbstantial and procedual due process suffering and that said conduct could have been
stopped or paused before the filing of this complaint.

<u>AND AS FOR AN  FIVTHTEENTH CAUSE OF ACTION
FOR VIOLATION OF EQUAL PROTECTION RIGHTS AS IT
TO HOUSING FOR COURT ORDER LOCKDWON INMATES</u>

Plaintiff ALEXANDER WILLIAMS JR, repeats reiterates and reallges each paragraph
of this complaint and further allgesd:

The defendnats are knowingly, willingly and purspoely ignoring the amdnements
made to CORRECTION LAW in reagrds to the HUMANE ALTERNITIVE TO LONGTERM SOLITARY CONFIENMENT
ACTR  passed by New york state legistlators that amended the CORRECRTION LAW  section
2 of subdivison 33 and 34whihc core states that CORRECTIONdepartment if prohibited from
maintaining a classification where inmates are locked inside of a cell for more than 17
hours per day.

The plaintiff is denied the Equal Protection rights of every other detainee that
is not housed under these conditions that may be in population commiting acts of violence
and abuse and still locking out of their cells for more than 17 hours each day.

Defendnat CITY, LOUSI MOLINA, ERIC ADAMS, THOMAS GRIFFIN, AC MILLER WARDEN CORT
and others armed herein are aware of this law for the six named defendnats have taken
meeting, given interviews and answered question in regards to the HALTH ACT and other are
aware that inmate in population of the most violent type are not being subjected to such
23 hour lockdwon inside of a cell.

The defendnat attempt to hide behind a Supreme Court Judges Order is not an affirmativ
defense and ignorance of the law is not a legal defense in that ART III of the New York
State Constitution lays out the Authority for a Judge and ARTX III clearly indictaes that
a sitting Judge must abide and enforce the laws of the state not have the Authority to
overide or disregards the law of the sauch as in the HALT Act.

Furthermore the defendnat each have access to the DOC / COURT liason email and contact
clarification and guideance could have been sought in the matter of the HALT ACT after
its passing and that when said individuals named herein as defendnat sfailed to do such
created and left those defendnat and other liable for the injuries and pain and suffering
of the plaintiff ALEXANDER WILLIAMS JR.

Many defendnats were notifed by the plaintiff themslev as seen herein griavnces
and appeals submitted in regards to his constant confinement of 23 hours a day and opther
seem to have known but engaged in conduct of enfrocing the 23/1 lockdown out of spite
ignorance and punishment against the plaintiff for his constant litigation.

As a result of the defendnats failures and condcut was the direect and proximate
cause of the plaintiff pain and suffering and mental truam leaving the plaintif fwith
mental anguish that is irrepariable and in many cause simular are not even discovered
as of yet.

AS AND FOR A SIXTHTEENTH CAUSE OF ACTION FOR
DELIBERATE INDIFFERENCE TO PLAINTIFF MEDICAL AND
MENTAL HEALTH NEEDS:

Plaintiff ALEXANDEWR WILLIAMS JR,  repeats reiterates and reallges each paragraph
of this complaint and further alleges:

Defendnatdid maintaina polciy and aganged in condcut that was deliberate indifference to the medical needs and mental health needs of the plaintiff and denied the plaintiff medical and mental request as in accordance with 40 RCNY § 3-04(b)(6).

This deliberate indifference include but not limited to the occassion where the plaintiff was denied without reason or cuase emergncy sickcall, medical emergcnies and surgical trips to outside hospital BELLVUE after DOC medical staff making the appointments and takking all of the proer precuaosion to protect the plaintiff in his medical disabilities.

And tha tthe defendnat by way of enfrocing JLO against the plaintif was aware that the plaintiff was unable to conatct sickcall using DOC 614# number and was the conduct of defendnats that caused the plaintiff to number inhouse medical appoints as seen herein EXHIBIT-H.

And that defendnat MARDEN on Jan 17 and Jan 18, 2023 was deliberate indiffrence to plaintiff medical needs were plaintiff informed defendnat CO MARDEN that he was suffering f from ASTHMA ATTACK  and having difficualties breathing and defendnat MARDEN failed to act in accordance with DOC polciy and 40 RCNY § 3-02£d·£1· whwich states :

> ALL INMATE REQUEST FOR EMERGNCY MEDICAL OR DENTAL ATTENTION
> SHALL BE RESPONDED TO PROMTLY BY MEDICAL PERSONNEL. THIS SHALL
> INCLUDE A FACE TO FACE ENCOUNTER BETWEEN THE INMATE AND THE
> APPROPIATE HEALTH CARE PERSONNEL.

Insteads defendnat MARDEN  faild to call for the medical  emergency for the plaintiff because he didnt beleive that the plaintiff  was having difficult time breating and was unable to locate a captain for housing unit stating that a capatin muyst be present before an inmate in 1a court order lockdown could recive medical care.  this violates DOC polciyy of 40 RCNY §  3-02£9(4)(ii) stating :CORRECTIONAL PERSONNEL SHALL  NOT INTERFERE WITH AN INMATES ACCESS TO INFIRMARY SERVCIES OF THE DURATION OF CONFIENEMNT IN THE INFIRMARY AND SHALL TRANSFER INMATE TO AND FROM INFORMIRIES PROMTLY WHNE REQUETESED.

This caused the laintiff to suffer from asthma attck without and medical assistance requested fom defendant MARDEN and forced plaintiff to use a plastic bag to nurse himself and control breathing .

As a result to both the plaintoiff was left in serve pain when reqesting medical at West Facility and at GRVc and left in asthma attcaks due to defendnats beliving that they as correctional oficer control inmates medical request and as they engaged in said conudct action were the direct and prozimate cause of the plaintiff's injuries of pain and suffering mentioned herein.

The plaintiff ALEXANDER WILLIAMS JRE , WAS CONCIOUS AT ALL TIMES AND DID NOT CONSENT TO SUCH CONUDCT NEVER.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS PURSUNAT TO 42 U.S.C. § 1983

Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates ad and reallges each paragraph of this complaint and further allges:

All the afornmentioned acts of the defendants named herein, were carried out under color of State Law.                                                                                          All

All of the aformentioned acts deprived plaintiff ALEXANDER WILLIAMS JR,  of rights privilages and immunities gauranteed to citizens of the United States by the FIRST, FORTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT,  to the United States Constitution in violation of 42 U.S.C. 1983.

WHEREAS deprivation of the plaintiff's rights were violated without Due Poocess and that many of the plaintiff's rights were "RESTRICTED" without cause of taken proper safe guards to ensure due process rights were not violated.

### AS AND FOR A NINTHTEENTH CAUSE OF ACTION FOR NEGLIGENT TRAINING AND SUPERVISION

Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates and reallges each ane evry paragraph of this complaint and further allges:

1

The defendnat CITY failed to properly and adqaurely train, suppervise, discipline or in any way control the behaviors of the defendants named herein in the exercis of thier employment functions, and the fialure to enforce the laws of the State of New York and the regulations of defendant CITY & NYC DEP'T CORR, is evidencee , of the reckless lack of caitious regards for the rights of the public including plaintiff ALEXANDER WILLIAMS JR, . Further the defendants ecxhibited a lack of that degree of due care which prudent and reasonable indivbiuduals would sho♀.

The failure of defendnat CITY to train, supervise, discpline or in any way control the defendants anmed herein, and in the exercise of their employement functions and the failure of Defendant CITY was carried out willfully, wantonly, maliciosuly and with such reckless disregards for the consequenes as to display a conscious disregards for the danger of harm and injury to the citizens of New York including but not limited  to plaintiff ALEXANDER WILLIAMS JR.

AN EXAMPLE OF THIS FAILUE BY DEFENDANT city, eric adams AND louis molina, thomas griffin AND ac miller IS AS FOLLOWED:

(A)     DEFENDAT ARE IN CONTROL OF THE DAY TO DAY OPERATIONS OF ALL CITY JAILS AND YET DEFENDANTS FAILED TO BE IN ACCORDANCE WITH THE HALT ACT AND PROPERLY ABOLISHED SEGREGATED CONFINEMENT, THEREFORE LEAVING LIABLITY ON ALL CORRECTION OFFICERS WITH THE BELIETH THAT SAID 23/1 HOUSING UNIT ARE LEGAL AND LEGIT.

(B)     DEFENDANT ARE NOT IN ACCORDANCE WITH TRAINING CO'S WITH DEFENDANT CITY RULES AND REGULATION STATED IN 40 RCNY § 1-16(E)(1) WHIHC STATES: CORRECTION OFFICERS ASSIGNED TO SPECIAL HOUSING UNIT SHALL RECIVED (40) HOURS OF SPECIAL TRAINING DESIGNED TO ADDRESS THE UNIQUE CHARCATIRTICS OF SUCH A HOUSING UNIT AND ITS INMATES. SUCH TRAINING SHALL INCLUDE, BUT SHALL NOT BE LIMITEDTO, RECOGNIZTION AND UNDERSTANDIN OF MENTAL ILLNESS AND DISTRESS, EFFECTIVE COMMUNICATION SKILL AND CONFLCIT DE-ECALATION TECHNIQUES.

(C)     THE DEFENDNAT DID NOT TRAIN CORRECTION OFFICERS ASSIGNED TO PLAINTIFF'S HOUSING UNIT AND THAT DEFENDNAT CITY FAILED IN 40 RCNY § 6-16 --- 6-19 ADDRESSING TRAINING FOR RESTRICTIVE HOUSING UNIT IN THAT STAFF ASSIGNED TO RESTRICTIVE HOUSING UNITS SUCH AS THE UNIT PLAINTIFF IS HEDL IN, SHALL RECIVE TRAINING DESIGNED TO ADDRESS THE UNIQUE CHARATRISTICS AND OPEERATIONS OF THESE UNITS  AND THE PEOPLE IN CUSTODY WHO ARE HOUSED IN THESE UNITS. SUCH TRAINING SHALL INCLUDE BUT NOT LIMITED TO RECOGNITION AND UNDERSTANDING OF MENTAL  ILLNESS AND DISTRESS , EFFECTIVE COMMUNICATION SKILLS AND DE-ESCALATION SKILLS.

it is clear and evident that amny of the defendnat of defendnat CITY named herein lacked in training becaise many of the situation named herein were due to engagemnt in conduct that defendants would not hav engaged in if defendant CITY better trained, supervise or disciplined its servant, agents, employee in the function of their employment.

There should never be a misunderstanbding in whether an inmate has the right to practice/enage in whatver religious beleivth that theu may choose, there should never be a polciy or a misunderstanding that restrict  or disregsrda a inmate religious diet that is a known practioner of that belivth and religion, there should never be any confusion as to whther an inmate that is housed by a judges order of 23/1 (1) hour recreation being mandatory  could be restricted without NOTICE or withoit the issuance of a infraction or for punitive retaliatory reason, there shoulkd never be any misunderstanding as to wether court order lockdown and the BOX/SHU are diffrent or one and the same, correction officer should never not know that they can not inturude, listen, monitor an inmates mail, legal calls and video call with an attorney .

It is clear that correction officer, capatins named herein did not have the correct training or owtherwise did not care to have the correct training to be assigned to the plaintiff's  housing unit to ensure that the plaintiff's and others alike rights were not violated.

As a result of defendnat CITY failure to TRAIN SUPERVISE and or DISCPLINE defendant named herein that were employee, servant and agnets of defendant CITY, the plaintiff ALEXANDER WILLIAMS JR, righst were egrigiously violated and that he suffered pain and violation that are irreparable in nature.

## AS AND FOR A TWENTIFFTH CAUSE OF ACTION FOR RESPONDEAT SUPERIOR

Plaintiff ALEXANDER WILLIAMS JR,  repeats, reiterates and reallges each paragraph of this complaint and further allges:

The defendants CITY & ERIC ADAMS  is vicariously liable for the acts of defendants
LUOIS MOLINA and other anmed herin this complaint as followed : THOMAS GRIFFIN, AC MILLER,
WARDEN COLLIN, WARDEN CORT, DW FLEEMING, DW JONNELL SHIVRAJ, WARDEN JEAN RENNE, JOANN
MATOS, TIFFANY MORALES, LISA BARNBEY, DW MILLER, ADW GWINNE FORM CIB, CAPT MATHIS, CAPT
FLUKA OF CIB, CAPT LOPEZ, CAPT JOSEPH, CAPT PALMERO, CAPT RIVERA (GRVC), CAPT RIVERA (ESU),
CAPT VEST 28 (ESU), CAPT GAUN (GRVC), ERICA GAINOUS, KEVIN YOUNG, KEVIN WHITE, PRESTON
RITTER, RAHMAN, MARDEN, RODRIUGEZ, ANTONIO GRAVES, ESU OFFICER RCIHARDSON, ANDREW HICKSON,
BAWA, WOLOSKI, HO, ESU SECRATY 4190, CIB OFFICER (WHITE DIRTY BLONE HAIR 5'5 HIEGHT),
ANDERSON, RECREATION CAPT FROM JAN 7, 2023, SRT OFFICERS  1, 3, 4, 139, 182, 65, 74, 75,
78, 79, 80, 88, 82, 182, 111, 112, 113, 117, 135, 120, 102, 203,  K-9 OFFICER PERPIGNAN,
CO ORELLANA (HQ),  who were all acting in the scope of their employment when they engaged
in the wrongful conduct described herein; such as the fialure to adhere to the HATH ACT,
ABIDE BY THE JUDICIAL LOCKDOWN ORDER OF (1) HOUR MANDATORY DAILY, ABIDE BY THE DUE PROCESS
RIGHTS OF PLAINTIFF AND ALIKE DETAINEES, ABIDE BY THE FREEDOM OF RELIGIOUS PRACTICE, ABIDE
BY THE CONFIDENTAILITY OF ATTORNEY CLIENT PRIVLAGE, ABIDE BY THE TERMS OF THE NUNEZ SETTLEMNT
IN THAT CAMERAS SHOULD HAVE NOT BEEN RECORDING PLAINTIF WASXHSOWERING USING TOLIET OR
SLEEPING , ABIDE BY MEDICAL POLCIES STATED HEREIN  and more, and that each of these defendants
engaged in conduct that constituted a violation of the plaintiff's Constitutional rights.

Defendnat LOUIS MOLINA is vicariously liable for the acts of the DOC officials
named herin  holding a lower rank than COMMISSIONER who were on duity and acting in the
scope of their employement wwhen they engaged in the wrongful conndcut described herein.

Defendnats WARDEN JEAN RENEE and WARDEN CORT is vicariously liable for the conduct
and the creation of CLO 13/21 as seen eherin as EXHIBIT- and EXHIBIT-35 and that said
CLO in 370.20 was already establsihed by the court to had violate the rihts of the plaintiff
and others alike in many areas stated dherein this complaint, and that Defendnats LISA
BARNBEY , TIFFANY MORALES, JONNELL SHIVRAJ AND JOANN MATOS,  should have known better
to endorse and/or assist in the creation of any Command Levl Order when neither defendants

holds the position as a final-polciy maker for the defendnat CITY and that Defendnat CORT when had the opportunity not to enforce said polciy and restrictions listed in EXHIBIT- A x failed by not stopping the enforcement of said polcity as well.

Defendnat JEAN RENEE and WARDEN CORT and WARDEN COLLIN are vicarioulsy liable for the misconduct and acts of the defendnats holding a RANK lower than warden who were acting in the scope of their duty when they engaged in the wrongful condcut described herein, and that each defendnat angaged in such condcut that constituted a violation of that plaintiff rights.

Befendnat ERIC GAINOUS is vicarously liable for the acts of the employees and agents who worked under her supervision such as ANTONIO GRAVES, ANDREW HICKSON, PRESTON RITTER, KEVIN YOUNG, KEVIN WHITE, who engaged in such conduct that violated the plaintiff rights and that defendnat ERIC GAINOUS as the secuirty caoptain failed to supervise, train and discipline those defendnat in the scope of their duities and skills of understanding the in's and out's of such a special housing unit such as the RESTRICTIBVE housing unit that the plaintiff was held in.

            and Warden  COLLINB
Defendant DW MILLER is vicariously liable for the acts of the defendnat swho were acting in the scope of their employement when they engaged in the wrongful condcust described herein that took place at the WEST FACILITy jail being that defendnat DW MILLER is the secuirty deputy warden of said WEST Facility.

Defendnats LOPEZ 462, MATHIS 82, SRT 1, SRT 3, AND SRT 4, is vicariously liabe lfor the acts of the SRT officers who were acting and/or enaging in wrongful conduct while under their watch and supervision adn the defendnat CAPT LOPEZ, MATHIS SRT 1, SRT 3, AND SRT 4 failed to supervise, stop, or dispcpline these defendnat for their misconduct that lead to the violation of the rights of the plaintiff ALEXANDEWR WILLIAMS JR.

<u>AS AND FOR A TWENTY FIRST CAUSE OF ACTION FOR</u>
<u>UNLAWFUL IMPRIOSNMENT PURSUNAT TO 42 U.S.C. § 1983</u>

Plaintiff ALEXANDER WILLIAMS JR, tREPOFATS, REITERATES AND REALLGES EACH PARAGRAPH OF THIS COMPLAINT AND FURTHER ALLGES:

Defendnats enaged in conduct that knowingly , willingly and purpsoely ignored and disreagrded the HALT ACT whihc lead to the plaintiff illegal and unlawful imprisonment in 23/1 solitary conienment housing unit  whihc was adverse and against New York State and New York Correction law as seen herein EXHIBIT-26.

Defendnat should have known that a siiting judge did not have the authority to issue such an order and that since in plaintiff case whne such order was issued in Dec of 2018 whihc was prior to passing of HALTN ACT in January 2021 that the proper course of action to take was to seek guidance from Court system through DOC / COURT liason for clarifcation of moving foward after the passing of HALT ACT in January of 2021 and/or for modifcation of plaintiff JLO to align with the criteria of the HALT ACT

defendnat CITY was placed on notice in the matter of the plaintiff illegal RESTRICTIV housing situation in  ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL, 21-CV-1083 (PGG)(KHP)

&  ALEXANDER WILLIAMS JR V. CITY OF NEW YORK ET AL, 22-CV-3819(PGG)(KHP) WHERE DEFENDANT CITY  WAS NAMED IN BOTH MATTERS AND THE CORE WITHIN EACH MATTER WAS THE HOUSING PLACEMENT AND THE CONDITION OF SAID PLACEMENT AND DEFENDNAT city ARGUED THAT SAID PLACEMENT WAS CORRECT AND OTHERWISE LEGAL IN THEIR RESPONSE AND SUCH TOOK THE POSITION AGAINST THE BILL SEEN EHERIN EXHIBIT-26.

Defendnat CITY and others snamed herein were aware of the injuires and mental affect that the unlawwful imprisoment had on the plaintiff as seen herein EXHIBIT-H , see also EXHBIT-R and EXHIBIT-S  displaying that the mental damage of the plaintiff was indeed worsening the more time spent under the unlawful confinemnt  and that plaintiff on more that two occassion attempted to take his life due to the UNLAWFUL IMPRISONMENT enforced by the defendnat CITY and others named herein

The plaintiff ALEXANDER WILLIAMS  was consiou and did not consent to the unlawful impriosnment and did suffered injuires that irrepairable in nature.

## AS AND FOR A TWENTY SECOND CUASE OF ACTION
## FOR MUNICIPAL LIABILITY

Plaintiff ALEXANDER WILLIAMS JR, REPEATS REITEREATES AND REALLAGES EACH AND EVERY PARAGRAPH OF THIS COMPLAINT AND FURTHER ALLGES:

Defendants CITY, JEAN REENE, WARDEN KXXKCORT, JOANNE MATOS, JONELL SHIVRAJ, TIFFANY MORALES, LISA BARNBEY, did create endorse and enforce a custom, usgage ,practice, procedure and rule and maintain such polciy as seen herein as EXHIBIT-A and EXHIBIT-35 in CLO 13/21 in a matter that has already been ruled on by Magistrate Judge Katherine H. Parker and District Judge Pual G. Gardephe in this southern district to at minimum violate the rights of court order inmates in the ares of (1) RELIGIOUS RESTRICTION AND RELIGIOUS TEXT ; (2) DUE PROCESS VIOLATION WITH ENAHCNE RESTRAINT, yet the defendnat maintain and created a new polciy that mirrored word for the ploicy that was deemed unconstitutional . See <u>FLORES V. CITY OF NEW YORK , 2022 U.S. DIST LEXIS 179347, 2022 WL 4592892 (S.D.N.Y.</u> <u>SEPTEMBER 30, 2022)</u> ; ALSO <u>ANDUZE V. CITY OF NEW YORK 2022 U.S. DIST LEXIS 177927, 2022</u> <u>WL 4547420 (S.D.N.Y. SEPTEMBER 9, 2022).</u>

29

The polciy that was the core of the Court finidng in those cases can be seen herein as EXHIBIT-12 and the polciy that is plaintiff attention in this section of the MUNICIPAL liability can be seen herein as EXHIBIT-A. When the court campare the two plocies seen in EXHIBIt-12 and EXHIBIT-A the Court will find that the two are the same word for word with the only diffrence being date and CLO numbers.

Befendants TIFFANY MORALES, JOANNE MATOS, LISA BARNBEY AND JONNELL SHIVRAJ was not found to be liable in the cases mentioned above because as SEEn in EXHIBIT-12 those defendants did not sign CLO 370.20 giving them legal plausible deniability in the matter. But as seen herein in EXHIBIT-A these defendants TIFFANY MORALES, JONNELL SHIVRAJ, JOANN MATOS, LISA BARNBEY did sign CLO 13/21 , indicating that these defendnats this time around played a role in the ceration and enforcemnt of said plociy, whihc is also enforced under the governing of defendant WARDEN CORT.

In that defendants CITY, JEAN RENEE, WARDEN CORT, TIFFANY MORALES, JONNELL SHIVRAJ, JOANNE MATOS, LISA BARNBEY, while acting under color of State law engaged in condcut that constituted a Custom, Usbae, Practice, Procedure or rule of the respective MUNICIPALITY/ AUTHORITY whihc is forbidden by the Constitution of the United states, In that restriction to medical and to be seen in facility clinic area as stated in EXHIBIT-A pages 4-6 violates that plaintiff right to adquate medical care and leads to plaintiff being medicated versus examined when he informs doctors on medical issues such a pains and other medical complaints alike because GRVC does not maintain a area that fits the cretira of a treatment area by NYS and NYC medical statues that the plaintiff and court order inmates could be examined at outside of the facility which plociy restricts plaintiff from.

And that plaintiff supreme court JLO does not restrcit plaintiff from medical as seen herein EXHIBIT -F and that further defendnat CITY was informed in October 26, 2022 by Boiard of Correction director of polcies and communication after he sough clarificatio from the court that DOC must adhere to the restriction of the JLO while still affording the plaintiff minimum standards and speecifically stated that DOC must not use DOC polcies as a blanket but to address each42 court order inmate seperately by the restriction listed in their JLO as seen heerin in EXHIBIT-43, whihc supports that restricting any inmate from the facility medical clinic area isnt normal or proer under DOC correction law and polcies.

And that EXHIBIT-A was and is the cause of the plaintiff cuase of action of Due Proces violation and the direct and proximate cuase of the injuries substained from such custom, usage, practice procedure and rule where as the plaintiff was never afforded NOTOICE and / or HEARING lableing him ENHACE restrain and furthermore EXHIBIT-J herein clealry states that ERS set up is to only be used on plaintiff when leaving outside of the facility, and that this custom was used as a blanket enfroced against all court order inmates even though each was not Enahce Restaint and even though defendnats including CITY was forewarned by EXHIBIT-43 of the possible violations it presnted ahead of time.

defendnat CITY, JEAN RENEE, WARDEN CORT, TIFFANY MORALES, JOANNE MATOS, JONNELL SHIV
LISA BARNBEY, by way of this Custom Polciy, Practice, Usage Procedure and rule of defendnat
CITY, that lead to the plaintiff denial of medical care at BELLVUE hsopital on post-opt
surgey on OCTOBER6, 2022 whihc was the same polciy that played a role in the plaintiff
gallbladder removal that was delaayed until Magistrate Jusge Katherine H. Parker got involved
as seen in EXHIBIT-b, this was even after counsel for the defendant CITY informed United
states Magistrate judge that the plaintiff was till not produce on September 15, 2022
and was only produced after plaintiff suffered yet another gallbladder attack on that
same date at 5:00pm that lead to plaintiff vomiting, being unable to walk, being in serve
pain  as seen in EXHIBIT-G for a copy of this correspondance.

Defendnat CITY JEAN RENNE TIFFANY MORALES, WARDEN CORT, LISA BARNBEY, JONNELL
SHIVRAJ AND JOANNE MATOS,  while working and acting under color of State law engaged in
a conduct that constituted a Custom, Polciy, Usage, Practice, Procedure or rule of the
respective MUNICIPALITY/ AUTHOIRTY that concluded in plaintiff ands others alike being
siubjected to 23 hours amny days 24 hours solitary confinement without a tevelivions of
anything in their cell after the passing of the HALT Act that abolihsed such a classification
and that limited defendnat CITY, DOC, WARDEN CORT, JEAN RENEE, LISA BARNBEY, JOANNE MATOS,
TIFFANY MORALES, JONNELL SHIVRAJ  to only being able to confien inmates in a cell for
no more than 17 hours a day.

The defendnat owed the plaintiff the duty to follow, know better and/or seek
guidance and clarification in regards to the HALT act and other restiction listed in EXHIBIT-
A instead of enforcing such customs, practcies, usages, proecures blindly  without due
care.

Defendant CITY, WARDEN JEAN RENEE, WARDEN CORT, TIFFANY MORALES, JONNELL SHIVRAJ,
JOANN MAOTOS, LISA BARNBEY,  should have known, or should know that a Judges order andthat
the contniunac of a 23 hour lockdown was against Correction Law and that a Judge can not
supercede state and Correction law and that the restriction that they enaged in enforcing
was a CUSTOM that violated the plaintiff alexander williams jr, $ rights and inmates alike

that were housed in court order lockdown status.

## RELEIF SOUGHT:

tc

Along with the declatory relief stated herein the aplintiff ALEXANDER
WILLIAMS JR,   is entitled to compensatory damages in the sum of One Million
Dollars ($1,000,000) and is further entitled to Two Million Dollars in
punitive damages ($2,000,000)

WHEREFORE plaintiff ALEXANDER WILLIAMS JR,   demands judgement jointly
and servereally in the total sum of Three Million Dolars collectively for
compensation and punitive damages plus reasonable filing cost and disburstment
fee in this matter.

DATED : FEBHAURY 1, 2023
      QUEENS NY 11370

ALEXANDER WILLIAMS JR
G.R.V.C.
09-09 HAZEN STREET
EAST ELMHURST NEW YORK 11370

# EXHIBIT –A

| | CORRECTION DEPARTMENT<br>CITY OF NEW YORK | | | |
|---|---|---|---|---|
| | **GEORGE R. VIERNO CENTER** | | | |
| | COMMAND LEVEL ORDER | | | |
| ORDER NUMBER:<br>**#13/21** | SECTION:<br><br>**SECURITY** | { X } NEW<br>{ } REVISED | SUBJECT: COURT ORDERED LOCKDOWN<br>INMATES | AREAS<br><br>ALL STAFF |
| EFFECTIVE DATE:<br>**07/19/21** | { } ADMINISTRATION<br>{ } PROGRAMS<br>{ X } SECURITY | PAGE 1 OF 6 | REFERENCE:  Facility Generated | |
| AUTHORIZED BY THE COMMANDING OFFICER<br><br>**JEAN RENE, WARDEN** | | SIGNATURE | | |

## I.      PURPOSE

This command level order is to establish policy and procedures for the Care , Custody and Control of the inmates under Court Order lockdown status.

## II.      POLICY

It shall be the policy of the George R. Vierno Center to comply with the mandates of all Court Orders dealing with inmates housed in this facility.  Additionally, the restrictions imposed on "Lockdown Status" inmates by the Court supercedes any rights these inmates may ordinarily have under the Minimum Standards.

## III.      PROCEDURES

The inmates housed in Court Ordered lock-down areas shall be governed by the following:

    a.   Twenty-three (23) hour lock-in, feed -in status.
    b.   Inmates housed in Court Ordered Lock-Down areas will be allowed to possess the following property in their cell:

        1.   One (1) Bible
        2.   Three (3) Magazines
        3.   Three (3)Books
        4.   One (1) Bar of Soap
        5.   One (1) Container of Shampoo
        6.   One (1) Toothbrush
        7.   One (1) Toothpaste
        8.   One (1) Plastic Cup
        9.   One (1) Towel
      10. Deodorant



| CORRECTION DEPARTMENT CITY OF NEW YORK | GEORGE R. VIERNO CENTER |
|---|---|
| **COMMAND LEVEL ORDER** | **ORDER NUMBER # 13/21** |
| EFFECTIVE DATE: 07/19/21 | SUBJECT: COURT ORDERED LOCKDOWN INMATES | PAGE   2 OF  6 PAGES |



## IV.   PROCEDURES (CONTINUED)

**Special Security Procedures**

    a.  Inmates in lock-down status shall not be removed from their cells unless a Captain is present.  <u>AT NO TIME WILL MORE THAN ONE (1) INMATE BE ALLOWED OUT OF HIS CELL AT ANY ONE TIME.</u>

    b.  Whenever a Court Ordered Lock-Down inmate is removed from the housing area, he shall be restrained in leg irons, waist chains and mitts.  The inmate shall be under one-on-one observation of a Correction Officer to assure no communication with any other inmate(s), verbally, in writing or through hand signs.

    c.  During the day tour (0700x 1500 hours) and under the supervision of a Captain these inmates shall be strip-searched, and their property carefully searched daily.  Theses searches will be recorded on a Random Search Form.

    d.  Inmates shall always dress in jumpsuits , unless going to court for trail.

    e.  Inmates housed in Court Ordered Lock -In areas shall not be allowed to refuse to be produced in court.

    f.  The Court Ordered inmates shall not be permitted to refuse to attend court because of complaints of health problems unless the physician examine this defendant certifies in writing that the attendance of this defendant in court would likely result in serious impairment to this defendant's health.  In this event, this information shall be immediately transmitted to the Central Operations Desk at (718) 546-1384.

    g.  The Court Ordered inmate's accompany card shall be kept in the CMC box in the General office.

**Program /Inmate Services**

Law Library/Outgoing Mail

Inmates will make all request for Law Library materials in writing.  These requests will be forwarded to the Security Office who will obtain copies of the requested materials and place same in the inmate's blue storage bin.

    1.  The assigned Captain will collect all letters written by the inmate.  The Captain will turn the mail over to the Security Office.  Under no circumstances will any inmate in Court Ordered Lockdown  status be permitted to send out any written correspondence or any other type of communication.




| | CORRECTION DEPARTMENT CITY OF NEW YORK | GEORGE R. VIERNO CENTER |
|---|---|---|
| | **COMMAND LEVEL ORDER** | ORDER NUMBER # 13/21 |
| | EFFECTIVE DATE: 07/19/21 | SUBJECT: COURT ORDERED LOCKDOWN INMATES | PAGE   3 OF  6 PAGES |

## V.   PROCEDURES (CONTINUED)

### Telephone Calls and Visit Privileges:

1. The court ordered inmates are barred from Visits and Telephone calls to anyone other than their attorney of record. These numbers are listed in each inmate's court order folder.
2. All calls will be placed between the hours of 1330-1430 hours and 1630-1730 hours.
3. The Correction Officer assigned to the post shall make the telephone call using a P.I.N. Number which will be changed weekly by Security. Inmates are not allowed to know the P.I.N. numbers. The Correction Officer shall maintain a log of each attorney called. Such a log will detail the following information for each attempted call:

   a. Date and Time call requested
   b. Time call was placed
   c. Whether or not contact was made with the Attorney
   d. Time call ended.

### Inmate Showers

Inmates will be afforded a ten-minute shower, a day. The showers are to be recorded in a shower logbook. As stated earlier, a Captain shall be present when the inmate is removed from his cell to the shower and again when he is returned from the shower to his cell. All shower activity shall be logged in the Housing Area Logbook.

### Incoming Mail

Any incoming mail for inmates housed in court ordered areas will be forwarded to the GRVC Security Office. No mail shall be forwarded to these inmates until approved by the Commanding Officer or his/her designee.

### Commissary

The only items inmates housed in court ordered areas may purchase from commissary are:

1. Soap          4. Toothpaste
2. Shampoo       5. Paper
3. Deodorant



| CORRECTION DEPARTMENT CITY OF NEW YORK | GEORGE R. VIERNO CENTER |
|---|---|
| **COMMAND LEVEL ORDER** | **ORDER NUMBER # 13/21** |
| **EFFECTIVE DATE: 07/19/21** | **SUBJECT: COURT ORDERED LOCKDOWN INMATES** | **PAGE    4 OF   6 PAGES** |



## VI.    PROCEDURES (CONTINUED)

Custodial staff assigned to the housing area will complete the Commissary request form for the inmate. This shall prevent subject from communicating with commissary help. All commissary products will be thoroughly searched prior to giving them to the intended inmate. Appropriate logbook entries shall be made relative to the delivery of this service.

### Social Service

All request for Social Services shall be forwarded to the Security Office. At no time will these inmates have any contact with Social Service personnel. Additionally, at no time will interview slips be forwarded to any Service area.

### Religious Services

If these inmates request religious services, the Chaplain will be called to visit them. However, the Chaplain will first be instructed that he/she may not:

1. Communicate on the inmate's behalf with anyone other than the Warden, the Security Office, or the Court -appointed Special Master.
2. Convey any written messages from these inmates to anyone else.
3. May not give anything to or receive anything from these inmates.

### Medical/Mental Health Services

Any necessary medical or mental health services are to be provided to these inmates in the housing area. They will not be removed to go to the Clinic unless it is physically impossible to provide them with necessary medical services in the cell/housing area. Mental Health services, if required, will be provided to them in the housing area, not the clinic.

If the inmate must be removed to the Clinic for medical services, he shall be escorted by a Correction officer and a Captain and Kept separate from all other inmates in such a manner as to assure that he is unable to communicate in any manner with other inmates.

Medical Staff who come to see these inmates in the housing area should first be instructed that they may not:

|  | **CORRECTION DEPARTMENT CITY OF NEW YORK** | **GEORGE R. VIERNO CENTER** |  |
|---|---|---|---|
| | **COMMAND LEVEL ORDER** | **ORDER NUMBER # 13/21** | |
| | **EFFECTIVE DATE: 07/19/21** | **SUBJECT: COURT ORDERED LOCKDOWN INMATES** | **PAGE   5 OF  6 PAGES** | |

## VII.   PROCEDURES (CONTINUED)

1. Communicate on the inmate's behalf with anyone other than the Warden or the Security Office.
2. Convey any written messages.
3. May not give anything to or from these inmates unless the item is necessary to provide medical services (i.e. medical supplies, medication).

### Hospital Runs

If the inmate requires hospitalization, he is to be treated and outposted at Bellevue Hospital as a medical emergency. In the event of a medical emergency, the inmate is to be transported to the nearest hospital.

### Inmate Recreation

Inmates housed in the Court Ordered area may be afforded recreation in accordance with the details delineated in the court order or as amended in a separate memo. These stipulations shall be reflected in the posted "Recreation Schedule". A Captain shall be present when the inmate is removed from his cell and returned to his cell, following the recreation period. While at recreation, these inmates shall be separated from all other inmates verbally, in writing or through hand signals. These inmates will be restrained in waist chains handcuffs and mitts whenever they are out of their cells for recreation.

Appropriate logbook entries shall be made relative to delivery of this service.

## CELL AREA ACCESS AND SUPERVISION

1. Civilian personnel (i.e. Chaplain and Medical Staff) must always enter the cell area accompanied by a Supervisor .
2. The area Captain will conduct at least three (3) tours of inspection in the court ordered inmates cell area during each tour of duty.
3. The on-duty Tour Commander will conduct at least one (1) tour of inspection during each tour of duty. He/she is responsible for ensuring that the provisions of this order are fully complied with.

## LEGAL JUSTIFICATION

1. This order is justified as per Supreme Court Order.



| CORRECTION DEPARTMENT CITY OF NEW YORK | GEORGE R. VIERNO CENTER | |
|---|---|---|
| **COMMAND LEVEL ORDER** | **ORDER NUMBER # 13/21** | |
| EFFECTIVE DATE: 07/19/21 | SUBJECT: COURT ORDERED LOCKDOWN INMATES | PAGE   6 OF  6 PAGES |



PREPARED BY:

JONELLE SHIVRAJ, Deputy Warden for Security

REVIEWED BY:

LISA BARNABY, Deputy Warden for Administration

JOANNE MATOS, Deputy Warden for Programs/Operations

TIFFANY MORALES, Deputy Warden for Enhanced Supervision Housing

# EXHIBIT –B

ATTACHMENT - C

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES

Form.: 7102R
Eff.: 8/23/19
Ref.: Dir. 3376R-A

### DISPOSITION FORM

| Grievance Reference #587271 | Date Filed: 09/26/22 | Facility: GRVC |
|---|---|---|

| Inmate Name:  Williams Alexander | Book and Case#: 1411801632 | Category: Medical |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance:

I was scheduled for surgery today as seen in the attached documentation and I was not produced nor did I refused.

Action Requested by Inmate:

Please investigate this matter and notify me of outcome of investigation is writing.

## STEP 1: FORMAL RESOLUTION

Check one box:  ☑ Grievance        ☐ Submission is not subjected to the Grievance Process

The Office Of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process. Grievances not subject to the Grievance Process cannot be appealed.

OCGS staff would like to inform grievant that your requested action will be forwarded to Medical for review.

## CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
### *(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☑ Yes, I accept the resolution   ☐ No   ☐ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 9/26/22 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: | Date: 9/26/22 |
|---|---|

ATTACHMENT -B-1

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| alexander Williams J. | 1411701632 | 01897858C |

| Facility: | Housing Area: | Date of Incident: | Date Submitted: |
|---|---|---|---|
| GRVC | 2A | 9/15/2022 | 9/15/2022 |

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** I was Scheduled for Surgery Today as Seen in the attached documentation and I was not produced nor did I Refused

**Action Requested by Inmate:** Please investigate this matter and Notify me of outcome of investigation in Writing

### Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?   Yes [ ]   No [X]

Do you need the OCGS staff to write the grievance for you?   Yes [ ]   No [X]

Have you filed this grievance with a court or other agency?   Yes [ ]   No [X]

Did you require the assistance of an interpreter?   Yes [ ]   No [X]

| Inmate's Signature: | Date of Signature: |
|---|---|
| alexall Willa | 9/15/2022 |

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

| TIME STAMP | Grievance Reference #: | Category: |
|---|---|---|
| 2022 SEP 26  P 1: | 587271 | Medical |
|  | Office of Constituent and Grievances Services Coordinator/Officer Signature: | |
|  | Byrne #18049 | |

# AFTER VISIT SUMMARY



NYC
**HEALTH+**
**HOSPITALS** | Elmhurst

**Alexander Williams** MRN: 6162091

📅 9/1/2022  📍 Elmhurst Adult ED 718-334-3054

## Instructions

PT has chronic cholecystitis with recurrent bouts. Pt **MUST** return on **9/15** at **8am** for appointment. NEEDS **Metronidazole 500mg 3x daily for 10 days and ciprofloxacin 500mg 2x daily for 10 days.**

Please return if chest pain,shortness of breath, trouble breathing, nausea , vomiting, malaise, fever, chills, fatigue, trouble or pain on urination, worsening abdominal pain, diarrhea, blood in stool, any worsening signs or symptoms

 **Ambulatory Referral to General Surgery**
Scheduled for 9/15/2022
Expires: 2/28/2023 (requested)
Reason for Referral: Cholecystectomy

## What's Next

**SEP 15 2022** **Follow Up Visit**
Thursday September 15 8:40 AM
(Arrive by 8:20 AM)

Go to H-building: 2nd floor, Room D2-81

Elmhurst General Surgery
79-01 Broadway
Elmhurst NY 11373
718-334-3241
Arrive at: D2-81

## General Emergency Department Discharge Instructions

We appreciate that you chose us as your healthcare provider.

This form provides you with information about the care you received in our Emergency Department and instructions about caring for yourself after you leave the Emergency Department. If you have further questions concerning this visit please call us at the included phone number above on this form. Please keep this form and bring it with you should you need additional treatment. If your symptoms become worse or you are not improving as expected and you are unable to reach your usual health care provider, or get to your follow-up appointment, you should return to the Emergency Department immediately. We are available 24 hours a day.

*It is important that you keep appointments that may have been scheduled. If you are unable to make an appointment, please call the corresponding clinic to reschedule your appointment.*

## Today's Visit

You were seen by Dr. L Iavicoli, MD, Dr. A Campeas, MD, and Dr. U Khatri, MD

**Diagnosis**
Chronic cholecystitis

**🔬 Lab Tests Completed**
BMP
CBC and differential
LFT
Lipase
Manual Differential - Sysmex (REFLEX)

**🩻 Imaging Tests**
US gallbladder

**➕ Done Today**
Inpatient Consult to General Surgery

**💊 Medications Given**
ceFAZolin (ANCEF)
ketorolac (TORADOL) Last given at 6:29 AM
metroNIDAZOLE (FLAGYL)
sodium chloride Stopped at 8:23 AM

NYC
**HEALTH+**
**HOSPITALS** | MYCHART

Our records indicate that you do not meet the minimum age required to sign up for MyChart.

Parents or legal guardians who would like online access to Alexander's medical record via MyChart should request access via Proxy from your clinic staff or local Health Information Department.

Need help signing up for MyChart? Call our MyChart Help Line at 1-844-920-1227 and press 1 for MyChart assistance. Our team is available Monday - Friday, 9:00 AM - 5:00 PM ET.

## NYC Health and Hospital Virtual ExpressCare (continued)

**Visit Expresscare.nyc or call (631) 397-2273 or point your smartphone camera at the QR code to talk to a doctor now.**



## Don't wait any longer! Protect yourself and others against COVID-19!

NYC Health + Hospitals is committed to help New Yorkers fight the COVID-19 pandemic. One of the most powerful tools to end the COVID-19 pandemic are vaccines. By getting vaccinated, you are protecting yourself, your family, your coworkers, and your community. Being vaccinated will prevent you from:
- Getting COVID-19
- Becoming seriously ill or dying due to COVID-19
- Spreading COVID-19 to others

Once vaccinated, you will add to the number of people in the community who are protected. This will help us to reach herd immunity - when a large part of the community becomes immune (protected from) COVID-19. This makes it harder for the disease to spread.

**COVID-19 vaccines are safe, free and effective!**

NYC Health + Hospitals has been using Pfizer, Moderna and J&J vaccines. All three vaccines have been given Emergency Use Authorization (EUA) by the Food and Drug Administration (FDA) in United States. These vaccines have been carefully studied both before and after the FDA's EUA. The vaccines have shown virtually no significant or long-term problems.

In a study of more than 17 million people who received Pfizer or Moderna vaccines:
- Serious allergic reactions happened at a rate of only 2-4 per 1 million doses. This is safer than almost all medicines!

**There are many ways to get your COVID-19 vaccine!**

Anyone age 12 and older that lives in the United States can get the COVID-19 vaccine in New York City. To get your vaccine, you can:

**1. Schedule an appointment online.** Go to https://tinyurl.com/NYCHHCovidVaccine or use the QR code below on your phone:



## COVID-19 Message

For the latest information from NYC Health + Hospitals about the outbreak of respiratory illness caused by the coronavirus known as COVID-19, go to https://www.nychealthandhospitals.org/healthtips/what-you-need-to-know-about-the-coronavirus/

If you have a fever, cough, sore throat, or shortness of breath that is unrelated to an existing condition, or have questions about COVID-19 testing, please call 1-844-NYC-4NYC (1-844-692-4692).

Thank you for being a patient at ELMHURST ADULT ED today. If your prescription was sent to the internal hospital pharmacy, please keep this paper for your records and provide to the pharmacist when you arrive. Thank you again!

**Patient EMPI: 100457149 - For Internal Pharmacy Use Only**

100457149

10100457149

# EXHIBIT –C

ALEXANDER WILLIAMS JR 141-180-1632
G.R.V.C.
09-09 HAZEN STREET
EAST ELMHURST NEW YORK 11370

AUGUST 31, 2022

THE HONORABL JUDHGE KATHERINE H. PARKER
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NEW YORK 10007

RE: WILLIAMS VS. CITY OF NEW YORK ET AL.,
         22-CV-3819

Dear Judge Parker:

        I represent myself Pro-Se in the above-captioned matter. I write
to advise the Court of an extremely troubling event relevant to this case,
involving intimidation and threats against myself, that occurred today Wednesday
August 31, 2022 at the George R. Vierno Center ("GRVC) on Rikers Island,
where I am currently in pretrial detention.

        While I recognize that the Court has yet to reach the discovery
stage in this matter, (Dkt. 33) in order to prevent the loss or destruction
of potentially relevant evidence, I respectfully request that the Court issue
an Order demanding that the defendnat CITY and the New York City Department
of Correction perserve any footage of this event that may exist, as well
as the footage from the incident with SRT from July 28, 2022 that occurred
in side of his housing unit 2a at GRVC.

        Attached is the statement in regards to the events that occurred
today and the areas of the cameras that I am asking that the footage be perserve
from.

        The conduct of the SRT team mebers today suggest that a causal
link exist between the activity in this case or another pending civil case

that is in front of yourself, Judge Gardephe and a seperate matter that is in front of Jugde Lweis J. Liman. In any matter the filing of a Grievance and a law suiot is a protected conduct it is also clear from the statement that DOC officials are willing to try any/all tactics in order to sway the plaintiffs contiunation in civil litigation.

I ask that this Court immedatley serve the requested Order on teh City Of New York and the New York City Department of Correction for any/all video of the incidant that occured on August 31, 2022. Purusnat to to Your Homor's Individual Rule 1, I attempted to reach the counsel for defendnats in this matter John Schemitsch by telephone to confer regardiong this request; I was unable to reach Mr. Schemitsch. Given defendants' opposition to any request in this nature, I am hopeful that the Court will see the impotance of the request in light of the already established factors of the perpensity for retaliation in the following cases at it related to the plaintiff in thsi case, See <u>WILLIAMS V. CITY OF NEW YORK ET AL.,</u> 19-CV-3347 also <u>WILLIAMS V. CITY OF NEW YORK ET AL.,</u> 21-CV-1083, IN Your Honors' own Report and Recommei dations issued on August 05, 2022 as it goes to First Amendment retailaition claims.

RESPECTFULLY SUBMITTED

ALEXANDER WILLIAMS JR PRO-SE

E3XHIBIT-A

## STATEMENT OF FACTS:

### MONDAY 8/29/2022-

On Monday the plaintiff recived information that his Wife Caystal A. Williams had been diagnoised with Breast cancer and he informed mental health personnel that he was not in the right state of mind. See Housing unit 2a logbook page -91, approx 8:00pm.

### TUESDAY 8/30/2022-

ON TUESDAY AT APPROXAMATELY 07:10PM   CO Serrano Sheild No. 12439 notified captin Guam and mental health staff that the plaintiff was acting eracted and seemed depressed, see hosing unit logbook page 94.

### WEDNESDAY 8/31/2022 -

At approxamately 10:30am Captain Mitchell was escorting the pplaintiff to mental health in the cklinic, as the plaintiff was walking out of the housing unit gate in the hallway outside of the housing unit SRT being lead by a Captian Fernandez appeared at the front of the gate and began telling the plaintiff to back up he was not going anywahere right now.

Captain Mitwhell as well as the plaintiff himself voiced to SRT captian Fernandez and SRT members that the plaintif fwas having a mental health episode and had ben summoned to the facility clinic area to met with mental health personnel.

Ignoring the information that a DOC captian gave to them SRT memebers demanded that the hallway gate be opened and when it was advanced towards the plaintiff in a theratening manner while screaming under their masks that "I KNOW YOU " " YOU ARE THE GUY WITH THE LAWSUIT, AM GOING TO FUCK YOU UP TODAY".

It is important to note, that the SRT memnber that made this statement was 6'5 in hieght and was the only one that appeared tro have dreadlocks . He nor any of the other SRT team mebers had body worrn cameras on, name tags and/or shiled numbers, nor were they recognizable because of the fact that they all had hats and face mask on .

The plaintiff retreated from these SRT members and went in the direction of housing uynit officer Serrano and was calling for him to prevent a physical altercation from occurring. As the plaintuiff got closer to housing unit Serrano Sheild No 12439, he lookee back and saw that the SRT member with the dreadsa  was within inches of him with his hands in a strking position , and still talking under his mask about the plaintiff  filing a lawsuit and needing to be taught a lesson.

The plaintiff was able to retreat back into his housing unit barely where he contacted his attroney  Eric Abrams from Paul, Weiss, Rifkind, Wharton & Garrison LLP and informed him of what had just taken place.

Housing unit officer Serrano stayed in the hallway section and explained to the SRT captian , Captian Fernandez that what had just taken place was wrong and improper for a inmate that was having a mental episode, (SPEAKING IN REGARDS TO THE PLAINTIFF ALEXANDER WILLIAMS JR).

Housing Unit officer Serrano place something ion teh housing unit log book relating to the plaintiff mental health matter see page 96 time 11:00am.

SINCERELY:

ALEXANDER WILLIAMS JR

# EXHIBIT –D

# EXHIBIT –E



# THE CITY OF NEW YORK
## DEPARTMENT OF CORRECTION

### GEORGE R. VIERNO CENTER

## WARDEN'S MEMORANDUM



| DISTRIBUTION: **ALL STAFF** | MEMO NO. 3\/20 | Effective Date: 11/19/20 | PREPARED BY (Type Name & Title) SHERMA DUNBAR, WARDEN |
|---|---|---|---|
| SUBJECT: **COURT ORDERED LOCKDOWN INMATES HOUSING AREA 2 A** | | | Page 1 of 1 |

## EFFECTIVE IMMEDIATELY

Effective immediately the following will be strictly adhered to:

When affording services to all inmates housed in 2A which is specific to Court Ordered Lockdown incarcerated individuals, staff <u>MUST</u> activate their Body Worn Camera to ensure all services are being provided.

All services provided to inmate Williams, Alexander B&C#141-18-01632 housed in special housing are 2A "Court Ordered Lockdown" must be memorialized for record keeping. Each housing area Officer assigned to housing area 2A or service Officer affording services in housing area 2A <u>MUST</u> activate their assigned Body Worn Camera when affording any Service to inmate Williams, Alexander.

<u>All staff must denote all services afforded in the housing area logbook, copies of the logbook will be required to be scanned daily along with the completion of the attached Excel Grid memorializing which BWC was activated to record services rendered, which shall coincide with the logbook pages</u>

Any question concerning the contents of this memorandum shall be directed to the Commanding Officer.

<u>Failure to comply with the contents of this memorandum WILL result in disciplinary action.</u>

c: Jonelle Shivraj, Deputy Warden, Security
Tiffany Morales, Deputy Warden, Administration/Programs
Joanne Matos, Deputy Warden, Operations
All Tour Commanders

# EXHIBIT –F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM, PART 7
---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                **LOCKDOWN ORDER**

        - against -

ALEXANDER WILLIAMS,             Kings County
      BOOK & CASE # 1411801632   Indictment Number
      NYSID # 01897858L        2146/18
                   Defendant.
---------------------------------------------------------------X

       WHEREAS the above-captioned defendant is before the Supreme Court, Kings County, PART 7 pending trial in the above-captioned case, wherein he is charged with Murder in the Second Degree, and other related charges, and

       WHEREAS this Court been presented with clear and convincing evidence that this defendant, has solicited the aid of other persons to threaten, intimidate, and cause serious physical injury or death to witnesses, and has been engaging in other conduct that raises serious, well-founded and legitimate concerns, that he poses a continuing, significant risk to the safety of persons whom he perceives as being potential witnesses against him; and this Court finds that the imposition of each of the restrictive conditions of confinement on this defendant that are delineated in this order is essential to protect the integrity of the criminal proceedings against him and others and to assure the safety of potential witnesses and their families, and is required in this case. It is

       ORDERED that pending further written order of this Court or another court of appropriate jurisdiction:

**Housing**

1)     The above-captioned defendant is to be housed in a highly secure area designated by the Department of Correction, preferably the lockdown area, on lock-in, to be separated from all other inmates in the area, in such a manner as to prevent him, to the extent possible, from communicating with or passing material to other inmates,

**Visits and Phone calls**

2)     Defendant is barred from having any visits other than with his attorney, Jeffrey Chabrowe, Esq.

3)     Defendant is precluded from making any telephone calls other than to his attorney, Jeffrey Chabrowe, at 917-529-3921. A correction officer or captain shall dial such telephone number 917-529-3921 using the defendant's PIN number. Moreover, the defendant's PIN number shall

Supreme Court Records OnLine Library - page 10 of 25

Barrett, 917-273-7535.  A correction officer or captain shall dial such the telephone numbers 917-529-3921, 516-316-2841, and 917-273-7535  using the defendant's PIN number.  Moreover, the defendant's PIN number shall be changed weekly and shall not be given to the defendant. The correction officer or captain placing the call shall verify that attorney Jeffrey Chabrowe, Esq. or investigators Kevin Hinckson, or David Barrett, has answered the phone and, only after verifying that said attorney or investigator is on the line, shall permit the defendant in question to speak on the phone.  Additionally, in order to avoid any claim by this defendant that the Department of Corrections has not permitted him to speak with his attorney or investigator in accordance with this order, the Department of Correction will maintain a log of each attorney and investigator call by this defendant, whether completed or not, such log shall detail the following information for each attempted call: a) date and time call requested, b) time call placed, c) whether or not contact was made with the attorney or investigator, 4) the time call ended.

## Movement and Transportation

4)     While in a court detention facility, this defendant will be housed in a similar manner pursuant to paragraph 1.


ORDERED THAT THIS ORDER IS SEALED, copies are to be provided only to the District Attorney of Kings County, the Department of Corrections (DOC) Legal Division, the DOC Operations Security Unit and CCC, the DOC Court Unit, the Warden and Deputy Warden for Security in the jail where the above-captioned defendant is housed, the Commanding Officer of the Brooklyn Court Detention Facility and NYC Correctional Health Services, who shall disseminate by memo to appropriate persons information about the within contained directives which they will be involved in implementing.



SO ORDERED,


Dated:  Brooklyn, New York
        February 13, 2019

FEB 1 3 2019

HONORABLE Vincent DelGiudice
Justice of the Supreme Court


**Hon. Vincent M. Del Giudice
Judge of the Court of Claims
Acting Supreme Court Justice**

11

# EXHIBIT –G



HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**NICOLETTE PELLEGRINO**
*Assistant Corporation Counsel*
Phone: (212) 356-2338
Fax. (212) 356-3509
Email: npellegr@law.nyc.gov

September 14, 2022

VIA E.C.F.
Hon. Katherine H. Parker
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Alexander Williams, Jr. v. City of New York, et al.,
        22 Civ. 3819 (PGG) (KHP)

Your Honor:

I am an Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department and an attorney representing defendant the City of New York in the above referenced matter.[1] The undersigned writes in accordance with the Court's September 13, 2022 Order to provide an update concerning the Plaintiff's upcoming medical appointment.

By way of relevant background, on September 13, 2022, the parties participated in a telephone conference before the Court. (See Sept. 13, 2022 Dkt. Entries.) During the conference, Plaintiff noted, *inter alia*, that he was scheduled for a medical appointment this week and expressed concerns regarding whether the New York City Department of Correction ("DOC") would transport him to his appointment. In response, the Court directed the undersigned to contact DOC to confirm (a) when Plaintiff's medical appointment is scheduled for and (b) that DOC has a plan in place to ensure Plaintiff's timely presence at the hospital on that date and time. In addition, the Court directed the undersigned to submit a letter to the Court by today, September 14, 2022, to provide an update concerning this matter.

Thus, as for the requested update, the undersigned was informed that "Williams, Alexander BC #141-18-01632 is scheduled for [a medical] appointment on Tuesday, September 20th, 2022." In addition, the undersigned was informed that "unless Plaintiff refuses to go or there's an unforeseen circumstance, there is no reason they will not take him to his [appointment]."

---

[1] This case is being handled, under my supervision, by Assistant Corporation Counsel Mary Jane Anderson, who is not yet admitted to the New York State Bar. Ms. Anderson may be reached at (212) 356-2415 or maanders@law.nyc.gov.

# EXHIBIT –H

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Neurology

## Missed Visit Comments
**Date of scheduled visit?** 03/24/2021
**What was the reason for missed visit?** Not Produced

Signed By: Dwyer, Nadia at 3/25/2021 1:51:08 PM

**NYC HEALTH+ HOSPITALS** | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**ALL - Missed Visit**
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**Missed Visit Type**
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

**Missed Visit Comments**
**Date of scheduled visit?** 03/31/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced for bloodwork as per officer Sutton referring capt Williams

Signed By: Nelson, Marie at 3/31/2021 7:17:41 AM

1 of 1

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

| | |
|---|---|
| **Patient Name:**<br>ALEXANDER   WILLIAMS<br>**NYSID:**<br>01897858L | **Latest Book and Case#:**<br>1411801632<br>**Patient Facility:**<br>GRVC |

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 04/07/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced for bloodwork    as per officer Wright referring capt Williams

Signed By: Nelson, Marie at 4/7/2021 7:25:32 AM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 04/14/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC. Capt Guan was notified.

Signed By: Sampeur, Marie at 4/14/2021 7:42:22 AM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 04/21/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

Signed By: Sampeur, Marie at 4/21/2021 7:26:26 AM



**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

<u>**Patient Name**</u>:
ALEXANDER   WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#**</u>:
1411801632
<u>**Patient Facility**</u>:
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**Date of scheduled visit?** 04/22/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Requested to DOC to bring pt to clinic.

Signed By: Otonichar, Joseph at 4/22/2021 5:35:24 PM

# NYC
**HEALTH+
HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**MED - Urgicare Call**
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**Urgicare Call:**
**Urgicare Physician:** Adam Litroff DO
**Referring MD/PA/NP/RN:** Wachtel
**Time of Call:** 15:02
**Evaluation Completed Using:** Phone
**Chief Complaint:** Patient scheduled for WF Sono b/l duplex - Not done.   Since Sono unavailable
tomorrow, will add to list for Thursday WF Sono.
**Category:** Medical
**Additional Follow-Up Needed?** Follow-up by primary care in patient's facility

Signed By: Litroff, Adam at 4/27/2021 8:14:05 PM

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

<u>Patient Name:</u>
ALEXANDER   WILLIAMS
<u>NYSID:</u>
01897858L

<u>Latest Book and Case#:</u>
1411801632
<u>Patient Facility:</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 04/28/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced for bloodwork as per officer Russell referring capt Henry

Signed By: Nelson, Marie at 4/28/2021 8:08:40 AM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

| <u>Patient Name:</u> | <u>Latest Book and Case#:</u> |
|---|---|
| ALEXANDER    WILLIAMS | 1411801632 |
| <u>NYSID:</u> | <u>Patient Facility:</u> |
| 01897858L | GRVC |

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 05/05/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced for bloodwork as per officer Sutton

Signed By: Nelson, Marie at 5/5/2021 7:27:32 AM

NYC
**HEALTH+**
**HOSPITALS** | Correctional Health Services

<u>**Patient Name:**</u>
ALEXANDER   WILLIAMS
<u>**NYSID:**</u>
01897858L

<u>**Latest Book and Case#:**</u>
1411801632
<u>**Patient Facility:**</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**Date of scheduled visit?** 05/20/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Requested produce pt but escort reported pt could not be produced

Signed By: Otonichar, Joseph at 5/20/2021 5:40:18 PM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

### Missed Visit Comments
**Date of scheduled visit?** 05/27/2021
**What was the reason for missed visit?** Not Produced

Signed By: Otonichar, Joseph at 5/27/2021 5:16:19 PM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER  WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (03/27/2021 6:46:55 PM)
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** Abilify 5mg QHS - 100%
melatonin 2mg QHS - 100%
**Current Medications:**
HYDROCORTISONE 1% OINTMENT 30 GM 30 GM (HC OINT 30 GM) (HYDROCORTISONE) apply bid; Route: EXTERNAL
MICONAZOLE 2% ANTIFUNGAL 30 GM (MICONAZOLE NITRATE) apply bid Route: EXTERNAL
TRIAMCINOLONE   NASAL 55 MCG / 1 ML (NASACORT 55 MCG / 1 ML) (TRIAMCINOLONE ACETONIDE) 1 spray nasally daily; Route: NASAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) take   5   mg   by mouth     at bedtime; Route: ORAL
MELATONIN 1 MG (MELATONIN) take     2   mg   by mouth     at bedtime Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

### Missed Visit Comments
**Date of scheduled visit?** 05/27/2021
**What was the reason for missed visit?** Not Produced

1 of 2

# NYC
# HEALTH+
# HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

Signed By: Otonichar, Joseph at 5/28/2021 11:04:01 AM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type

**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments

**Date of scheduled visit?** 06/02/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

Signed By: Sampeur, Marie at 6/2/2021 7:36:06 AM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

### Missed Visit Comments
**Date of scheduled visit?** 06/04/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced.


Signed By: Otonichar, Joseph at 6/4/2021 12:18:14 PM

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

Patient Name:
ALEXANDER   WILLIAMS
NYSID:
01897858L

Latest Book and Case#:
1411801632
Patient Facility:
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**  DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 06/09/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** patient not produced for labs: HGBA1C, QFT, RPR and IRON / FERRITIN

Signed By: Quinones, Maritza at 6/9/2021 1:37:40 PM

# Correctional Health Services

NYC
HEALTH+
HOSPITALS

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**.  DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (03/27/2021 6:46:55 PM)
**Number of previous consecutive bridges prior to this visit:**   2
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** aripiprazole 5mg QHS - 90%
melatonin 1mg QHS - 90%
**Current Medications:**
MELATONIN 1 MG (MELATONIN) 1 mg hs Route: ORAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5 mg hs; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
MELATONIN 1 MG (MELATONIN) 1 mg hs Route: ORAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5 mg hs; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**What was the reason for missed visit?** Not Produced

1 of 2

**NYC
HEALTH+
HOSPITALS** | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

Signed By: Otonichar, Joseph at 6/10/2021 3:45:47 PM

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Physical Therapy

### Missed Visit Comments
**Date of scheduled visit?** 06/09/2021
**What was the reason for missed visit?** Not Produced

Signed By: Dwyer, Nadia at 6/11/2021 10:08:44 AM

 NYC
HEALTH+
HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 06/16/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

Signed By: Sampeur, Marie at 6/16/2021 6:37:16 AM

**NYC
HEALTH+
HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**  PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (03/27/2021 6:46:55 PM)
**Number of previous consecutive bridges prior to this visit:**   3
**Current Medications:**
MELATONIN 1 MG (MELATONIN) 1 mg hs; Route: ORAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5 mg hs; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff
q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE
DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
MELATONIN 1 MG (MELATONIN) 1 mg hs; Route: ORAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5 mg hs; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**What was the reason for missed visit?** Not Produced

Signed By: Otonichar, Joseph at 6/17/2021 5:55:58 PM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

 **HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 06/23/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced by DOC for Lab. Capt. Fields aware

Signed By: Tabansi, Daniel at 6/23/2021 7:55:21 AM

# NYC HEALTH+HOSPITALS | Correctional Health Services

| | |
|---|---|
| **Patient Name:** | **Latest Book and Case#:** |
| ALEXANDER   WILLIAMS | 1411801632 |
| **NYSID:** | **Patient Facility:** |
| 01897858L | GRVC |

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type

**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments

**Date of scheduled visit?** 06/23/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced for blood work by C O Renoit. Capt Guam was notified.

Signed By: Sampeur, Marie at 6/23/2021 6:48:10 AM

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Medical
**The following services were missed (Medical):** Chronic Care Visit

## Missed Visit Comments
**Date of scheduled visit?** 07/01/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** AS PER CLINIC OFFICER , RUSSELL   -   NO ESCORT AVAILABLE TO PRODUCE THE PATIENT

Signed By: Kelly, Guy at 7/1/2021 8:27:42 PM

 **HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER . WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**Date of scheduled visit?** 07/01/2021
**What was the reason for missed visit?** Not Produced

Signed By: Otonichar, Joseph at 7/2/2021 3:20:30 PM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge

Patient: ALEXANDER WILLIAMS    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (03/27/2021 6:46:55 PM)
**Number of previous consecutive bridges prior to this visit:**   6
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** ARIPIPRAZOLE 5 MG TABLET HS TAKE 5mg AT BEDTIME 07/03/2021 07/10/2021 5/5 = 100% NON-CARRY Active ORAL 7/7/2021 8:01:00 PM 7/8/2021 9:00:00 PM
BECLOMETHASONE DIP HFA 80 MCG/INH BID ONE PUFF TWICE A DAY 05/20/2021 08/18/2021 2/2 = 100% CARRY Active INHALATION 6/23/2021 9:00:00 PM 7/24/2021 9:00:00 PM
MAALOX MAXIMUM STRENGTH ORAL SUSP BID TAKE 30cc (2 tablespoonsful) TWICE A DAY 07/03/2021 07/13/2021 1/1 = 100% CARRY Active ORAL 7/2/2021 9:51:00 AM 7/10/2021 9:00:00 PM
MELATONIN 1 MG (PSYCH) TABLET HS TAKE 1mg AT BEDTIME 07/03/2021 07/10/2021 5/5 = 100% NON-CARRY Active ORAL 7/7/2021 8:01:00 PM 7/8/2021 9:00:00 PM
ARIPIPRAZOLE 5 MG TABLET HS 5 MG AT BEDTIME 06/25/2021 07/02/2021 8/8 = 100% NON-CARRY Discontinued ORAL 7/2/2021 9:00:00 PM
MAALOX MAXIMUM STRENGTH ORAL SUSP BID 30 mL TWICE A DAY 06/23/2021 07/07/2021 2/3 = 67% CARRY Discontinued ORAL 6/30/2021 9:00:00 PM 7/7/2021 9:00:00 PM
MELATONIN 1 MG (PSYCH) TABLET HS ONE MG AT BEDTIME 06/25/2021 07/02/2021 8/8 = 100% NON-CARRY Discontinued ORAL 7/2/2021 9:00:00 PM

**Relevant clinical information:** Pt not produced by DOC despite request. Pt housed in ESH. Will reschedule visit.
**Current Medications:**
MAALOX MAXIMUM STRENGTH SUSP 473 ML (MAALOX MAXIMUM STRENGTH (ALUM & MAG HYDROXIDE-SIMETH SUSP) 30cc by mouth twice a day
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS, Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS; Route: ORAL

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type

**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments

**What was the reason for missed visit?** Not Produced

Signed By: Otonichar, Joseph at 7/8/2021 2:33:53 PM

**NYC HEALTH+ HOSPITALS** | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: 1411801632   NYSID: 01897858L
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (03/27/2021 6:46:55 PM)
**Number of previous consecutive bridges prior to this visit:**   7
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** ARIPIPRAZOLE 5 MG TABLET QHS 5MG AT BEDTIME 07/08/2021 07/15/2021
7/7 = 100% NON-CARRY Active ORAL 7/14/2021 9:00:00 PM 7/15/2021 9:00:00 PM
MELATONIN 1 MG (PSYCH) TABLET QHS 1MG AT BEDTIME 07/08/2021 07/15/2021 7/7 = 100%
NON-CARRY Active ORAL 7/14/2021 9:00:00 PM 7/15/2021 9:00:00 PM
**Relevant clinical information:** Pt not produced despite request to DOC. Will again bridge MH Rx to limit interruption in care. Will reschedule f/u.
**Current Medications:**
ACETAMINOPHEN 325 MG (TYLENOL 325 MG) (ACETAMINOPHEN) 2 TABS   twice a day   as needed; Route: ORAL
MAALOX MAXIMUM STRENGTH SUSP 473 ML (MAALOX MAXIMUM STRENGTH (ALUM & MAG HYDROXIDE-SIMETH SUSP) 30 ML   DAILY   PRN Route: ORAL
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) 5mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: 1411801632   NYSID: 01897858L
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds

 **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

**Missed Visit Comments**
**Date of scheduled visit?** 07/15/2021
**What was the reason for missed visit?** Not Produced

Signed By: Otonichar, Joseph at 7/15/2021 2:31:43 PM

**NYC**
**HEALTH+**
**HOSPITALS** │ Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**ALL - Missed Visit**
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**Missed Visit Type**
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

**Missed Visit Comments**
**Date of scheduled visit?** 07/21/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not prod. by DOC for Weight and VS/BP, Charge Nurse RN SON Napolean
notified for endorsement to next tour.

Signed By: Surajbali, Charlotte at 7/21/2021 12:46:04 PM

 **NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/22/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not Produced by DOC, for nursing follow-up.

Signed By: Archer, Gwennette at 7/22/2021 1:29:55 PM

 NYC
HEALTH+
HOSPITALS | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/23/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not prod. by DOC for VS/BP and weight, charge Nurse RN Bredy notified for endorsement to next tour.

Signed By: Surajbali, Charlotte at 7/23/2021 12:39:28 PM

**NYC
HEALTH+
HOSPITALS** | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

### ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Podiatry

### Missed Visit Comments
**Date of scheduled visit?** 07/23/2021
**What was the reason for missed visit?** Not Produced

Signed By: Dwyer, Nadia at 7/23/2021 3:32:08 PM

**NYC**
**HEALTH+**
**HOSPITALS** | Correctional Health Services

<u>**Patient Name**</u>:
ALEXANDER   WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#**</u>:
1411801632
<u>**Patient Facility**</u>:
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 07/25/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt. not prod. by DOC for weight and VS/BP, Charge Nurse RN Marinez notified for endorsement to next tour.

Signed By: Surajbali, Charlotte at 7/25/2021 12:11:31 PM

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/25/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced by DOC for   VS/BP and weight check.

Signed By: Marinez, Kati at 7/25/2021 6:40:00 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

| | |
|---|---|
| **Patient Name:** | **Latest Book and Case#:** |
| ALEXANDER   WILLIAMS | 1411801632 |
| **NYSID:** | **Patient Facility:** |
| 01897858L | GRVC |

## NU - Vital Signs
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

Current Vital Signs
Last height (inches): **73 (10/24/2019 7:57:04 PM)**      Last Weight: **221 (10/06/2020 11:24:56 AM)**
oF

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing

## Missed Visit Comments
**Date of scheduled visit?** 07/26/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** CO Munn given follow-up list, Captain Sapp made aware

Signed By: Mitchell, Justin at 7/26/2021 2:29:26 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:** .
GRVC

**Date and Time Encounter Created**: July 27, 2021 11:57 AM

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 07/27/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** NSG POLICY89
CLINIC CAPTAIN NOTIFIED.

Signed By: Purrier, Sheldon at 7/27/2021 11:57:50 AM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

<u>**Patient Name**</u>:
ALEXANDER    WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#**</u>:
1411801632
<u>**Patient Facility**</u>:
GRVC

<u>**Date and Time Encounter Created**</u>: July 28, 2021 7:18 AM

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/28/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced for blood work by C O Renoit. Capt Loiseau made aware.

Signed By: Sampeur, Marie at 7/28/2021 7:19:01 AM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Date and Time Encounter Created**: July 28, 2021 3:28 PM

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/28/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced by DOC. for nursing follow-up.

Signed By: Archer, Gwennette at 7/28/2021 3:35:20 PM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 07/29/2021
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** July 29, 2021 2:31 PM

Signed By: Jean, Edriste at 7/29/2021 2:32:04 PM

 **HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 07/30/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** F/U IN AM,

**Date and Time Encounter Created**: July 30, 2021 12:59 PM

Signed By: Jean, Edriste at 7/30/2021 1:01:13 PM

NYC
**HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 07/31/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced by DOC

**Date and Time Encounter Created:** July 31, 2021 12:05 PM

Signed By: Olowoyo, Adetinuke at 7/31/2021 1:15:43 PM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

### Missed Visit Comments
**Date of scheduled visit?** 08/02/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Charge Nurse and Captain made aware.

**Date and Time Encounter Created:** August   2, 2021 12:54 PM

Signed By: Quinones, Maritza at 8/2/2021 12:56:08 PM

 **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 08/03/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Charge Nurse and Captain made aware.

**Date and Time Encounter Created**: August   3, 2021 1:52 PM

Signed By: Quinones, Maritza at 8/3/2021 1:53:00 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**Date of scheduled visit?** 08/03/2021
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** August    5, 2021 2:08 PM

Signed By: Otonichar, Joseph at 8/5/2021 2:08:15 PM

**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS    DOB: 02/08/1981    Age: 40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (07/20/2021 4:52:54 PM)
**Number of previous consecutive bridges prior to this visit:**   0
**Percent compliance with individual's medications since last prescription (Type medication name
and % compliance):** DIPHENHYDRAMINE (PSYCH) 50 MG CAPSULE QHS 50MG AT BEDTIME
07/20/2021 08/03/2021 14/15 = 93% NON-CARRY Discontinued ORAL 8/3/2021 9:00:00 PM
MELATONIN 1 MG (PSYCH) TABLET QHS 1MG AT BEDTIME 07/20/2021 08/03/2021 14/15 = 93%
NON-CARRY Discontinued ORAL 8/3/2021 9:00:00 PM

**Current Medications:**
PSEUDOEPHEDRINE HCL 30 MG (SUDAFED 30 MG) (PSEUDOEPHEDRINE HCL) take one tablet
every 12 hours; Route: ORAL
CALCIUM POLYCARBOPHIL 625 MG ORAL TABLET (CALCIUM POLYCARBOPHIL) two tabs by mouth
twice a day; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff
q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE
DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL)
50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## Missed Visit Comments
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created**: August   5, 2021 2:08 PM

Signed By: Otonichar, Joseph at 8/5/2021 2:10:00 PM

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 08/12/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced by DOC

**Date and Time Encounter Created**: August 12, 2021 3:25 PM

Signed By: Mcdonald, Remona at 8/12/2021 3:26:07 PM

 NYC
HEALTH+
HOSPITALS | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

### ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP, Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 08/09/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt. not prod. by DOC for weight VS/BP, charge Nurse RN Mitchell notified for endorsement to next tour.

**Date and Time Encounter Created**: August   9, 2021 1:00 PM

Signed By: Surajbali, Charlotte at 8/9/2021 1:00:45 PM

**NYC**
**HEALTH+**
**HOSPITALS** | Correctional Health Services

<u>**Patient Name:**</u>
ALEXANDER   WILLIAMS
<u>**NYSID:**</u>
01897858L

<u>**Latest Book and Case#:**</u>
1411801632
<u>**Patient Facility:**</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 08/10/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** NSG POLICY89
CLINIC CAPTAIN FIELDS NOTIFIED.

<u>**Date and Time Encounter Created**</u>: August 10, 2021 1:29 PM

Signed By: Purrier, Sheldon at 8/10/2021 1:30:23 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Podiatry

## Missed Visit Comments
Date of scheduled visit? 08/10/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient was not seen in (not produced to) West Facility Podiatry clinic on
8/10/21.

**Date and Time Encounter Created**: August 10, 2021 3:00 PM

Signed By: Goldberg, Allan at 8/10/2021 3:00:48 PM

**HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 08/11/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient not produced by DOC.

**Date and Time Encounter Created:** August 11, 2021 3:26 PM


Signed By: Okon, Linnette at 8/11/2021 3:27:05 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing): VS/BP**

## Missed Visit Comments
**Date of scheduled visit?** 08/11/2021
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** August 11, 2021 3:37 PM

Signed By: Williams, Andre at 8/11/2021 3:37:26 PM

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: GRVC   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 08/12/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** wt and vs

**Date and Time Encounter Created:** August 12, 2021 4:13 PM

Signed By: Razak, Juanita at 8/12/2021 4:13:44 PM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## NU - Vital Signs
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

Current Vital Signs
Last height (inches): **73 (10/24/2019 7:57:04 PM)**     Last Weight: **221 (10/06/2020 11:24:56 AM)**
oF

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

### Missed Visit Comments
**Date of scheduled visit?** 08/13/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Follow up list given to DOC, Patient was not produced. CO Robert

**Date and Time Encounter Created**: August 13, 2021 10:04 AM

Signed By: Mitchell, Justin at 8/13/2021 12:54:34 PM

NYC
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**   PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (07/20/2021 4:52:54 PM)
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** smi-no
benadryl
melatonin

unable   to   check   compliance   - program   not   working
**Relevant clinical information:** per   doc   staff   higgins   was not   produced
**Current Medications:**
IBUPROFEN 400 MG (MOTRIN 400 MG) (IBUPROFEN) 400 mg by mouth twice a day   with food.;
Route: ORAL
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL)
50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 1mg QHS; Route: ORAL
CALCIUM POLYCARBOPHIL 625 MG ORAL TABLET (CALCIUM POLYCARBOPHIL) two tabs by mouth
twice a day; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff
q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE
DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
MELATONIN 1 MG (MELATONIN) take   1   mg   by mouth   at bedtime Route: ORAL
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) take
50   mg   by mouth   at bedtime; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

**Missed Visit Comments**
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** August 14, 2021 10:40 PM

Signed By: Calicdan, Raul at 8/14/2021 10:46:06 PM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 08/16/2021
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created**: August 16, 2021 2:40 PM

Signed By: Blount, Jacqueline at 8/16/2021 2:41:16 PM

# NYC HEALTH+HOSPITALS | Correctional Health Services

| | |
|---|---|
| **Patient Name:** | **Latest Book and Case#:** |
| ALEXANDER   WILLIAMS | 1411801632 |
| **NYSID:** | **Patient Facility:** |
| 01897858L | GRVC |

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type

**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments

**Date of scheduled visit?** 08/18/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced for blood work by C O Renoit. Capt Johnson made aware

**Date and Time Encounter Created**: August 18, 2021 7:23 AM

Signed By: Sampeur, Marie at 8/18/2021 7:23:59 AM

# HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 08/19/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced by DOC.

**Date and Time Encounter Created**: August 19, 2021 3:22 PM

Signed By: Okon, Linnette at 8/19/2021 3:23:02 PM

 **NYC HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, VS/BP

## Missed Visit Comments
**Date of scheduled visit?** 08/20/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced by DOC.

**Date and Time Encounter Created:** August 20, 2021 3:14 PM

Signed By: Okon, Linnette at 8/20/2021 3:14:57 PM

**NYC**
**HEALTH+**
**HOSPITALS** | **Correctional Health Services**

<u>**Patient Name**</u>:
ALEXANDER   WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#**</u>:
1411801632
<u>**Patient Facility**</u>:
GRVC

**ALL - Missed Visit**
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**Missed Visit Type**
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** VS/BP

**Missed Visit Comments**
**Date of scheduled visit?** 08/21/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** not produced by DOC for VS/BP

<u>**Date and Time Encounter Created**</u>: August 21, 2021 3:45 PM

Signed By: Adrien, Elza at 8/21/2021 3:45:28 PM

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

### Missed Visit Type

**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments

**Date of scheduled visit?** 08/25/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** pt not produced by DOC.

**Date and Time Encounter Created:** August 25, 2021 3:00 PM

Signed By: Okon, Linnette at 8/25/2021 3:00:34 PM

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

<u>**Patient Name:**</u>
ALEXANDER   WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#:**</u>
1411801632
<u>**Patient Facility:**</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 09/01/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** pt not produced by DOC.

<u>**Date and Time Encounter Created**</u>: September   1, 2021 3:23 PM

Signed By: Okon, Linnette at 9/1/2021 3:23:56 PM

 **HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up, COVID-19 PCR Testing

## Missed Visit Comments
**Date of scheduled visit?** 09/22/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt not produced by DOC, for nursing follow--up.

**Date and Time Encounter Created**: September 22, 2021 3:25 PM

Signed By: Archer, Gwennette at 9/22/2021 3:25:28 PM

NYC
**HEALTH+
HOSPITALS** | # Correctional Health Services

Patient Name:
ALEXANDER   WILLIAMS
NYSID:
01897858L

Latest Book and Case#:
1411801632
Patient Facility:
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**  PsychMeds
**The following services were missed:**  Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (09/04/2021 3:20:50 PM)
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** smi -   no

melatonin- 96%

benadryl  - 96    %
**Current Medications:**
MELATONIN 1 MG (MELATONIN) take     1   mg by mouth at bedtime Route: ORAL
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) take
50   mg   by mouth at bedtime; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff
q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE
DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) take
50   mg by mouth at bedtime; Route: ORAL
MELATONIN 1 MG (MELATONIN) take     1    mg    by mouth   at bedtime Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

Missed Visit Type
Visit type? PsychMeds
ing services were missed (Psych Meds) Psych Medication Re-Evaluation

mments

NYC
**HEALTH+**
**HOSPITALS** | **Correctional Health Services**

<u>**Patient Name**</u>:
ALEXANDER   WILLIAMS
<u>**NYSID**</u>:
01897858L

<u>**Latest Book and Case#**</u>:
1411801632
<u>**Patient Facility**</u>:
GRVC

**What was the reason for missed visit?** Not Produced

<u>**Date and Time Encounter Created**</u>: October   2, 2021 10:57 AM

Signed By: Calicdan, Raul at 10/2/2021 11:01:51 AM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
Missed Visit type? Specialty - On-Site
The following services were missed (Specialty):   Podiatry

### Missed Visit Comments
Date of scheduled visit? 10/04/2021
What was the reason for missed visit? Not Produced
**Missed visit comments:** Patient was not seen in (not produced to) West Facility Podiatry clinic on 10/4/21.

**Date and Time Encounter Created:** October   4, 2021 3:26 PM

Signed By: Goldberg, Allan at 10/4/2021 3:26:49 PM

NYC
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

<u>**Patient Name:**</u>
ALEXANDER   WILLIAMS
<u>**NYSID:**</u>
01897858L

<u>**Latest Book and Case#:**</u>
1411801632
<u>**Patient Facility:**</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 10/06/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by CO Mcquiller. Capt Guam was notified.

<u>**Date and Time Encounter Created**</u>: October   6, 2021 7:09 AM

Signed By: Sampeur, Marie at 10/6/2021 7:10:03 AM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 11/03/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** LAB
NSG POLICY89
BING CAPTAIN AND CLINIC CAPTAIN NOTIFIED.

**Date and Time Encounter Created:** November   3, 2021 12:50 PM

Signed By: Purrier, Sheldon at 11/3/2021 12:51:04 PM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

<u>**Patient Name:**</u>
ALEXANDER   WILLIAMS
<u>**NYSID:**</u>
01897858L

<u>**Latest Book and Case#:**</u>
1411801632
<u>**Patient Facility:**</u>
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**    Podiatry

### Missed Visit Comments
**Date of scheduled visit?** 11/08/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient was not seen in (not produced to) Podiatry clinic on 11/8/21.

<u>**Date and Time Encounter Created**</u>: November   8, 2021 2:48 PM

Signed By: Goldberg, Allan at 11/8/2021 2:48:33 PM

## NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

### ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** MH Visit
**The following services were missed (MH Visit):** TPR and Clinician Progress Note

### Missed Visit Comments
**Date of scheduled visit?** 12/16/2021
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** DOC Alarm at clinic. Pt was rescheduled.

**Date and Time Encounter Created:** December 16, 2021 11:25 PM

Signed By: Whittingham, Phillip at 12/16/2021 11:26:40 PM

**NYC HEALTH+ HOSPITALS** | **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632** / NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

PsychMeds Bridge
**Missed Visit type?**  PsychMeds
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (12/06/2021 3:38:39 PM)
**Number of previous consecutive bridges prior to this visit:**   2
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** DIPHENHYDRAMINE (PSYCH) 50 MG CAPSULE   QHS
50MG AT BEDTIME
12/06/2021
01/05/2022
30/30 = 100%
NON-CARRY
Active
ORAL
1/4/2022 6:41:00 PM
1/5/2022 9:00:00 PM
HEMORRHOIDAL 0.25% 1 SUPP.RECT   BID
INSERT ONE SUPPOSITORY RECTALLY TWICE A DAY AS DIRECTED
12/27/2021
01/11/2022
28/28 = 100%
CARRY
Active
RECTAL
1/3/2022 9:00:00 PM
1/10/2022 9:00:00 PM
MELATONIN 1 MG (PSYCH) TABLET   QHS
2MG AT BEDTIME
12/06/2021
01/05/2022
30/30 = 100%
NON-CARRY
Active
ORAL
1/4/2022 6:41:00 PM
1/5/2022 9:00:00 P
**Current Medications:**
HEMORRHOIDAL 0.25% SUPP 1 SUP (ANUMED 1 SUP) (PHENYLEPHRINE-COCOA BUTTER SUPP)

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

One supp. Rectally twice a day; Route: RECTAL
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) 50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 2mg QHS; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) 50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 2mg QHS; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** PsychMeds
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created**: January   5, 2022 3:50 PM

Signed By: Otonichar, Joseph at 1/5/2022 3:51:21 PM

## NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

### ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments
**What was the reason for missed visit?** Not Produced

Signed By: Surajbali, Charlotte at 1/11/2022 4:05:04 PM

1 of 1

**NYC
HEALTH+
HOSPITALS** | # Correctional Health Services

<u>Patient Name:</u>
ALEXANDER    WILLIAMS
<u>NYSID:</u>
01897858L

<u>Latest Book and Case#:</u>
1411801632
<u>Patient Facility:</u>
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

<u>PsychMeds Bridge</u>
**The following services were missed:**   Psych Medication Re-Evaluation
**Reason patient is being bridged:** Not Produced
**Date of of last Psychiatry Medication Reevaluation::**
MH - Psychiatry - Medication Reevaluation (12/06/2021 3:38:39 PM)
**Number of previous consecutive bridges prior to this visit:**   0
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** Benadryl and melatonin = 100%
**Relevant clinical information:** BO x 10 days with patient follow up scheduled next week.
**Current Medications:**
PSEUDOEPHEDRINE HCL 30 MG (SUDAFED 30 MG) (PSEUDOEPHEDRINE HCL) 1 tab bid; Route: ORAL
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) 50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 2mg QHS; Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
DIPHENHYDRAMINE (PSYCH) 50 MG (BENADRYL (PSYCH) 50 MG) (DIPHENHYDRAMINE HCL) 50mg QHS; Route: ORAL
MELATONIN 1 MG (MELATONIN) 2mg QHS; Route: ORAL

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **40 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

## Missed Visit Type
**The following services were missed (Psych Meds)** Psych Medication Re-Evaluation

## Missed Visit Comments
**What was the reason for missed visit?** Not Produced

 **Correctional Health Services**

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Date and Time Encounter Created**: January 13, 2022 5:16 PM

Signed By: Burns, Brian at 1/13/2022 5:18:09 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
WF

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **WF**   Housing Area: **CDU6**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

## Missed Visit Comments
**Date of scheduled visit?** 01/19/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** pt was not produced by DOC

**Date and Time Encounter Created**: January 19, 2022 11:07 AM

Signed By: Dixon, Shatoya at 1/19/2022 11:08:33 AM

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Podiatry

## Missed Visit Comments
**Date of scheduled visit?** 01/28/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient was not seen in (not produced to) West Facility Podiatry clinic on 1/28/22.

**Date and Time Encounter Created:** January 28, 2022 3:16 PM

Signed By: Goldberg, Allan at 1/28/2022 3:17:04 PM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
 01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
 GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Medical
**The following services were missed (Medical):** Medical Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 02/14/2022
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** February 15, 2022 10:12 AM

Signed By: Persaud, Bryan at 2/15/2022 10:12:56 AM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

### ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

### Missed Visit Comments
**Date of scheduled visit?** 03/02/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** patient not produced by DOC.

**Date and Time Encounter Created:** March   2, 2022 3:04 PM

Signed By: Okon, Linnette at 3/2/2022 3:05:00 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Specialty - On-Site
**The following services were missed (Specialty):**   Podiatry

## Missed Visit Comments
**Date of scheduled visit?** 03/08/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Patient was not produced to (not seen in) West Facility Podiatry clinic on 3/8/22.

**Date and Time Encounter Created**: March   8, 2022 4:36 PM

Signed By: Goldberg, Allan at 3/8/2022 4:37:01 PM

1 of 1

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**    DOB: **02/08/1981**    Age: **41 Years Old**
Book & Case #: **1411801632**    NYSID: **01897858L**
Facility: **GRVC**    Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 03/16/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

**Date and Time Encounter Created:** March 16, 2022 7:49 AM

Signed By: Sampeur, Marie at 3/16/2022 7:50:20 AM

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
Missed Visit type? Nursing
The following services were missed (Nursing): Nursing Follow-Up

## Missed Visit Comments
Date of scheduled visit? 03/16/2022
What was the reason for missed visit? Not Produced
Missed visit comments: LABS

**Date and Time Encounter Created**: March 16, 2022 9:14 PM

Signed By: Blount, Jacqueline at 3/16/2022 9:14:59 PM

**NYC
HEALTH+
HOSPITALS** | Correctional Health Services

Patient Name:
ALEXANDER   WILLIAMS
NYSID:
01897858L

Latest Book and Case#:
1411801632
Patient Facility:
GRVC

### ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 03/23/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

Date and Time Encounter Created: March 30, 2022 7:39 AM

Signed By: Sampeur, Marie at 3/30/2022 7:39:53 AM

1 of 1

**NYC HEALTH+ HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

### Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Services Other

### Missed Visit Comments
**Date of scheduled visit?** 04/06/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt was not produced by DOC.

**Date and Time Encounter Created**: April   6, 2022 7:44 AM

Signed By: Sampeur, Marie at 4/6/2022 7:45:06 AM

**NYC**
**HEALTH+**
**HOSPITALS** | # Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** MH Visit
**The following services were missed (MH Visit):** TPR and Clinician Progress Note

## Missed Visit Comments
**Date of scheduled visit?** 04/08/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** Pt requested to have his session rescheduled due to his complaint of not being afforded privacy on the unit. DOC noted efforts will be made to secure a key to an interview room located outside the unit for future encounters. Pt was thus rescheduled.

**Date and Time Encounter Created**: April   8, 2022 10:27 PM

Signed By: Whittingham, Phillip at 4/8/2022 10:30:41 PM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **41 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Medical
**The following services were missed (Medical):** Medical Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 04/21/2022
**What was the reason for missed visit?** Not Produced

**Date and Time Encounter Created:** April 25, 2022 6:37 AM

Signed By: Gaston, Noelle at 4/25/2022 6:37:36 AM

**NYC HEALTH+ HOSPITALS** | Correctional Health Services

Patient Name:
ALEXANDER   WILLIAMS
NYSID:
01897858L

Latest Book and Case#:
1411801632
Patient Facility:
GRVC

### ALL - Missed Visit
Patient: ALEXANDER WILLIAMS   DOB: 02/08/1981   Age: 41 Years Old
Book & Case #: 1411801632   NYSID: 01897858L
Facility: GRVC   Housing Area: 2A

### Missed Visit Type
Missed Visit type? Specialty - On-Site
The following services were missed (Specialty):   Podiatry

### Missed Visit Comments
Date of scheduled visit? 05/23/2022
What was the reason for missed visit? Not Produced
Missed visit comments: np # 3 by doc on 4-28-22 r/s to 5-23-22--routine podiatry

Date and Time Encounter Created: April 29, 2022 1:27 PM

Signed By: Ward, Natalie at 4/29/2022 1:27:57 PM

1 of 1

# NYC HEALTH+HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## ALL - Missed Visit
Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

## Missed Visit Type
**Missed Visit type?** Nursing
**The following services were missed (Nursing):** Nursing Follow-Up

## Missed Visit Comments
**Date of scheduled visit?** 01/26/2022
**What was the reason for missed visit?** Not Produced
**Missed visit comments:** patient not produced by DOC.

**Date and Time Encounter Created**: January 26, 2022 2:36 PM

Signed By: Okon, Linnette at 1/26/2022 2:36:24 PM

1 of 1

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

**Form Name:** MH - PsychMeds Bridge
**Form Obs:** MH - PsychMeds Bridge

## MH - PsychMeds Bridge

ALEXANDER WILLIAMS

GRVC
**DOB:**
02/08/1981
**NYSID:**
01897858L
**Book and Case:**
1411801632

### PsychMeds Bridge

**Reason patient is being bridged:** CHS administratively cancelled
**Number of previous consecutive bridges prior to this visit:** 1
**Percent compliance with individual's medications since last prescription (Type medication name and % compliance):** 94%
**Relevant clinical information:** Last psych f/u 3/27; seen by MHC on 4/29 for threatening self-injurious behavior; per DOC, pts housed in ESH unable to be produced for f/u. Will therefore bridge current Rx to prevent interruption in care until can be seen for psych f/u.
**Current Medications:**
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) take    5    mg    by mouth      at bedtime
Route: ORAL
MELATONIN 1 MG (MELATONIN) take     2    mg   by mouth      at bedtime Route: ORAL
ALBUTEROL 90 MCG / 1 INH (VENTOLIN / PROVENTIL HFA 90 MCG / (ALBUTEROL SULFATE) 2 puff q 6 hours prn; Route: INHALATION
BECLOMETHASONE DIP HFA 80 MCG (QVAR REDIHALER HFA 80 MCG) (BECLOMETHASONE DIPROP HFA) 1 puff bid.; Route: INHALATION

**New Medications:**
ARIPIPRAZOLE 5 MG (ABILIFY 5 MG) (ARIPIPRAZOLE) take    5    mg      by mouth      at bedtime
Route: ORAL
MELATONIN 1 MG (MELATONIN) take     2    mg   by mouth    at bedtime Route: ORAL

Signed By: Rosenberg, David at 5/12/2021 2:13:16 PM

# NYC
# HEALTH+
# HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER    WILLIAMS
**NYSID:**
 01897858L

**Latest Book and Case#:**
 1411801632
**Patient Facility:**
 GRVC

Signed By: Marinez, Kati at 7/14/2021 2:05:32 PM

# NYC HEALTH+ HOSPITALS | Correctional Health Services

**Patient Name:**
ALEXANDER   WILLIAMS
**NYSID:**
01897858L

**Latest Book and Case#:**
1411801632
**Patient Facility:**
GRVC

## MED - Assessment & Plan

Patient: **ALEXANDER WILLIAMS**   DOB: **02/08/1981**   Age: **40 Years Old**
Book & Case #: **1411801632**   NYSID: **01897858L**
Facility: **GRVC**   Housing Area: **2A**

**Allergy Review**
**\* PEPPER (Severe)**
**Seafood (Moderate)**

Allergies reviewed:
**YES**

**Assessment:**
**Problem # 1:**
Cavernous hemangioma - liver (ICD-228.04) (ICD10-D18.03)
Patient   was scheduled to   see   TELEHEALTH   SURGERY   FROM   TODAY   BUT WAS NOT
PRODUCED   BY   DOC   FOR HIS
TELEHEALTH SURGERY
**Summary:**

**Form Name** MED - Telehealth Services
**Form Obs:** MED - Telehealth Services
MED - Telehealth Services

ALEXANDER WILLIAMS

GRVC

**Telehealth Services**
**Visit Type:** Bellevue/Elmhurst specialty

**Date and Time Encounter Created**: November   3, 2021 4:13 PM

Signed By: Comas, Carole at 11/6/2021 12:52:03 PM

1 of 1

**Correctional Health Services**
55 Water Street 18th Fl
New York, NY 10041

5/16/2022

Order Form

## REFERRAL ORDER

| Authorizing Provider: | Vanessa Jones PA | Service Provider: | CHS | |
|---|---|---|---|---|
| Auth Provider NPI: | 1134355811 | | | |
| Signing Provider: | Vanessa Jones PA | | | |
| Phone: | | Phone: | | |
| Fax: | | Fax: | | |
| Patient Name: | ALEXANDER  WILLIAMS | DOB: Feb 08, 1981 | Age: | 41 |
| Home Phone: | | Sex: Male | SSN: | 069687499 |
| Work Phone: | | Cell Phone: | Patient ID: | 21917 |
| Resp. Provider: | | | | |

| Primary Ins: | | Secondary Ins: | |
|---|---|---|---|
| Group: | | Group: | |
| Policy: | | Policy: | |
| Insured ID: | | Insured ID: | |

| Code | Description | Diagnoses |
|---|---|---|
| BELLESURGERY | Referral - Bellevue, Surgery | CAVERNOUS HEMANGIOMA, LIVER (ICD-D18.03) |
| Order Number: | 1068218-2 | Quantity: 1 |
| Authorization #: | P-2 11/3 | Priority: |
| Start Date: | 11/03/2021 | End Date: 01/02/2041 |
| Electronically signed by: | Vanessa Jones PA | Signed on: 7/13/2021 12:21:56 PM |

Instructions: 40 y o m seen in ED on 1/8/20 for cholecystitis.  Seen again on 5/23/21 and recommended to have US of liver prior to being scheduled for elective surgery.
Pt had CT w contrast of Abd/Pel on 5/23.
Impression:
Normally distended gallbladder. No biliary dilation. No significant pericholecystic fluid. No radiopaque
cholelithiasis. No CT evidence of acute cholecystitis.
No acute abdominal/pelvic pathology.

US of Liver (7/7/21)
IMPRESSION: ABNORMAL
* Cholelithiasis without evidence of acute cholecystitis.
* 3.6 cm left hepatic hemangioma.
Please evaluate patient.

# EXHIBIT –I



# CORRECTION DEPARTMENT
# CITY OF NEW YORK

## INMATE VOLUNTARY STATEMENT FORM

Form: IVS-1
Eff.: 1/24/19



Inmate's Name: Klaine Thompson

Date: OCT 10, 2022

Book and Case Number: 349-190-1450

Date of Birth:

Age: 47

Housing Area: 2a

I hereby acknowledge that the following written statement issued was made **VOLUNTARILY** of my own free will without promise of reward, or under any threat of physical harm or fear of such. Additionally, you will not be subject to any form of retaliation for providing information in connection with this investigation by the New York City Department of Correction.

TODAY AT ROUGHLY 9:30AM CAPATIN GANIUS FROM SECURITY WAS IN MY

UNIT ON 2A AND I WITNESS HER THREATEN INAMTE ALEXANDER WILLIAMS IN REGARDS

TO HER WANTING HIM TO STOP SALING HIS BOOK THAT HAD HER NAME MENTIONED IN

IT. I THEN HEARD THIS CAPTAIN STATE THAT SHOULD SET HIM UP WITH FAKE CHARGES

BECAUSE THE BRONX DA IS TIRED OF YOU JAIL NIGGA AND THAT THE OFFICER PRESENT

BETTER WRITE WHATEVER SHE WANT ON THE REPORT OR THEY WILL NO LONGER HAVE 2A

AS A POST IF THEY DIDNT. ALL OF THIS IS ON CAMERA SHE THEN TOLD INMATE WILLIAI

TO EAT HER PUSSY BY WAY OF "LICK HER CLICK ON GOOD AND BAD DAYS".SHE WENT

ON TO STATE THAT SHE WAS GOING TO HAVE CO'S FROM THE FACILITY PULL UP TO THE

PLATFORM AND RUSH THE CELL OF INMATE WILLIAMS ANDE FUCK HIM, SOMETHING  THAT

SHE IS KNOWN TO HAVE DONE WITHIN THE FACILITY OF GRVC. EVERYONE KNOWS THAT

SHE BEAT UP A CAPTIAN IN THE PAST AND WAS ONLY SUSPENDED AND THAT SHE HAS A

REPUTATION FOR VIOLENCE AND SETTING INMATES AND CORRECTIONAL OFFICERS UP.

Inmate's Signature:

Date: OCT 10, 2022

Witness by (print name): CO # LAWerence

Witness Signature: Lawerence

Rank: CO

Shield Number: 10351

# EXHIBIT –J

RECEIVED  01/18/2019 08:54
FAX
01/18/2019 08:50          Jan 18 2019 08:47am  P001/003
4658  P.001/003

**CORRECTION DEPARTMENT**
**CITY OF NEW YORK**

**OPERATIONS DIVISION**
**OPERATION SECURITY INTELLIGENCE UNIT**

## C.M.C. INFORMATION SHEET

FORM CORP518
(REV 3/2N)

| | |
|---|---|
| DATE:  **January 17, 2019** | PREPARED BY:  CO R. Jones #8472  AUTHORIZED:  P. REMY Capt. 8572 |
| TO:  **COMMANDING OFFICER MDC** | CMC #   **11/19** |
| SUBJECT:  ☒ DESIGNATION OF C.M.C. INMATE<br>☐ C.M.C. INMATE RE-ACT<br>☐ TRANSFER OF C.M.C. INMATE<br>☐ REMOVAL FROM C.M.C. STATUS | TYPE:   **LOCKDOWN** |

| INMATE'S LAST NAME  **WILLIAMS** | | INMATE'S FIRST NAME  **ALEXANDER** |
|---|---|---|
| BOOK & CASE #  **141-18-01632** | NYSID #  **01897805L** | DOCKET/INDICTMENT #  **2018KN013179-02146/2018** |
| BAIL STATUS  **REMAND** | CHARGE (S)  **125.25** | |

[X] SUBJECT INMATE IS DESIGNATED AS A CENTRALLY MONITORED INMATE. PLEASE REFER TO TELETYPE ORDER NO. _____ FOR OFFICIAL DESIGNATION.

[ X ] INMATE SHALL BE HOUSED IN THE FOLLOWING FACILITY:

| | | | |
|---|---|---|---|
| ☐ EMTC | ☐ CPSU | ☐ RMSC | ☐ NIC |
| ☐ AMKC | ☐ BXDC | ☐ QRVC | ☐ OBCC |
| ☐ BNDC | ☐ EMTC | ☐ JATC | ☐ QDC |
| ☐ BKPW | ☐ BKPW | ☐ WEST | ☐ GMDC |
| ☒ MDC | ☐ VCBC | ☐ OTHER: | |

[ X ] INMATE SHALL BE PLACED IN THE FOLLOWING HOUSING ASSIGNMENT:

| | | |
|---|---|---|
| ☐ GENERAL POPULATION | ☐ PROTECTIVE CUSTODY | ☐ MENTAL OBSERVATION |
| ☐ GENERAL POPULATION ESCORT | ☐ MANUII | ☒ CMC |
| ☐ MAXIMUM SECURITY | ☐ LOCKDOWN | ☐ MEDICAL |
| ☐ ADMIN SEGREGATION | ☐ PUNITIVE SEGREGATION | |

☐ INMATE IS REMOVED FROM C.M.C. STATUS EFFECTIVE ___/___/___
  PLEASE REFER TO TELETYPE ORDER NO. _____ FOR OFFICIAL REVOCATION.

☐ THE INFORMATION CONTAINED ON THE REVERSE SIDE OF THE FORM IS FORWARDED FOR YOUR
  REVIEW AND APPROPRIATE ACTION (S).

SECURITY REQUIREMENTS:

☒ WAIST CHAINS TO BE WORN WHEN OUTSIDE THE FACILITY

☒ LEG IRONS TO BE WORN WHEN OUTSIDE THE FACILITY

☐ SPECIAL TRANSPORTATION IS REQUIRED WHEN MOVING THIS INMATE

☐ TRANSPORT BY EMERGENCY SERVICE UNIT ONLY

☒ TRANSPORT BY TRANSPORTATION DIVISION ONLY

☐ TRANSPORT BY TRANSPORTATION, UNLESS THE MOVE IS UNSCHEDULED THEN E.S.U
  WILL TRANSPORT

☐ INTER-FACILITY SECURITY RESTRAINTS

| *NOTE: DUE PROCESS SAFEGUARDS AND HEARINGS ARE REQUIRED IF THIS PLACEMENT IS INVOLUNTARY/SECURITY REASONS. | SEE REVERSE SIDE INFORMATION |
|---|---|

**DEF_0923**

From:                                    RECEIVED   81/18/2019 05:54
                                              Fax:
                                    07/18/2019 00:38          Jan 18 2019 08:47am P002/003

| REASON FOR C.N.C. DESIGNATION: |
|---|

**SUBJECT IS A COURT ORDERED LOCKDOWN**

EVIDENCE/DOCUMENTATION UTILIZED:

ON FILE AT OSIU

OPERATIONS:

THE FOLLOWING TELEPHONE NOTIFICATIONS WERE MADE REGARDING THIS DOCUMENT:

| DATE | TIME | PERSON NOTIFIED | TITLE | FACILITY |
|---|---|---|---|---|
| 1 /18 / 19 | HOURS | SECURITY EXT. 718 #51.9012 | | GMDC |
| 1 /18 / 19 | HOURS | GO. EXT. 718-741 8 915 718 236.00 | | BKDC NIC |
| 1 /18 / 19 | HOURS | SECURITY EXT. 718.885 1545 | | NIC |
| 1 /18 / 19 | HOURS | GO. EXT. | | |
| / / | HOURS | | | |
| / / | HOURS | | | |

| NOTIFICATION MADE BY: | LAST NAME | FIRST NAME | RANK | SHIELD |
|---|---|---|---|---|
| | JONES | R. | CO | 8472 |

COPIES OF THIS DOCUMENT FORWARD TO:

☐ CLASSIFICATION UNIT     ☐ INVESTIGATION DIVISION

☐ ESU     ☐ TRANSPORTATION DIVISION

☒ FACILITY     ☐ OTHER

REMARKS:

DEF_0924

# EXHIBIT –K

**ATTACHMENT - C**



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION



## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES

| Form.: 7102R |
| Eff.: 8/23/19 |
| Ref.: Dir. 3376R-A |

### DISPOSITION FORM

| Grievance Reference # 590724 | Date Filed: 10/07/22 | Facility: GRVC 2A |
|---|---|---|
| Inmate Name: Williams, Alexander | Book and Case: 1411801632 | Category: N.G. Staff Complaint |

From OCGS Inmate Statement Form, print or type short description of grievance:

On the above date Co K White, CO Andre Hickson, and Captain Gaines entered housing unit at 11;45 am and stated to me that you are suing me, and I will kill you and make sure you get life in prison. (CO Kevin White and CO Andre Hickson) Captain Gaines commented, stated that she was specifically going to make sure that all communication with my attorneys were cut because they are causing to many issues, investigating DO

Action Requested by Inmate: **Stop retaliation conduct before it affects, litigation and /or exacerbates to being physical.**

## STEP 1: FORMAL RESOLUTION

Check one box: ☐ Grievance ☐ Submission is not subjected to the Grievance Process

The Office of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

The grievant has been informed his complaint has been forwarded to facility leadership for review.

## CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution   ☐ No   ☐ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 09/27/22 |
|---|---|

☐ Preliminary Review Requested

| Grievance Coordinator/Officer Signature: CO BRUN BRUN | Date: 09/27/22 |
|---|---|

ATTACHMENT -B-1

## CITY OF NEW YORK - DEPARTMENT OF CORRECTION
### OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: Alexander Williams | Book & Case #: 1411801632 | NYSID #: 01847858C |

| Facility: GRVC | Housing Area: 2 | Date of Incident: 1/30/2022 | Date Submitted: 9/30/2022 |

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** on date above CO x white, CO str hickso and caption Gaines entered housing unit at 11:45 am and stated to me that you are suing me and I will kill you and make sure you get life in prison. (CO kevin white and CO Andre Hickson) captain gaines commented stating that she was specifically going to make sure that all communcation with my Attorneys were cut because they are causing to mych issues investigating DOC

**Action Requested by Inmate:** Stop This Retaliation Conduct before it Affects my litigation and/or excebriates to being physical

**Please read below and check the correct box:**

Do you agree to have your statement edited for clarification by OCGS staff?  Yes ☐  No ☑

Do you need the OCGS staff to write the grievance for you?  Yes ☑  No ☐

Have you filed this grievance with a court or other agency?  Yes ☐  No ☑

Did you require the assistance of an interpreter?  Yes ☑  No ☐

| Inmate's Signature: Alexander Williams Jr | Date of Signature: 9/30/2022 |

### FOR DOC OFFICE USE ONLY

OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR   AG.

| TIME STAMP 2022 OCT -7 P 1:54 | Grievance Reference # 590724 | Category: STAFF complaint |
| | Office of Constituent and Grievances Services Coordinator/Officer Signature: BYRNE 18049 | |

10/11

# EXHIBIT –L

**ATTACHMENT - C**



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION



| OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES | Form.: 7102R<br>Eff.: 8/23/19<br>Ref.: Dir. 3376R-A |
|---|---|
| **DISPOSITION FORM** | |

| Grievance Reference # 590747 | Date Filed: 10/07/22 | Facility: GRVC 2A |
|---|---|---|

| Inmate Name: Williams, Alexander | Book and Case: 1411801632 | Category: N.G.<br>Staff Complaint |
|---|---|---|

From OCGS Inmate Statement Form, print or type short description of grievance:
At 6:45 pm Captain Gaines and CO Kevin came to housing unit 2A and stated to me I told you would not call your lawyer. (See attached)

Action Requested by Inmate: Please place an administration separation between me and Captain Gaines and Kevin Young.

## STEP 1: FORMAL RESOLUTION

Check one box:  ☐ Grievance      ☑ Submission is not subjected to the Grievance Process

The Office of Constituent and Grievance Services proposes to formally resolve your grievance as follows below. Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

The grievant has been informed his complaint has been forwarded to facility leadership for review.

---

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution   ☐ No   ☐ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| Inmate's Signature: | Date: 10/07/22 |
|---|---|

| ☐ Preliminary Review Requested | |
|---|---|

| Grievance Coordinator/Officer Signature:<br>*CO Byrne 18049* | Date: 10/07/22 |
|---|---|

ATTACHMENT -B-1



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A.

**Inmate's Name:** Alexander Williams

**Book & Case #:** 1411801632

**NYSID #:** 01897858C

**Facility:** GRVC

**Housing Area:** 2a

**Date of Incident:** 9/30/2022

**Date Submitted:** 9/30/2022

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OCGS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** at 6:45 pm captain gaines and co Kevin came to housing Unit 2a and stated to me I told you that you would not call your lawyer, you put my name in your book (the true untold story of New York City's Notorios Rikers Island) you in my Jail you have no Rights until you Recall that book, co kevin Yeung Intervied and stated Fuck you and your lawsuit This caused me to be Sociodal

**Action Requested by Inmate:** Please place a Administrative Seperation between myself and captain gaines and keven Yang

### Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?  Yes ☐  No ☑

Do you need the OCGS staff to write the grievance for you?  Yes ☐  No ☑

Have you filed this grievance with a court or other agency?  Yes ☐  No ☑

Did you require the assistance of an interpreter?  Yes ☐  No ☑

**Inmate's Signature:** Alex Williams

**Date of Signature:** 9/30/2022

## FOR DOC OFFICE USE ONLY

### OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

### THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR

**TIME STAMP:** 2022 OCT -7 P 1:34

**Grievance Reference #:** 590747

**Category:** Staff Complaint

**Office of Constituent and Grievances Services Coordinator/Officer Signature:** CO Byrne. 18049

10/11

# EXHIBIT –M

**ATTACHMENT - C**



# CITY OF NEW YORK - DEPARTMENT OF CORRECTION



### OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES

Form.: 7102R
Eff.: 8/23/19
Ref.: Dir. 3376R-A

### DISPOSITION FORM

| | | |
|---|---|---|
| Grievance Reference # 590755 | Date Filed: 10/07/22 | Facility:  GRVC 2A |
| Inmate Name: Williams, Alexander | Book and Case: 1411801632 | Category: N.G. Staff Complaint |

From OCGS Inmate Statement Form, print or type short description of grievance:

On Oct. 01,2022, I was told by Captain Lundstrom that per Deputy Warden Philips and Captain Gaines I cannot call my attorney today. This caused me to think about killing myself. A physc report was generated.

Action Requested by Inmate:   Please do not limit, interfere or stop my line of communication with my state approved attorneys.

### STEP 1: FORMAL RESOLUTION

Check one box:  ☐ Grievance   ☑ Submission is not subjected to the Grievance Process

The Office of Constituent and Grievance Services proposes to formally resolve your grievance as follows below.
Alternatively, OCGS staff shall provide an explanation for why the submission is not subject to the OCGS process.

The grievant has been informed his complaint has been forwarded to facility leadership for review.

### CHECK THE APPROPRIATE BOX BELOW AND PROVIDE YOUR SIGNATURE
*(Failure to sign forms will forgo your right to appeal the proposed resolution.)*

☐ Yes, I accept the resolution   ☐ No   ☐ I request to appeal the resolution of this grievance to the Commanding officer.

*Note: If you appeal, the grievance staff can request for a preliminary based review if they feel the complaint was thoroughly investigated and addressed, prior to forwarding to the Commanding Officer. You will receive the outcome of this review within (3) business days to inform you the appeal will proceed or you exhausted administrative remedies. Grievance not subject to the Grievance Process cannot be appealed.*

| | |
|---|---|
| Inmate's Signature: | Date: 10/07/22 |

☐ Preliminary Review Requested

| | |
|---|---|
| Grievance Coordinator/Officer Signature: | Date:  10/07/22 |

ATTACHMENT -B-1

 

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION
## OFFICE OF CONSTITUENT AND GRIEVANCE SERVICES
### INMATE STATEMENT FORM

Form.: 7101R-A
Eff.:9/14/18
Ref.: Dir. 3376R-A

| Inmate's Name: Alexander William | Book & Case #: 1411801632 | NYSID #: OC8978S8L |
|---|---|---|
| Facility: CRVC | Housing Area: 2 q | Date of Incident: 10/1/2022 | Date Submitted: 10/1/2022 |

All grievances must be submitted within ten business days after the incident occurred, unless it's a sexual abuse or harassment allegation. The inmate filing the grievance must personally prepare this statement. Upon collection by the Office of Constituent and Grievance Services (OCGS) staff, OC GS staff will time-stamp and issue it a grievance reference number. OCGS staff shall provide the inmate with a copy of this form as a record of receipt.

**Grievance:** On oct 1, 2022 I was told by captain Lundstrom that per Deputy Warden Phillips and captain Gaines I can not call my Attorney today this caused me to think about killing myself. A physc reported was generated.

**Action Requested by Inmate:** Please do not limit Indeffer or stop my line of communication with my State approved Attorneys

### Please read below and check the correct box:

Do you agree to have your statement edited for clarification by OCGS staff?  Yes ☐  No ☒

Do you need the OCGS staff to write the grievance for you?  Yes ☐  No ☒

Have you filed this grievance with a court or other agency?  Yes ☐  No ☒

Did you require the assistance of an interpreter?  Yes ☒  No ☐

| Inmate's Signature: alexander William | Date of Signature: 10/1/2022 |
|---|---|

### FOR DOC OFFICE USE ONLY

**OCGS MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.**

**THIS FORM IS INVALID UNLESS SIGNED BY THE INMATE AND GRIEVANCE COORDINATOR**

| TIME STAMP 2022 OCT -7 P 1:36 | Grievance Reference # 590 755 | Category: Staff Complaint |
|---|---|---|
| | Office of Constituent and Grievances Services Coordinator/Officer Signature: CO Byrne #18049 | |

10/1

# EXHIBIT –N

TAPE# D18-0281          DAVID WALKER          12-8-18

A.D.A. CHIN:  Today is
December 8th, 2018.  This
is tape number D18-0281.
We're here in the Brooklyn
District Attorney's office
in the Homicide Bureaus.
Also present is Detective
Michael Heyburt(sp?).  The
time right now is 3:31 P.M.
What's your name, sir?

MR. WALKER:  David
Demetrial Walker.

A.D.A. CHIN:  Okay.  So
Walker, my name is Ernest
Chin.  I'm an assistant
district attorney in the
Brooklyn DA's office and a
notary public, qualified in
the County of Kings.  My
number is 02CH6251538 and

TAPE# D18-0281          DAVID WALKER          12-8-18

my commission expires

November 14th, 2019.  What

I want to do is talk to you

about is about a homicide

that happened on June 27th,

2011 in the area of

Cosuseco(sp?) Street.

Specifically, regarding an

individual by the name of

Alexander Williams.  Before

I talk to you, though, I'm

going to ask you to swear

or affirm that anything you

tell me is the truth; do

you understand?

MR. WALKER:  Yes, sir.

A.D.A. CHIN:  Okay.  To do

that, please raise your

right hand.  Do you, David

Demetrial Walker, swear or

affirm that the statement

3

TAPE# D18-0281          DAVID WALKER          12-8-18

you're about to give is the
truth?

MR. WALKER: Yes, sir.

A.D.A. CHIN: Okay, lower
your hand, thank you. So
let's talk about how you
know an individual by the
name of Alexander Williams;
when'd you meet Alexander
Williams?

MR. WALKER: When I was a
child, probably about 17,
18, probably about '97,
'98, '99.

A.D.A. CHIN: Okay.

MR. WALKER: In South
Carolina.

A.D.A. CHIN: How did you -
- down where?

MR. WALKER: Bamberg, South
Carolina.

TAPE# D18-0281          DAVID WALKER          12-8-18

A.D.A. CHIN:  Okay.  And
how did you meet him?

MR. WALKER:  Just walking
up the street, he was
hanging out with another
home boy of mine and we
started smoking, hanging
out like that.

A.D.A. CHIN: Okay.  Now
were you a Blood member?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  And
what sect of Blood's were
you?

MR. WALKER:  135
Power(unintelligible).

A.D.A. CHIN:  Okay.

MR. WALKER:  Before that, I
was G-shine.

A.D.A. CHIN:  Okay.  And
during your interactions

5

with Alexander Williams,
did you know him by any
other names?

MR. WALKER: No, just AB.

A.D.A. CHIN: Okay. There
you go, that's what I'm
getting at, AB, the letters
A and B?

MR. WALKER: Almighty
Blood.

A.D.A. CHIN: Okay. That's
what it stands for?

MR. WALKER: Yeah.

A.D.A. CHIN: Almighty
Blood?

MR. WALKER: Yeah.

A.D.A. CHIN: Okay. Do you
know what sect of Blood's
Alexander Williams belonged
to?

MR. WALKER: He a Stony,

TAPE# D18-0281          DAVID WALKER          12-8-18

Gorilla Stone Blood.

A.D.A. CHIN:  Okay.  And

are you aware of where in

the hierarchy he is?

MR. WALKER:  To the top.

A.D.A. CHIN:  Okay.

MR. WALKER:  He - - they

say he first on the

streets, second in charge

of the penitentiary.

A.D.A. CHIN:  Okay.  So

he's first in charge in the

streets, second in charge

in prison?

MR. WALKER:  Yeah.

A.D.A. CHIN:  Okay.  Now

once you met up with

Alexander Williams, what

was the nature of your

relationship?

MR. WALKER:  Just running

7

TAPE# D18-0281          DAVID WALKER          12-8-18

guns, bringing in guns to
New York for some coke or
something  like that.

A.D.A. CHIN:  Okay.  So
let's slow that down.  So
you met him around '97,
'98, '99, somewhere - -
time around that; is that
correct?

MR. WALKER:  Yes, sir, yes,
sir.

A.D.A. CHIN:  All right.
And you would conduct
criminal transactions with
him?

MR. WALKER:  Yes, sir, run
guns.

A.D.A. CHIN:  Run guns.  So
where would you run the
guns to?

MR. WALKER:  Uh, from - -

8

A.D.A. CHIN:  From and to.

MR. WALKER:  From South Carolina to New York, from South Carolina to Maryland, from South Carolina to North Carolina.

A.D.A. CHIN:  Okay.  Where specifically in North Carolina?

MR. WALKER:  Raleigh.

A.D.A. CHIN:  Okay.  And where specifically in Maryland?

MR. WALKER:  Hagerstown.

A.D.A. CHIN:  Okay.  During these times when you say you would run guns, would you be with AB?

MR. WALKER:  No, I basically will leave myself, and will leave them

in those places, then we'll

meet up and he'll come with

probably four or five of

his partners, and everybody

guns, and then I'm gone and

that's basically it.

A.D.A. CHIN:  Okay.  So you

would meet up - -

MR. WALKER:

(Unintelligible)  - -

A.D.A. CHIN:  - - with AB

at the time when the guns

that were sold?

MR. WALKER:  Yes, he's

there.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yes, he's the

one bringing the clients to

buy the guns.

A.D.A. CHIN:  Okay.  And

how long did you wind up

running these guns with AB?

MR. WALKER:  From about '98
to, I don't know, I don't
know, man, probably about
'09, or something like
that.

A.D.A. CHIN:  Okay.  2009,
so about ten years?

MR. WALKER:  Yeah.

A.D.A. CHIN:  How many
times did you run guns with
or for AB?

MR. WALKER:  How many
times?

A.D.A. CHIN:  Yeah.

MR. WALKER:  How many
trips?

A.D.A. CHIN:  How many
trips did you take?

MR. WALKER:  Man, probably
about ten, fifteen.

TAPE# D18-0281          DAVID WALKER          12-8-18

A.D.A. CHIN:  Ten, fifteen
trips?

MR. WALKER:  Probably way
over -- myself, me,
myself, probably over 30,
40, 50 guns.

A.D.A. CHIN: Okay.  30, 40,
50 guns for you, yourself
with AB?

MR. WALKER:  All handguns.

A.D.A. CHIN:  Okay.  And AB
would conduct these
transactions himself?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  And
then how would he -- how
would he pay you?

MR. WALKER:  Cash, or
either in product, mostly
cash, though.

A.D.A. CHIN:  What do you

TAPE# D18-0281          DAVID WALKER          12-8-18

mean product?

MR. WALKER:  Like, probably

cocaine.

A.D.A. CHIN:  Okay.

MR. WALKER:  Or if I needed

some little reefer, or

something he's give me some

reefer, marijuana.

A.D.A. CHIN: Okay.  That's

what he would do?

MR. WALKER:  Yeah.

A.D.A. CHIN:  Give you

marijuana or cocaine as

payment?

MR. WALKER:  Yes, yeah.

A.D.A. CHIN:  All right.

You were basically a

business partner of his?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  Now I

want to talk to you about

13

2011, around the end of June and into, I guess early July. Did there come a time when you drove Alexander Williams to Hagerstown, Maryland?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  Tell me what happened.  So now you know that you're here in relation to a homicide that's being investigated, right?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  And it involves something, in your words that you said before, where someone was fucking with AB's girl.

MR. WALKER:  Girlfriend.

A.D.A. CHIN:  Okay.  So

that's the homicide we're
here talking about.

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay. So tell
me what happened around
that time back in 2011 with
regards to that.

MR. WALKER:  We left my
cousin house, Curtis
Nimmons' house in
Orangeburg, South Carolina,
we drove to Maryland.

A.D.A. CHIN:  Now  you say
you left your cousin's
house, Curtis - -

MR. WALKER:  Nimmons.

A.D.A. CHIN:  Nimmons?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.

MR. WALKER:  We left his
house, we went to Maryland,

TAPE# D18-0281          DAVID WALKER          12-8-18

we stayed in Maryland about

an hour, he gave me an AR-

15, gave me four ounces of

cocaine, then he left

Maryland - - well I left

Maryland, and he went to

New York.  About a week

later, he came back down.

A.D.A. CHIN:  Okay.

MR. WALKER:  He came back

down with a pound of weed.

A.D.A. CHIN: Now when you

say he came back down,

that's when he contacted

you?

MR. WALKER:    Yes.

A.D.A. CHIN:  Okay.  Do you

know if he came back

earlier, or later?

MR. WALKER:  No, he

probably did, he probably

TAPE# D18-0281

DAVID WALKER

12-8-18   16

was someplace else, but he probably did.

A.D.A. CHIN:   Okay.   But what you're saying is that when you said he came back down, after he - -

MR. WALKER:   He came back from the city, yeah.

A.D.A. CHIN:   - - after - - a week after you left him at Maryland is when you spoke to him again?

MR. WALKER:   Yes.

A.D.A. CHIN:   Okay.

MR. WALKER:   Yes.

A.D.A. CHIN:   Do you know why he was going to New York?

MR. WALKER:   No, I thought he was going to (unintelligible) - - with

some heron(sic).

A.D.A. CHIN:  Okay.  When
you say heron(sic), you
mean heroin?

MR. WALKER:  Yeah, heroin.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yeah, that's
how y'all say it, heroin?

A.D.A. CHIN:  Yes, okay.

MR. WALKER:  Yeah.

A.D.A. CHIN:  Okay.  I just
want to be clear for the
recording.  All right.  So
a week after you drove him
to Hagerstown, Maryland,
where did he give you the
AR-15 and the four ounces
of coke?

MR. WALKER:  In Hagerstown.

A.D.A. CHIN:  Yeah, but
where, like -- --

TAPE# D18-0281          DAVID WALKER          12-8-18

MR. WALKER:  In his house.

A.D.A. CHIN:  — — his house?

MR. WALKER:  His house.

A.D.A. CHIN:  He had a

house there?

MR. WALKER:  He had a

house.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yeah.

A.D.A. CHIN:  Do remember

where the house was?

MR. WALKER:  No, I can't

remember.

A.D.A. CHIN:  Okay.  So all

right.  So you guys part

ways in Hagerstown,

Maryland, you meet up with

him a week after, what

happens?

MR. WALKER:  He came down

bragging about some

shootings and some extra
money he made up there in
New York.

A.D.A. CHIN:  Okay.  Now
where were you when you - -
when you saw him?

MR. WALKER:  Orangeburg.

A.D.A. CHIN:  Okay, where?

MR. WALKER:  At my cousin's
crib, Curtis Nimmons.

A.D.A. CHIN:  Curtis
Nimmons' house?

MR. WALKER:  Yes, yeah.

A.D.A. CHIN:  Okay. And
what happened?

MR. WALKER:  Uh - -

A.D.A. CHIN:  What was - -
what was he doing while he
was telling you about doing
the shootings and making
some  money?

TAPE# D18-0281          DAVID WALKER          12-8-18

MR. WALKER:  Who, AB?

A.D.A. CHIN:   Yes.

MR. WALKER:  Oh, he was

bragging, he was jumping

around, flexing his ass,

making phone calls and

stuff like that.

A.D.A. CHIN:  Okay.  And

what happened then?

MR. WALKER:  Uh - -

A.D.A. CHIN:  What else did

he tell you about it?

MR. WALKER:  That's it,

said he had to pop somebody

cause the wrong person got

popped, and something about

somebody played him on some

word, he gotta go back

there to see somebody else

- - somebody else supposed

to get popped and that was

probably it, but by that
time my cousin came back in
the house, he started - -
he stopped - - he kind of
changed the subject.

A.D.A. CHIN:  Okay.  Now
during this time, how do we
- - how did you - - how
were you able to know that
this - - when he was
talking about popping
someone, he referred to the
homicide we're talking
about right now?

MR. WALKER:  Because he
wanted me to - - he told me
if somebody asked me, to
make it seem like if I did
it and he told me the
story.

A.D.A. CHIN:  Okay.  And

TAPE# D18-0281          DAVID WALKER          22
                                        12-8-18

what story did he tell you
to say?

MR. WALKER:   That I came to
New York with him and that
we went to - - where we
went to, we went to - - I
took him to the diamond
district to go buy a ring
and which he went and
bought a ring, say - - told
me to tell him to go get
him a hotel room and at the
hotel room, he told me that
was me and see - - would
walk in and that we seen
somebody pointed out and
then we shot the person and
then we left, and he
supposed to pay me.

A.D.A. CHIN:   Okay.   Did he
offer to pay you anything,

or any kind of benefit for

telling this story that he

told you?

MR. WALKER:  Yeah, he said

he give me ten-thousand

dollar.

A.D.A. CHIN:  And anything

else?

MR. WALKER:  That's it.

A.D.A. CHIN:  Okay.  Did he

ever offer you narcotics,

or anything?

MR. WALKER:  No, not on

this situation.

A.D.A. CHIN:  Not on this

situation?

MR. WALKER:  Yeah.

A.D.A. CHIN: So for this

one, it was just straight

ten-thousand dollars?

MR. WALKER:  Cash, yeah.

TAPE# D18-0281              DAVID WALKER              12-8-18

A.D.A. CHIN:  Cash.  Did he

say anything else to you

about the homicide?

MR. WALKER:  No, that just

basically it.

A.D.A. CHIN:  Okay. Did he

tell you that what - - why

- - why it happened?

MR. WALKER:  Yeah,

something about he knew the

guy and the guy was messing

with his girl, and I think

he was mad because the

person he called the first

time to go do the job end

up hitting the wrong

person.

A.D.A. CHIN:  Okay.

MR. WALKER:  End up hitting

the girl brother, or

something like that.

25

A.D.A. CHIN:   Okay.

MR. WALKER:   And then

that's when he end up

having to get in the

situation and had to go get

the right person.

A.D.A. CHIN:   Okay.  So - -

so he told you that he had

- - he got someone to go -

- to go shoot this person

for him, but apparently

that person shot the wrong

person?

MR. WALKER:   Yeah.

A.D.A. CHIN: So he had to

take care of it himself?

MR. WALKER:   Yeah.

A.D.A. CHIN:   And this was

a person who was messing

with his girlfriend, AB's

girlfriend?

26

MR. WALKER:  Yeah, the
wife, I think it was his
wife, he was married to
her.

A.D.A. CHIN:  It was AB's
wife?

MR. WALKER:  I think his
wife.

A.D.A. CHIN:  Okay. So as
far as you know, it was
AB's wife?

MR. WALKER:  Yeah, I think
it was his wife, yeah.

A.D.A. CHIN:  Okay.  And he
told you to say this story,
the one that you just
repeated about a week or
two, or about a week after
you saw him again?

MR. WALKER:  Yeah, about a
week, yep, about a week.

TAPE# D18-0281            DAVID WALKER            12-8-18

A.D.A. CHIN:  Okay.

MR. WALKER:  No more than

two weeks.

A.D.A. CHIN:  Okay.  Now

I'm going to refer you to

this  year now, now around

in possibly May 17th of

2018, did you meet up with

a woman?

MR. WALKER:  Yes, sir.

A.D.A. CHIN:  Okay.  And as

far as you knew, did this -

- did this woman ever tell

you her name?

MR. WALKER:  No.

A.D.A. CHIN:  Okay.  What

information did this woman

give you?

MR. WALKER:  Give me

information about Mr.

Williams and she was asking

TAPE# D18-0281          DAVID WALKER          12-8-18

about a shooting and a
homicide.

A.D.A. CHIN:  Okay.  Now
you - - you told her about
that homicide, correct?

MR. WALKER:  Yes.

A.D.A. CHIN:  Okay.  And
what you told her, where
did you come up with that
information?

MR. WALKER:  From Mr.
Williams.

A.D.A. CHIN:  Okay.

MR. WALKER:  I was told
that if a girl asked, to
put myself instead of him,
he didn't want the girl to
know.

A.D.A. CHIN:  Okay, So he
told you that?

MR. WALKER:  Yeah.

29

TAPE# D18-0281          DAVID WALKER          12-8-18

A.D.A. CHIN:  That if - -
if someone - - that if a
girl came to ask you about
- -

MR. WALKER: Yeah, if
somebody asked - - if
somebody - - if someone
asked, to put myself
instead of  him.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yep.

A.D.A. CHIN:  Now did you
ever open a phone line with
the numbers starting - -
with the number of 803-915-
4437?

MR. WALKER:  No, sir.

A.D.A. CHIN:  Okay.  Did
you ever use your fiancé's
information, Kaitlynn
Kirkland, to open this

30

TAPE# D18-0281          DAVID WALKER          12-8-18

phone line?

MR. WALKER:   No, sir.

A.D.A. CHIN:   Did you ever
open a phone line with T-
Mobile ever?

MR. WALKER:   No, sir.

A.D.A. CHIN:   Okay.

MR. WALKER:   T-Mobile don't
work where I'm from.

A.D.A. CHIN:   Okay.   T-
Mobile doesn't work where
you're from; where are you
from?

MR. WALKER:   Bamberg, South
Carolina.

A.D.A. CHIN:   Okay.   Now I
showed you this - - which
is the phone records
pertaining to that number
and it has - - do you
recognize the personal

information on there,

correct?

MR. WALKER:  Yep.

A.D.A. CHIN:  Okay.  And

that is the address and

that's your fiancé's name?

MR. WALKER:  That's wrong,

because by that time I

wasn't staying at that

address.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yep.

A.D.A. CHIN:  But was she

staying there?

MR. WALKER:  Kaitlynn?

A.D.A. CHIN:  Yes.

MR. WALKER:  No, she stay

with me.

A.D.A. CHIN:  Okay.  So at

that address at that time,

that - -

TAPE# D18-0281                    DAVID WALKER                    12-8-18

MR. WALKER:  Yeah.

A.D.A. CHIN:  - - the date
it's open is May 18th,
2018, correct, so it's
about - - that's a day
after you met with this
woman from - -

MR. WALKER:  Yeah.

A.D.A. CHIN:  - - Mr.
Williams, correct?

MR. WALKER:  Well the day
after I met her, I didn't
text her.

A.D.A. CHIN:  Okay.

MR. WALKER:  So that can't
be me.

A.D.A. CHIN:  Okay.  But
what I'm getting at is that
this phone opened on May
18th, 2018 - -

MR. WALKER:  Yes, sir.

TAPE# D18-0281                 DAVID WALKER          12-8-18

A.D.A. CHIN: - - you did
not open this number?

MR. WALKER: No, sir.

A.D.A. CHIN: Okay. And
you've never seen this
number before in your life?

MR. WALKER: No, sir.

A.D.A. CHIN: Okay. Now
also, I'm showing to you
and I showed you earlier, a
series of text messages
from that phone number of
803-9915-4437 to another
individual, correct?

MR. WALKER: Yes, sir.

A.D.A. CHIN: Okay. Now do
you recognized any of the
statements made by the
person that's supposed to
be from 803-915-4437?

MR. WALKER: No, sir.

34

TAPE# D18-0281          DAVID WALKER          12-8-18

A.D.A. CHIN:  Okay.  Were
you able to identify
different kinds of ways
that you write differently?

MR. WALKER:  Yeah.

A.D.A. CHIN:  Like what?

MR. WALKER:  I'm Blood - -
I'm Pyru(sp?), so I don't
use C's like that, really.

A.D.A. CHIN:  Like what?

MR. WALKER:  Like cause, he
got cause in there instead
of because, or just regular
buzz, he got convo with a
big C and the word okay, I
don't use okay, I use the
word bet.

A.D.A. CHIN:  Okay.

MR. WALKER:  Yeah.

A.D.A. CHIN:  Uh - -

MR. WALKER:  Those are

35

TAPE# D18-0281          DAVID WALKER          12-8-18

full-fledged sentences; I
don't write full-fledged
sentences.

A.D.A. CHIN:  Okay.  Now do
you ever use the word like
da, D-A?

MR. WALKER:  No.

A.D.A. CHIN:  In replace of
the?

MR. WALKER:  D-A, no.

A.D.A. CHIN: Okay.  So what
you're saying is that you
have never seen and never
made any of these text
messages?

MR. WALKER:  Uh-uh.

A.D.A. CHIN:  Is that a no?

MR. WALKER:  No, sir.

A.D.A. CHIN:  Okay.  Now
has Alexander Williams
contacted you since March

TAPE# D18-0281          DAVID WALKER          12-8-18

2018 of this year?

MR. WALKER:  No, not since

the - - the Lieutenant

Schneider(sp?) and them

came and talked to me.

A.D.A. CHIN:  Okay.

MR. WALKER:  He - -

A.D.A. CHIN:  Detective

Schneider?

MR. WALKER:  He sent word

through another person to

tell me to fall back, he

can handle the situation.

A.D.A. CHIN:  Okay.

MR. WALKER:  And that was

it.

A.D.A. CHIN:  So who did he

tell to send word?

MR. WALKER:  He sent it

through Travolta, Travolta

called Devine, Devine told

TAPE# D18-0281          DAVID WALKER          12-8-18

me.

A.D.A. CHIN:  Okay,
Travolta and Devine.  Now
who's Devine?

MR. WALKER:  Devine is his
cousin in Bamberg, South
Carolina.

A.D.A. CHIN:  Okay.

MR. WALKER:  Travolta is
his cousin in Columbia,
South Carolina.

A.D.A. CHIN:  Okay.  Now do
you know what Devine's
first name is?

MR. WALKER:  Dewayne Dokes.

A.D.A. CHIN:  Dewayne - -

MR. WALKER:  Dokes.

A.D.A. CHIN:  Dokes, okay.
How about Travolta?

MR. WALKER:  His first name
is Sean; I don't know his

TAPE# D18-0281          DAVID WALKER          12-8-18

last name.

A.D.A. CHIN:  All right.

And - -

MR. WALKER:

(Unintelligible) - -

A.D.A. CHIN:  Okay.  They

came - - now Devine came

to you and told you what,

exactly?

MR. WALKER:  He asked me,

he say like you know, put

police protection list, I

said, huh, he said  yeah,

man, Travolta called and

said they got you in police

protection list, man, say,

you hiding or something, I

say I'm hiding, Devine like

no, man, I can't tell you -

- I had to do the same

thing, and he like yo, AB

TAPE# D18-0281          DAVID WALKER          12-8-18

told me to tell you, man,

to fall back, man, he can

handle the situation.

A.D.A. CHIN:  This is after

you  met with Detective

Schneider, correct?

MR. WALKER:  After, yeah.

A.D.A. CHIN:  Okay.  And

that happened sometime

towards the end of this

summer?

MR. WALKER:  Yeah, that

probably happened about two

or three weeks after the

detective and them came.

A.D.A. CHIN:  Okay.  Now

after you actually met with

Detective Schneider and

there was a Detective

Hanley, he's like reddish

hair, shorter?

40

TAPE# D18-0281          DAVID WALKER          12-8-18

MR. WALKER:  Yes.

A.D.A. CHIN:  Did you ever
speak with that woman who
came to see you from - -

MR. WALKER:  Yes.

A.D.A. CHIN:  - - from - -
from AB?

MR. WALKER:  Yes, I called
her, the light-skin girl,
right?

A.D.A. CHIN:  Yes.

MR. WALKER:  I - - yes, I
called her and so the
detectives right here, and
she was like, why would he
be out there, and she - -
she gave me the name,
Schneider and somebody
else, and then once I seen
Schneider and them - - no,
I called her before that

because they came to - -
Lative(sp?)
(unintelligible) was
looking for me and by that
time, that's when I called
her and said, yo, man, why
the police out here, what
going on and then when I
seen Schneider and them,
that's when they told me
they heard my conversation
with her, that's the last
time I talked to her.

A.D.A. CHIN:  Okay.  That
was the last time you ever
spoke to her; is that
correct?

MR. WALKER:    Yes, sir.

A.D.A. CHIN:  Okay.  Now
the other question I have
for you is, when you met

42

her, I'm talking about May
17th, 2018, when you  met
with this woman with that -
- was a representative of
AB's, did you ever text her
after you met with her in
person?

MR. WALKER:  No, I don't
think so.

A.D.A. CHIN:  Okay.  And
then the next contact  you
had with her was that phone
call telling her that - -
that the police were there?

MR. WALKER:  Yeah.

A.D.A. CHIN:  Okay.  And
did you know that was
Detective Schneider?

MR. WALKER:  Uh-uh.

A.D.A. CHIN:  That's a no?

MR. WALKER:  No.

43

TAPE# D18-0281              DAVID WALKER              12-8-18

A.D.A. CHIN: Okay.  She

gave you the name?

MR. WALKER:  Yeah, she gave

me the  name.

A.D.A. CHIN: Okay.  Thank

you very much.  This

concludes the interview.


(END OF RECORDING)

# EXHIBIT –O

# whitepages PREMIUM

BACKGROUND REPORT

**As of: May 05, 2018**

*This is NOT a CONSUMER REPORT and does not constitute a "consumer report" under the Fair Credit Reporting Act ("FCRA"). This report may not be used to determine a person's eligibility for credit, insurance, employment or any other purpose regulated under the FCRA.*



Background Report for:

# David Demetrio Walker

**WARNING:**

Data is obtained from public records, including court records and other third-party sources. The accuracy and completeness of this information is not guaranteed. All information should be independently verified.

## PROFILE SUMMARY

| 4 | 6 | 24 | 0 | 1 | 0 | 0 |

# CRIMINAL & TRAFFIC RECORDS

**i** *A criminal record or police record is a record of a person's criminal history, used to assess his or her trustworthiness. Note that Whitepages is not a consumer reporting agency as defined by the Fair Credit Reporting Act. This means that you cannot use information presented in this website for evaluating a person's eligibility for employment, credit, insurance, housing, and other FCRA governed purposes. The information included in a criminal record and the existence of a criminal record varies between countries and even between jurisdictions within a country. In most cases it lists all non-expunged criminal offenses and may also include traffic offenses such as speeding and drunk-driving. In some countries the record is limited to actual convictions (where the individual has pleaded guilty or been declared guilty by a qualified court), while in others it also includes arrests, charges dismissed, charges pending, and even charges of which the individual has been acquitted.*

**24 potential criminal records found for David.**



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Exact Match |
| Last Name | Exact Match |
| Date Of Birth | Marginally Matched |
| Address | Exact Match |
| SSN | Not Available On Record |

📅 **Criminal Record #1 - 0659-Drugs / Possession Of 28g (1 Oz) Or Less Of Marijuana Or 10g Or Less Of Hash - 1st Offense**

CHARGE #1 - 0659-DRUGS / POSSESSION OF 28G (1 OZ) OR LESS OF MARIJUANA OR 10G OR LESS OF HASH - 1ST OFFENSE

CHARGE DATE: 02/24/2016

| | | | |
|---|---|---|---|
| Arrest Date | 02/17/2016 | Crime County | Orangeburg, Sc |
| Case Number | H568533 | Charges Filed Date | 02/24/2016 |
| Case Type | Criminal | Status | Disposed |
| Disposition | Pled Guilty | Disposition Date | 02/29/2016 |

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*



**NO MUGSHOT ON RECORD**

### MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Exact Match |
| Last Name | Exact Match |
| Date Of Birth | Marginally Matched |
| Address | Exact Match |
| SSN | Not Available On Record |

---

📅 **Criminal Record #4- Traffic / Speeding, More Than 15 But Less Than 25 Mph Over The Speed Limit**

CHARGE #1 - TRAFFIC / SPEEDING, MORE THAN 15 BUT LESS THAN 25 MPH OVER THE SPEED LIMIT

CHARGE DATE: 12/18/2014

| | | | |
|---|---|---|---|
| Arrest Date | 12/15/2014 | Crime County | Bamberg, Sc |
| Crime Type | Traffic | Case Number | H044645 |
| Charges Filed Date | 12/18/2014 | Case Type | Traffic |
| Disposition | Pled Guilty | Disposition Date | 03/11/2015 |



**NO MUGSHOT ON RECORD**

### MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Exact Match |
| Last Name | Exact Match |
| Date Of Birth | Exact Match |
| Address | Exact Match |
| SSN | Not Available On Record |

---

📅 **Criminal Record #5- 2886-Traffic / Seatbelt Violation - Non-Criminal (+5 more)**

CHARGE #1 - 2886-TRAFFIC / SEATBELT VIOLATION - NON-CRIMINAL

CHARGE DATE: 04/24/2015

| | | | |
|---|---|---|---|
| Arrest Date | 03/09/2015 | Crime County | Bamberg, Sc |
| Crime Type | Traffic | Case Number | H263065 |
| Charges Filed Date | 04/24/2015 | Case Type | Traffic |
| Court | Bamberg Magistrate | | |

---

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*

# whitepages PREMIUM

**BACKGROUND REPORT**

**As of: May 05, 2018**



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Exact Match |
| Last Name | Exact Match |
| Date Of Birth | Exact Match |
| Address | Exact Match |
| SSN | Not Available On Record |

---

📅 **Criminal Record #6- Weapons / Possession Of Firearm Or Ammunition By Person Convicted Of Violent Felony**

**CHARGE #1 - WEAPONS / POSSESSION OF FIREARM OR AMMUNITION BY PERSON CONVICTED OF VIOLENT FELONY**

CHARGE DATE: 09/28/2010

| | | | |
|---|---|---|---|
| Arrest Date | 09/22/2010 | Crime County | Bamberg, Sc |
| Case Number | M580207 | Charges Filed Date | 09/28/2010 |
| Case Type | Criminal-Clerk | Disposition | Prosecutorial Discretion |
| Disposition Date | 02/04/2011 | | |



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Not Matched |
| Last Name | Exact Match |
| Date Of Birth | Exact Match |
| Address | Exact Match |
| SSN | Not Available On Record |

---

📅 **Criminal Record #7- Weapons / Possession Of Firearm Or Ammunition By Person Convicted Of Violent Felony**

**CHARGE #1 - WEAPONS / POSSESSION OF FIREARM OR AMMUNITION BY PERSON CONVICTED OF VIOLENT FELONY**

CHARGE DATE: 09/28/2010

| | | | |
|---|---|---|---|
| Offense Code | 3434 | Crime County | Bamberg, Sc |
| Crime Type | Felony | Case Number | M580207WALDAV |
| Charges Filed Date | 09/28/2010 | Case Type | Felony F |
| Court | Sc Bamberg County Circuit Court | | |

---

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*

# whitepages PREMIUM

**As of: May 05, 2018**



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Not Matched |
| Last Name | Exact Match |
| Date Of Birth | Exact Match |
| Address | Exact Match |
| SSN | Not Available On Record |

📅 **Criminal Record #10- Resisting / Resisting Arrest, Oppose, Resist, Or Assault Law Enforcement Officer Serving Process (+1 more)**

### CHARGE #1- RESISTING / RESISTING ARREST, OPPOSE, RESIST, OR ASSAULT LAW ENFORCEMENT OFFICER SERVING PROCESS
**CHARGE DATE: 12/06/2002**

| | | | |
|---|---|---|---|
| Offense Code | 0326 | Arrest Date | 12/05/2002 |
| Crime County | Bamberg, Sc | Crime Type | Misdemeanor |
| Case Number | G821851 | Charges Filed Date | 12/06/2002 |
| Case Type | Criminal-Clerk | Court | Sc Bamberg County Circuit Court |
| Sentence | Nol Pros Per Ple | Disposition | Nolle Prosequi |
| Disposition Date | 10/30/2003 | | |

### CHARGE #2- MINOR / CONTRIBUTING TO THE DELINQUENCY OF A MINOR
**CHARGE DATE: 12/06/2002**

| | | | |
|---|---|---|---|
| Offense Code | 0048 | Arrest Date | 12/05/2002 |
| Crime County | Bamberg, Sc | Crime Type | Misdemeanor |
| Case Number | G821459 | Charges Filed Date | 12/06/2002 |
| Case Type | Criminal-Clerk | Court | Sc Bamberg County Circuit Court |
| Sentence | 2 Yrs-Concurrent | Disposition | Pled Guilty |
| Disposition Date | 10/30/2003 | | |

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*

# whitepages PREMIUM

**BACKGROUND REPORT**

**As of: May 05, 2018**



**NO MUGSHOT ON RECORD**

### MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| **First Name** | Exact Match |
| **Middle Name** | Not Matched |
| **Last Name** | Exact Match |
| **Date Of Birth** | Exact Match |
| **Address** | City No Match |
| | State No Match |
| | County No Match |
| | Zip Matched |
| **SSN** | Not Available On Record |

---

## 🗓 Criminal Record #12- Robbery / Common Law Robbery, Strong Arm Robbery

### CHARGE #1 - ROBBERY / COMMON LAW ROBBERY, STRONG ARM ROBBERY        CHARGE DATE: 02/11/2002

| | | | |
|---|---|---|---|
| **Offense Code** | 0137 | **Arrest Date** | 02/08/2002 |
| **Crime County** | Bamberg, Sc | **Crime Type** | Felony |
| **Case Number** | G673453 | **Charges Filed Date** | 02/11/2002 |
| **Case Type** | Criminal-Clerk | **Court** | Sc Bamberg County Circuit Court |
| **Sentence** | 10 Yrs-Credit Fo | **Disposition** | Pled Guilty |
| **Disposition Date** | 04/11/2003 | | |



**NO MUGSHOT ON RECORD**

### MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| **First Name** | Exact Match |
| **Middle Name** | Not Matched |
| **Last Name** | Exact Match |
| **Date Of Birth** | Exact Match |
| **Address** | Not Available On Record |
| **SSN** | Not Available On Record |

---

## 🗓 Criminal Record #13- Speeding

### CHARGE #1 - SPEEDING        CHARGE DATE: 04/01/2003

| | | | |
|---|---|---|---|
| **Crime County** | Weber, Ut | **Case Number** | 677696 |
| **Charges Filed Date** | 04/01/2003 | **Case Type** | Mc |
| **Court** | Ogden District | | |

---

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*

# whitepages PREMIUM

**As of: May 05, 2018**



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| **First Name** | Exact Match |
| **Middle Name** | Exact Match |
| **Last Name** | Exact Match |
| **Date Of Birth** | Exact Match |
| **Address** | City No Match |
| | State No Match |
| | County No Match |
| | Zip Matched |
| **SSN** | Not Available On Record |

---

📅 **Criminal Record #15- 2886-Violation Seat Belt Law (+1 more)**

### CHARGE #1 - 2886-VIOLATION SEAT BELT LAW                    CHARGE DATE: 04/18/2001

| | | | |
|---|---|---|---|
| Arrest Date | 04/13/2001 | Crime County | Orangeburg, Sc |
| Crime Type | Traffic | Case Number | Y618052 |
| Charges Filed Date | 04/18/2001 | Case Type | Traffic |
| Status | Disposed | Disposition | Guilty Bench Trial |
| Disposition Date | 05/03/2001 | | |

### CHARGE #2 - 2100-64/55                    CHARGE DATE: 04/18/2001

| | | | |
|---|---|---|---|
| Arrest Date | 04/13/2001 | Crime County | Orangeburg, Sc |
| Crime Type | Traffic | Case Number | Y618051 |
| Charges Filed Date | 04/18/2001 | Case Type | Traffic |
| Status | Disposed | Disposition | Guilty Bench Trial |
| Disposition Date | 05/03/2001 | | |

---

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*

**whitepages PREMIUM**



**NO MUGSHOT ON RECORD**

## MATCH INDICATORS

*These show how closely a court record matches with the identity of the person.*

| | |
|---|---|
| First Name | Exact Match |
| Middle Name | Not Matched |
| Last Name | Exact Match |
| Date Of Birth | Not Available On Record |
| Address | City No Match |
| | State No Match |
| | County No Match |
| | Zip Matched |
| SSN | Not Available On Record |

📅 **Criminal Record #18- Fraudulent Check,**

### CHARGE #1 - FRAUDULENT CHECK,

CHARGE DATE: 05/14/1999

| | | | |
|---|---|---|---|
| Offense Code | 0670 | Crime County | Greenville, Sc |
| Crime Type | Misdemeanor | Case Number | E147787WALDAV |
| Charges Filed Date | 05/14/1999 | Case Type | Misdemeanor U |
| Court | Sc Greenville County Summary Dockets | Sentence | 30 Days Or 14500 |
| Disposition | Tia Guilty Bench Trial | Disposition Date | 06/11/1999 |

*The records displayed in this report may or may not actually belong to the person you searched for, especially if the person you searched for has a common name. Please exercise caution when viewing court-related records, as they may not be accurate or complete.*